# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

Western Distributing Company, d/b/a Western Distributing Transportation Corp., a Colorado corporation,

    Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

## NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991 against Defendant Western Distributing Company ("Western") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Clinton Kallenbach and other aggrieved individuals, who were adversely affected by such practices.  As stated with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Western engaged in unlawful conduct when it failed to accommodate, terminated and refused to rehire qualified employees with disabilities, and that Defendant's conduct constituted a pattern or practice of discrimination.  The EEOC further alleges that Defendant Western maintained and administered policies and/or practices which have the effect

of unduly limiting employment opportunities for employees with disabilities. In addition, the EEOC alleges Defendant Western retaliated against individuals who engaged in lawful protected activities.

Defendant Western utilized a maximum-leave practice under which employees who are unable return to work prior to or upon expiration of approved medical leave of twelve weeks or less, are summarily discharged without consideration of whether some reasonable accommodation will enable the employee to return to work.   Additionally, Defendant Western maintained a policy that required employees who are off work for medical reasons to receive a "full duty" medical clearance prior to returning to work. As a result of these policies, employees who could return to work with accommodations are not allowed to do so, and employees are discharged upon expiration of medical leave, regardless of whether they could have returned with some accommodation. The EEOC alleges that Defendant Western discriminated against Clinton Kallenbach and other aggrieved individuals with disabilities by failing to make reasonable accommodations to the known physical or mental limitations of these otherwise qualified individuals with disabilities, by terminating their employment because of their disabilities or perceived disabilities, and/or because they needed reasonable accommodation(s), by refusing to rehire otherwise qualified individuals with disabilities because of their disabilities or perceived disabilities, and/or because they needed reasonable accommodation(s), by utilizing  discriminatory qualification standards, criteria and/or methods of administration, and finally, by retaliating against individuals who engaged in protected activities.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. Section 706(f)(1), (3), 42 U.S.C. §2000e-5(f)(1), (3), and pursuant to Sections 102 and 503 of the Civil Rights Act of 1991, 42 U.S.C. §1981a and 42 U.S.C. § 12203.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1), (3), 42 U.S.C. § 2000e-5(f)(1), (3).

4.     At all relevant times, Defendant Western, a Colorado corporation, has continuously been and is now doing business in the State of Colorado and has continuously had at least fifteen (15) employees.

5.     At all relevant times, Defendant Western has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which

incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant Western has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## GENERAL ALLEGATIONS

**I. Conditions Precedent**

7. More than thirty days prior to the institution of this lawsuit, Clinton Kallenbach filed a charge of discrimination with the EEOC alleging violations of the ADA by Defendant Western.

8. The EEOC provided Defendant Western with notice of the charge of discrimination.

9. The EEOC investigated the charge of discrimination.

10. Based on evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Defendant Western engaged in certain unlawful employment practices identified in the determination.

11. The EEOC's determination included an invitation for Defendant Western to join the Commission in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

12. Defendant Western agreed to participate with the EEOC in this informal conciliation process.

13. The EEOC and Defendant Western were unable to reach an agreement through the conciliation process.

14.     The EEOC sent notice to the Defendant Western that conciliation efforts had failed.

15.     The EEOC fulfilled all conditions precedent to the institution of this lawsuit.

## II.     Defendant Western, Inc.

16.     Since at least January 2008, Defendant Western engaged in unlawful employment practices in violation of § 102 of Title I and Title V of the ADA, 42 U.S.C. § 12112, and § 503 of Title V of the ADA, 42 U.S.C. § 12203.

17.     Defendant Western is a local company with numerous locations throughout the Denver metropolitan area in Colorado.

18.     Defendant Western is headquartered in Denver, Colorado.

## III.    Defendant Western's Maximum Medical Leave Practice

19.     At all relevant times, Defendant Western instituted and/or maintained a policy or practice which allowed employees to take approved leave for medical reasons.

20.     Under Western's medical leave policy, employees eligible for leave under the Family Medical Leave Act (FMLA) were approved for medical leave of no more than twelve weeks.

21.     Under Western's medical leave policy, employees not eligible for FMLA leave may be approved for some medical leave of less than twelve weeks.

22.     As a matter of policy and practice, Defendant would not approve more than 12 weeks of medical leave ("maximum-leave").

23. At all relevant times, Defendant never allowed more than 12 weeks of FMLA or medical leave, without exception.

24. As Defendant Western administered its medical leave policy, it discharged any employee who was unable to return prior to or on expiration of the approved medical leave of no more than twelve (12) weeks.

25. Employees were discharged when their approved leave period expired, without regard for whether some reasonable accommodation could be provided which would enable the employee to perform the essential functions of his or her job.

26. Employees who requested accommodations were denied.

27. Employees who asked for extensions of leave were denied, regardless of how short the requested extension, or the reasons.

28. Employees who sought reassignment to other positions were told they could apply and compete for positions they were qualified to hold.

29. Before discharging employees who were unable to return prior to or on expiration of their approved medical leave, Defendant Western did not engage in an interactive process with the employees to discuss potential reasonable accommodations.

## IV.   Defendant Western's "Full Duty" Medical Clearance Practice

30. At all relevant times, Defendant Western instituted and/or maintained a policy or practice under which employees who have missed work for medical reasons, were not allowed to return to work unless they provided a "full duty" medical release.

31. A "full duty" medical release was a release authorizing the employee to

return to work without any medical restrictions.

32.     As Defendant Western administered its "full duty" policy, it denied work to employees who were able to work with medical restrictions.

33.     Before denying work to employees able to work with medical restrictions, Defendant Western did not engage in an interactive process with the employees to determine whether the employee could perform the essential functions of his or her job.

34.     Before denying work to employees able to work with medical restrictions, Defendant Western did not engage in an interactive process with the employees to discuss potential reasonable accommodations.

35.     As Defendant Western administered its "full duty" policy, employees unable to provide a "full duty" medical release were required to be on medical leave status, if medical leave was approved under the medical leave policy.

36.     As Defendant Western administered its "full duty" policy, it discharged any employee who was unable to provide a "full duty" medical release and had exhausted any allowed medical leave.

37.     Employees who requested accommodations for medical restrictions were denied.

38.     Employees who asked for extensions of leave were denied, regardless of how short the requested extension, or the reasons.

39.     Employees who sought reassignment to other positions were told they could apply and compete for positions they were qualified to hold.

40.     Before discharging employees who were unable to provide a "full duty"

medical release and had exhausted available medical leave, Defendant Western did not engage in an interactive process with the employees to determine whether the employee could perform the essential functions of his or her job.

41. Before discharging employees who were unable to provide a "full duty" medical release and had exhausted available medical leave, Defendant Western did not engage in an interactive process with the employees to discuss potential reasonable accommodations.

**V.    Charging Party Clinton Kallenbach**

37. Defendant Western hired Clinton Kallenbach in July 2007.

38. Clinton Kallenbach worked for Western as an Over-the-Road truck driver.

39. Clinton Kallenbach satisfactorily performed the essential functions of his job during the time that he worked for Defendant Western.

40. Clinton Kallenbach's personnel file does not include any documented performance deficiencies.

41. In March 2009, Clinton Kallenbach informed Defendant Western that he developed a heart condition that required open heart surgery.

42. On March 24, 2009, Clinton Kallenbach began his Family Medical Leave Act ("FMLA") leave.

43. Clinton Kallenbach's medical conditions substantially limit the major life activities of lifting and working, as well as the operations of major bodily functions of the cardiovascular system.

44. At all relevant times, Clinton Kallenbach was a qualified individual with a

disability as defined by the ADA.

45. The FMLA entitles eligible employees of covered employers to up to twelve (12) weeks of job-protected, unpaid leave during any 12-month period, for care of the employee's own serious health condition.

46. In May 2009, Defendant Western received a note dated May 14, 2009, originated by Dr. Robert F. Benson which stated that Clinton Kallenbach "[was] OK to Return to commercial driving No Restrictions [sic]".

47. Notwithstanding Dr. Benson's statement releasing Kallenbach without restrictions, Defendant Western required a release from its own doctor.

48. At all times relevant, Defendant Western contracted with Denver Aviation and Occupational Medicine ("Aviation Clinic") to conduct physical evaluations of Defendant's employees upon Defendant Western's request.

49. At all times relevant, Dr. Michael Ladwig served patients at the Aviation Clinic.

50. In May 2009, Defendant Western obtained Dr. Ladwig's note dated May 19, 2009, which stated, "No work for now. Earliest date RTW 6/26/08 See me just prior to then" in regards to Clinton Kallenbach.

51. Kallenbach scheduled an appointment to see Dr. Ladwig on June 26, 2008, the date Dr. Ladwig identified as the earliest date Kallenbach could return to work.

52. On May 26, 2009, Clinton Kallenbach delivered a letter requesting that as a reasonable accommodation he be allowed to work as a Yard Hostler or Dispatcher.

53. Upon receipt of this letter, Defendant Western's Human Resource Director, Jennifer Prochaska denied Clinton Kallenbach's request for a reasonable accommodation.

54. Defendant Western did not initiate or engage with Clinton Kallenbach in any interactive process to identify the precise limitations resulting from his disability and potential accommodations that could overcome those limitations, including but not limited to additional unpaid leave.

55. The reasonable accommodations proposed by Clinton Kallenbach would not have imposed an undue hardship on the operation of Defendant Western's business.

56. Kallenbach's FMLA leave expired on June 17, 2009, nine days before Kallenbach's scheduled appointment with Defendant's physician, Dr. Ladwig,

57. On June 17, 2009, Defendant Western discharged Clinton Kallenbach.

58. Defendant Western discharged Clinton Kallenbach because his approved leave was exhausted, and although Kallenbach's doctor released him to return to work without restrictions, Defendant's own doctor said Kallenbach could not return to work for another nine days.

59. Although Defendant knew Kallenbach's doctor had released him to return to work without medical restrictions, Defendant did not extend Kallenbach's medical leave for the nine extra days before Defendant's own doctor would release Kallenbach to return to work.

60. On June 26, 2009, Defendant's doctor, Dr. Ladwig, certified Clinton

Kallenbach as eligible to return to work as a commercial driver.

61. After Defendant Western discharged Kallenbach, Ms. Prochaska informed Kallenbach that if he wanted to return to work, he would have to be rehired as a new employee.

62. Kallenbach responded that he wanted to be rehired.

63. In early July 2009, Defendant offered Kallenbach employment, contingent on pre-employment medical screening.

64. On July 6, 2009, Defendant Western informed Kallenbach that as a new employee, he was required to undergo an endurance examination the next day, July 7, 2009.

65. Defendant did not require current employees returning from medical leave to undergo an endurance examination.

66. If Defendant had merely extended Kallenbach's leave by nine days as an accommodation, he would not have been required to undergo an endurance examination before returning to work.

67. On the evening of July 6, 2009, Kallenbach informed Defendant Western that he needed to reschedule the endurance examination due to a gravely ill uncle he was going to visit in Grand Junction, Colorado.

68. Defendant Western refused to reschedule Kallenbach's endurance examination.

69. The effect of the policy and practice complained of in the paragraphs above was to deprive Clinton Kallenbach of equal employment opportunities and

otherwise adversely affect his status as an employee because of his disability.

## VI. Other Aggrieved Individuals

70. Under Defendant's "full duty" policy, numerous other qualified employees with disabilities have been denied the opportunity to work.

71. Under Defendant's "full duty" policy, Defendant did not engage in an interactive process with employees with disabilities, to discuss or consider potential accommodations for their disabilities.

72. Under Defendant's maximum-leave policy, as administered, numerous other qualified employees with disabilities have been discharged and denied employment opportunities.

73. Pursuant to its maximum-leave practice, Defendant Western has refused to make reasonable accommodation to the known physical and mental limitations of otherwise qualified individuals with disabilities.

74. Under Defendant's maximum-leave policy, as administered, Defendant did not engage in an interactive process with employees with disabilities, to discuss or consider potential accommodations for their disabilities.

### FIRST CLAIM FOR RELIEF
### (Failure to Accommodate Disabilities - 42 U.S.C. §§ 12112(a) and (b)(5)(A))

75. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

76. Since at least 2008, Defendant maintained a "full duty" return-to-work policy that requires employees to return to work without restrictions, and discharging

employees who were unable to return to "full duty", without providing reasonable accommodation for people whose medical restrictions are due to disabilities.

77. Since at least 2008, Defendant maintained an inflexible policy of allowing medical leave of no more than 12 weeks (less than 12 weeks for employees not eligible for FMLA leave), and discharging employees who were unable to return to work on expiration of the approved leave, without providing reasonable accommodation for people with disabilities.

78. Clinton Kallenbach and other aggrieved individuals, are disabled as defined in the ADA.

79. Clinton Kallenbach and other aggrieved individuals, were able, with or without reasonable accommodation, to perform the essential functions of their positions at Western.

80. Defendant failed and refused to engage in good faith discussions with Clinton Kallenbach, and other aggrieved individuals, to determine appropriate accommodations for their disabilities.

81. Defendant failed and refused to provide Clinton Kallenbach, and other aggrieved individuals, reasonable accommodations, as required under Section 102(b)(5)(A) of the ADA.  42 U.S.C. § 12112(b)(5)(A).

82. Defendant engaged in a pattern or practice of denying reasonable accommodation to individuals with disabilities by conduct which includes, without limitation, refusing to extend leave as a reasonable accommodation, refusing to accommodate employees' medical restrictions, and refusing to make exceptions to its

maximum-leave and "full-duty" policies, as a reasonable accommodation

83. Defendant's failure to provide reasonable accommodations for Clinton Kallenbach and other employees with disabilities, was done with malice and/or reckless indifference to their federally protected rights.

84. Defendant intentionally discharged Clinton Kallenbach and other employees with disabilities.

85. The effect of the practices complained of in the foregoing paragraphs has been to deprive Clinton Kallenbach, and other aggrieved individuals, of equal employment opportunities and otherwise adversely affect their status as employees, because of their disabilities.

**SECOND CLAIM FOR RELIEF**
**(Disparate Treatment Based on Disability or the Need to Provide Accommodation**
**42 U.S.C. §§ 12112(a) and (b)(5)(B))**

86. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

87. Acting pursuant to its "full duty" and/or "maximum leave" policies and practices, Defendant discharged Clinton Kallenbach, and other aggrieved individuals, because of their disabilities, and/or because it regarded them as disabled, and/or because of the need to provide reasonable accommodation for their disabilities, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA. 42 U.S.C. §§ 12112(a) and (b)(5)(B).

88. Defendant intentionally discriminated against Clinton Kallenbach, and other aggrieved individuals, by taking adverse employment actions because of their

disabilities, and/or because it regarded them as disabled, and/or because of the need to provide reasonable accommodation for their disabilities, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA.  42 U.S.C. §§ 12112(a) and (b)(5)(B).

89. The adverse actions included, without limitation, discharging and refusing to rehire Clinton Kallenbach, and other aggrieved individuals, because of their disabilities, and/or because it regarded them as disabled, and/or because of the need to provide reasonable accommodation for their disabilities.

90. Defendant engaged in a pattern or practice of denying employment opportunities to individuals with disabilities because of their disabilities, and/or because it regarded them as disabled, and/or because of the need to provide reasonable accommodation because of their disabilities by conduct which includes, without limitation, discharging employees who are unable to provide a "full-duty" medical release and have exhausted available medical leave, discharging employees who have exhausted available medical leave, refusing to rehire individuals based on prior medical restrictions, and not allowing employees to return to work with medical restrictions.

91. Defendant's discriminatory treatment of Clinton Kallenbach, and other aggrieved individuals, was done with malice or reckless indifference to their federally protected rights.

92. The effect of the practices complained of in the foregoing paragraphs has been to deprive Clinton Kallenbach, and the other aggrieved individuals, of equal employment opportunities and otherwise adversely affect their status as employees,

because of their disabilities.

### THIRD CLAIM FOR RELIEF
### (Use of Discriminatory Standards, Criteria, or Methods of Administration
### 42 U.S.C. §§ 12112(a),(b)(3)(A) and (b)(6)

93. EEOC reasserts and incorporates by reference all of the foregoing allegations.

94. During the relevant time period, Defendant utilized and/or maintained a "full duty" policy or practice that does not allow employees with disabilities to work if they have medical restrictions.

95. Under Defendant's "full duty" policy, employees with disabilities who have exhausted FMLA leave or have no FMLA leave, are terminated unless they are able to work "full duty", without medical restrictions.

96. Defendant's "full duty" policy is a standard, criteria, or was administered in a manner that has the effect of discrimination on the basis of disability, in violation of Sections 102(a) and 102(b)(3)(A) of the ADA.  42 U.S.C. §§ 12112(a) and 12112(b)(3)(A).

97. Defendant's "full duty" policy is a qualification standard, employment test, or other selection criteria that screens out or tends to screen out individuals with disabilities, in violation of Sections 102(a) and 102(b)(6) of the ADA.  42 U.S.C. §§ 12112(a) and 12112(b)(6).

98. Defendant's "maximum leave" policy, as administered, is a standard, criteria, or method of administration that has the effect of discrimination on the basis of disability, in violation of Sections 102(a) and 102(b)(3)(A) of the ADA.  42 U.S.C. §§

12112(a) and 12112(b)(3)(A).

99.   Defendant's "maximum leave" policy, as administered, is a qualification standard, employment test, or other selection criteria that screens out or tends to screen out individuals with disabilities, in violation of Sections 102(a) and 102(b)(6) of the ADA.  42 U.S.C. §§ 12112(a) and 12112(b)(6).

100.   Defendant has intentionally imposed its discriminatory qualification standards, employment tests, or other selection criteria.

101.   Defendant has imposed its discriminatory qualification standards, employment tests, or other selection criteria with malice or reckless disregard for the federally protected rights of Clinton Kallenbach and other employees with disabilities.

102.   The effect of the policies and practices complained of in the foregoing paragraphs has been to deprive a group of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

### FOURTH CLAIM FOR RELIEF
### (Retaliation - 42 U.S.C. §§ 12203)

103.   The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

104.   Since at least 2008, Defendant has engaged in unlawful employment practices, in violation of Section 503 of the ADA, 42 U.S.C. § 12203 by retaliating against Clinton Kallenbach, and other aggrieved individuals.

105.   Clinton Kallenbach, and the other aggrieved individuals for whom the EEOC seeks relief, requested reasonable accommodations under the ADA or

otherwise opposed what they reasonably believed was an unlawful discriminatory employment practice based on the ADA.

106.   Defendant Western retaliated against employees who requested reasonable accommodation by, among other things, discharging them, rescinding job offers, and/or refusing to rehire them.

107.   The effect of the practices complained of in the forgoing paragraphs has been to deprive Clinton Kallenbach, and the other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees, because they engaged in protected activity.

108.   The unlawful employment practices complained of in the forgoing paragraphs were intentional.

109.   The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Clinton Kallenbach, and the other aggrieved disabled individuals.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant Western, its officers, successors, assigns, and all persons in active concert or participation with it, from discriminating against employees because of a disability.

B.   Order Defendant Western to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful

employment practices.

C. Order Defendant Western to cease utilizing its maximum-leave practice, as administered, and its "full duty" policy as written and/or administered, and revise these policies and procedures to bring them into compliance with the Americans with Disabilities Act as amended.

D. Order Defendant Western to make whole Clinton Kallenbach, and other aggrieved individuals for whom the EEOC seeks relief by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Clinton Kallenbach and other aggrieved individuals, or front pay in lieu thereof.

E. Order Defendant Western to make whole Clinton Kallenbach, and other aggrieved individuals for whom the EEOC seeks relief, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including but not limited to relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial.

F. Order Defendant Western to make whole Clinton Kallenbach, and other aggrieved individuals for whom the EEOC seeks relief by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of credit standing, and stress, in amounts to be determined at trial.

- 20 -

G. Order Defendant Western to pay Clinton Kallenbach, and other aggrieved individuals for whom the EEOC seeks relief, punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

H. Grant such further relief as this Court deems necessary and proper.

I. Award the EEOC its costs of this action.

RESPECTFULLY SUBMITTED this ____ day of July, 2016.

>MARY JO O'NEILL
>Regional Attorney
>
>RITA B. KITTLE
>Supervisory Trial Attorney
>
>*/s/ Karl Tetzlaff*
>KARL R. TETZLAFF
>Trial Attorney
>E-mail: Karl.Tetzlaff@eeoc.gov
>
>EQUAL EMPLOYMENT
>OPPORTUNITY COMMISSION
>Denver Field Office
>303 17th Ave., Suite 410
>Denver, CO 80203
>(303) 866-1378
>
>Attorneys for Plaintiff