IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:16-cv-01727-LTB-NYW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY, a Colorado corporation d/b/a
WESTERN DISTRIBUTING TRANSPORTATION CORP.,

     Defendant.

_____

# MEMORANDUM OPINION AND ORDER

_____

Babcock, J.

     This is an action under Titles I and V of the Americans with Disabilities Act ("ADA") of 1990, as amended by the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991. The EEOC alleges that Defendant Western Distributing Company ("Western Distributing") has unlawfully discriminated on the basis of disability.

     Western Distributing moved this Court to dismiss this case under Rule 12(b)(1), arguing the Court lacks subject matter jurisdiction. (Mot. Dismiss, ECF No. 23). According to Western Distributing, the EEOC failed to reasonably investigate the discrimination charges in its complaint and failed to adequately conciliate before bringing this suit, as required under 42 U.S.C. § 2000e–5(b). The EEOC responds that investigation and conciliation are not jurisdictional requirements and that, in any event, it met those requirements. (Resp. Mot. Dismiss, ECF No. 42.) The EEOC also moved to strike several of Western Distributing's exhibits and some portions of its motion to dismiss, arguing that

Western Distributing included materials that are confidential under § 2000e–5(b), which prohibits disclosure of anything "said or done during and as part of" the conciliation process. (Mot. Strike, ECF No. 31).

I assume, without deciding, that investigation and conciliation are jurisdictional requirements. I conclude that the EEOC met these requirements by (1) investigating the allegations to assess whether there was reasonable cause to believe Western Distributing engaged in discriminatory practices; (2) providing Western Distributing adequate notice of the allegations; and (3) providing Western Distributing opportunity to discuss the allegations. I therefore **DENY** Western's motion to dismiss. (ECF No. 23.)

I also **GRANT IN PART** the EEOC's motion to strike (ECF No. 31) because the filings in question contain materials that are statutorily required to remain confidential under § 2000e–5(b). I do not consider these confidential materials in deciding this motion.

## I. Background

Western Distributing is a trucking company based in Denver, Colorado, with additional locations throughout Colorado. In August 2009, a former Western Distributing employee, Clinton Kallenbach, filed a charge of discrimination with the EEOC, alleging that Western Distributing discriminated against him based on his disability by terminating him when his leave under the Family Medical Leave Act (FMLA) expired. (Echeveste Aff. ¶ 3, ECF No. 42-1; Ex. A to Echeveste Aff.) After Mr. Kallenbach filed his charge, four other former Western Distributing employees filed similar charges. (*Id.* ¶¶ 4–8.)

In August 2011, the EEOC notified Western Distributing that it was expanding its investigation to a "nation-wide class investigation of all facilities owned and or operated by Western Distributing Transportation Corp." (Ex. F to

Echeveste Aff., ECF No. 42-1 at 20.)  During the course of its investigation, the
EEOC solicited and reviewed position statements for each of the five charging
parties, made at least five requests for information from Western Distributing,
reviewed the materials it received as a result of those requests, interviewed
numerous potential aggrieved individuals, interviewed Western Distributing
employees, visited Western Distributing's offices, and gave Western Distributing
the opportunity to provide any information it believed was relevant.  (Echeveste Aff.
¶ 12, ECF No. 42-1.)  Among other information, Western Distributing eventually
provided data from April 2009 to July 2014, including employee lists with hire and
termination/separation dates and the reason for the termination/separation.  (*Id.* ¶
14.)

In December 2014, the EEOC issued amended letters of determination for the
five charges, which included the following language:

> The Commission . . . finds the Respondent in violation of the ADA
> because it failed to accommodate Charging Party and other aggrieved
> employees throughout its facilities.  Respondent failed to accommodate
> individuals with disabilities by, for example, failing to modify job
> duties or allow transfer to existing positions.  The Commission further
> finds [Western Distributing] in violation of the ADA because it
> maintains a twelve (12) week policy without allowing for an
> accommodation under the ADA.  This policy affected both Charging
> Party and other aggrieved employees.  Finally, Respondent violated
> the ADA when it discriminated against individuals with disabilities.
> In particular, Respondent terminated aggrieved individuals due to
> their disabilities and discriminated and/or retaliated against
> individuals who reapplied or attempted to return after having taken
> leave for injuries or disabilities.

(Exs. G–K to Echeveste Aff., ECF No. 42-1.)

In the letters of determination, the EEOC invited Western Distributing to
participate in the conciliation process.  *Id.*  Western Distributing agreed to
participate, and the EEOC sent Western Distributing a proposed conciliation

agreement.  (Echeveste Aff. ¶ 19, ECF No. 42-1.)  The parties met at the EEOC's office and exchanged letters. (*Id.*)  In May 2016, the EEOC sent Western Distributing letters informing it that conciliation was "unsuccessful." (Ex. K to Echeveste Aff., ECF No. 42-1 at 38.)

The EEOC then filed suit in this Court, raising claims that Western Distributing violated the ADA by (1) failing to accommodate employees with disabilities; (2) taking adverse actions against disabled employees because of their disability, and (3) using discriminatory standards, criteria, or methods of administration.  (ECF No. 1.)  Western Distributing moved to dismissed the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the EEOC had failed to adequately investigate the case or engage in conciliation, as required under  Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(b), incorporated into the ADA by 42 U.S.C. § 12117(a).  (ECF No. 23.)  Western Distributing attached extensive materials related to the conciliation process to its motion.

## II.  Analysis

### A.    The Rule 12(b)(1) Motion to Dismiss Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party

invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citation omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003 (citation omitted). "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without converting the motion to dismiss to a motion for summary judgment. *Id.*

Here, Western Distributing's challenge to jurisdiction is a factual attack. I therefore consider materials outside the pleadings in resolving this motion.

**B.   Statutory Framework**

The ADA prohibits discrimination "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." In 42 U.S.C. § 12117(a), the ADA incorporates the enforcement procedure set forth in Section 706 of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(b). Under § 2000e–5(b), the EEOC must engage in several pre-litigation activities before bringing suit based on a violation of the ADA. Two pre-suit requirements are at issue here: investigation and conciliation.

5

Section 2000e–5(b) requires the EEOC to investigate the allegations in a charge of discrimination.  If, after the investigation, the EEOC determines there is reasonable cause to believe an individual's charge of discrimination is true, the EEOC "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.*  If the EEOC is "unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." 42 U.S.C. § 2000e–5(f)(1).

Western argues the investigation and conciliation requirements of § 2000e–5(b) are jurisdictional.  (Mot. Dismiss, ECF No. 23.)  It further argues that because the EEOC failed to meet them, this case should be dismissed under Rule 12(b)(1). *Id.*  The EEOC contends that conciliation and investigation are not jurisdictional prerequisites.  (Resp. Mot. Dismiss, ECF No. 42.)  The EEOC also contends it met the conciliation and investigation requirements.  (*Id.*)

## C.   Whether Conciliation and Investigation are Jurisdictional Requirements

The federal courts are courts of limited subject-matter jurisdiction.  *Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1225 (10th Cir. 2004).  Our subject-matter jurisdiction is a constitutional prerequisite to hearing a case and "because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (quotation omitted).

In *Arbaugh,* the Supreme Court addressed whether Title VII's definition of "employer" to include only those having fifteen or more employees was an issue of subject matter jurisdiction or an essential element of a Title VII claim.  *Id.* at 503. The Supreme Court held that Title VII's threshold number of employees was an element of a Title VII claim, not a jurisdictional issue, and adopted a bright line test

that a threshold limitation on a statute's scope is jurisdictional only when Congress clearly states that it is. *Id.* at 514–16. Significant to the Supreme Court's decision was the fact that Title VII's threshold number of employees was in a definitions provision separate from Title VII's jurisdictional provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515.

After *Arbaugh*, Tenth Circuit held in an unpublished case that the exhaustion of administrative remedies remains a jurisdictional prerequisite to bringing suit under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e–17, and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34. *Logsdon v. Turbines, Inc.*, 399 Fed. App'x 376, 378 (10th Cir. 2010) (unpublished). *Logsdon* cited the Tenth Circuit's decisions in *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) and *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996), and explained that "[i]n this circuit, the exhaustion of administrative remedies remains a jurisdictional prerequisite to bringing suit under Title VII or the ADEA." *Logsdon*, 399 Fed. App'x at 378. Similarly, I previously recognized that the "Tenth Circuit did not perceive its holding in *Logsdon* to be at odds with the bright line test adopted by the Supreme Court in *Arbaugh*" and "decline[d] to conclude otherwise based not only on this precedent but the different statutory framework at issue." *EEOC v. CollegeAmerica Denver, Inc.*, 75 F. Supp. 3d 1294, 1300–01 (D. Colo. 2014), *reconsideration denied*, No. 14-cv-01232-LTB-MJW, 2015 WL 6437863 (D. Colo. Oct. 23, 2015). I thus held in *CollegeAmerica* that notice and conciliation remained jurisdictional. *Id.* at 1300–01.

However, since *Logsdon* and my decision in *CollegeAmerica*, the Tenth Circuit held in *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1039 (10th Cir. 2015),

that one exhaustion requirement, verification, is not jurisdictional.  In its decision, the court characterized the logic of its prior decisions in *Shikles* and *Jones* as "at odds with the Supreme Court's instructions in subsequent cases" and impossible to square with current law.  *Gad*, 787 F.3d at 1039.  Because *Logsdon* relied on *Shikles* and *Jones*, its continued viability is questionable.  Indeed, after *Gad*, the Tenth Circuit suggested in an unpublished case "that recent Supreme Court cases may have limited jurisdictional requirements to those set forth in 42 U.S.C. § 2000e–5(f)(3), the subsection vesting jurisdiction of Title VII actions in the federal courts." *Arabalo v. City of Denver*, 625 Fed. App'x 851, 860 (10th Cir. 2015) (unpublished) (citing *Gad*, 787 F.3d at 1038).  Because the conciliation requirement is not located in § 2000e–5(f)(3), it may not be a jurisdictional requirement.

However, *Gad* did not go so far as to hold that *no* exhaustion requirement was jurisdictional unless it was contained in § 2000e–5(f)(3).  To be sure, the *Gad* court held that jurisdiction turns "in large part" on whether a requirement "is located in Title VII's jurisdictional subsection—42 U.S.C. § 2000e–5(f)(3)."  *Gad*, 787 F.3d at 1038.  But it also recognized that other considerations mattered.  It directed courts to consider the purpose of a requirement and to use traditional rules of statutory construction to determine whether Congress imbued a requirement with jurisdictional consequences.  *Id.* at 1037–38.

Thus, *Gad* leaves open the possibility that conciliation and investigation remain jurisdictional requirements.  I need not determine today whether they are, however, because courts "need not decide whether exhaustion is jurisdictional [where] there is no question of waiver or forfeiture."  *Id.* at 1043 n.2.  That is because even if conciliation and investigation are not jurisdictional, they are at least conditions precedent to suit.  *See id.* at 1041–42.  Here, Western Distributing raised the failure to conciliate and investigate at the earliest possible time (in its motion to

8

dismiss) so there is no question of waiver or forfeiture.  (ECF No. 23.)  Thus, for this suit to proceed, EEOC must demonstrate it complied with the conciliation and investigation requirements, irrespective of how I legally classify those requirements.  I accordingly assume they are jurisdictional and turn to whether they are met.

**D.     The EEOC Met the Investigation and Conciliation Requirements**

I agree with the EEOC that it adequately complied with the investigation and conciliation requirements.  I come to this conclusion under the assumption that the Rule 12(b)(1) motion to dismiss standard applies, but I note that the outcome would be the same were I deciding this issue under the Federal Rule of Civil Procedure 56(a) summary judgment standard.

**1.     Conciliation**

In *Mach Mining LLC v. EEOC*, the Supreme Court addressed the scope of judicial review of the pre-suit conciliation requirement, ultimately concluding the review was "relatively barebones":

> [T]he EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause."  [42 U.S.C. § 2000e–5(b).]  Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result.  And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice.  Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute.  At the same time, that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them.  And such review can occur consistent with the statute's non-disclosure provision, because a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (i.e., statements made or positions taken) during those discussions.

135 S. Ct. 1645, 1655–56 (2015). In reaching this conclusion, the Court rejected injecting a "good faith" requirement into the conciliation process. *See id.* at 1654. It rejected Mach Mining's argument that the EEOC must "let the employer know the minimum it would take to resolve the claim—that is, the smallest remedial award the EEOC would accept"; to "lay out the factual and legal basis for all its positions, including the calculations underlying any monetary request"; and to "refrain from making take-it-or-leave-it offers." *Id.* (quotation marks, alterations, and citations omitted). Thus, this Court's review is limited to assessing: (1) whether EEOC informed Western Distributing of the specific allegations by describing what it allegedly did and to whom; and (2) whether the EEOC tried to engage Western Distributing in discussions about those allegations. *Id.* at 1655–56.

Despite *Mach Mining*'s clear directive, Western Distributing would have me police the minutia of the EEOC's conciliation efforts. Western attaches numerous exhibits—many which I cannot consider because they are confidential under § 2000e–5(b), which prohibits disclosure of anything "said or done during and as part of" the conciliation process—and argues the EEOC did not engage in conciliation in good faith. For example, Western Distributing insists the settlement amount was "exorbitant" (ECF No. 23 at 18) and lodges other objections that I do not describe here because they reveal confidential information. These are the types of strategic decisions that *Mach Mining* held were reserved to the EEOC:

> Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief. For a court to assess any of those choices—as *Mach Mining* urges and many courts have done, is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far.

10

135 S. Ct. at 1654–55 (citation omitted).

Rather than persuading me that EEOC did not engage in conciliation, Western Distributing's arguments demonstrate EEOC adequately participated in conciliation. It described which of Western Distributing's policies it considered to violate the ADA: (1) its policy of limiting medical leave to 12 weeks without providing reasonable accommodations for disabilities and (2) its policy of refusing to provide reasonable accommodations to disabled employees. (Exs. G–K to Echeveste Aff., ECF No. 42-1.) It identified the class of employees who allegedly suffered: disabled employees who were either terminated or refused reasonable accommodation because of those policies. (*Id.*) It engaged Western Distributing in discussions about remedying the discriminatory practice by providing a settlement offer, meeting in person, and exchanging letters. (Echeveste Aff. ¶ 19, ECF No. 42-1). While Western Distributing may well have good reasons for objecting to the EEOC's precise tactics and methods, it is not for this Court to review them. *See EEOC v. Zia*, 582 F.2d 527, 533 (10th Cir. 1978) (noting that in determining the sufficiency of conciliation efforts, a court may not "examine the details of the offers and counteroffers between the parties"); *EEOC v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1316 (D. Colo. 2015) ("That JetStream would have preferred individualized settlement counter-offers to match its own, or wished that the EEOC was not as aggressive as it was with respect to additional 'aggrieved employees' who were affected by its uniform policy, is of no moment: the Commission is entitled to expansive discretion over the conciliation process." (quotation and alteration omitted)), *reconsideration denied*, 13-CV-02340-CMA-KMT, 2016 WL 879625 (D. Colo. Mar. 8, 2016).

I also reject Western's Distributing's suggestion that the EEOC must identify all aggrieved individuals to meet the conciliation requirement. *Mach Mining* makes

11

it clear that decisions like whether "to lay all its cards on the table" are left to the EEOC, and the EEOC need not "lay out the factual and legal basis for all its positions, including the calculations underlying any monetary request."  135 S. Ct. at 1654 (quotation marks omitted).  Accordingly, the EEOC is not required to identify each aggrieved individual, even if—as seems likely—it would have put Western Distributing in a better position to respond to the EEOC's settlement offer. *Cf. EEOC v. United Parcel Serv.*, 860 F.2d 372, 374 (10th Cir. 1988) ("Under Title VII, the EEOC need not produce an injured party when seeking to challenge an allegedly discriminatory policy that may affect unidentifiable members of a known class."); *see EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 805 (5th Cir. 2016) (holding conciliation requirement was met where the EEOC "did not initially provide the names of specific victims," but "informed Bass Pro about the class it had allegedly discriminated against"); *accord CRST Van Expedited, Inc. v. EECO*, 136 S. Ct. 1642, 1648 (2016) (holding that the EECO may "seek specific relief for a group of aggrieved individuals [under § 706, 42 U.S.C. § 2000e–5] without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23, because that rule "is not applicable to" a § 706 enforcement action" (quotation marks omitted)). Accordingly, I conclude that the EEOC adequately engaged in conciliation, particularly in light of this Court's limited review of the conciliation process.

12

### 2.   Investigation

In order to prove that it has fulfilled its pre-suit investigative obligation, the EEOC must show that it took steps to determine whether there was reasonable cause to believe that the allegations in the charge are true. *See* 42 U.S.C. § 2000e–5(b) (noting that the purpose of an EEOC investigation is to determine whether "there is reasonable cause to believe that the charge is true"); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 71 (1984) ("[T]he purpose of [an EEOC investigation] is to determine whether there is reason to believe those allegations are true."). Title VII does not define "investigation" or prescribe the steps that the EEOC must take in conducting an investigation. As Western Distributing acknowledges, the EEOC enjoys "wide latitude" in its investigation of charges. (Reply Mot. Dismiss at 9, ECF No. 46.) Western Distributing argues that even with this wide latitude, the EEOC failed to meet the investigation requirement as to any claimants who were employed from 2012–2014 because it only investigated those claims as part of its investigation into Galen Tacker, a former Western Employee who is not named in the complaint but was one of the five initial Charging Parties. (*Id.* at 11–12.)

While *Mach Mining* did not address the proper scope of judicial review of the EEOC's investigation, some courts have concluded its reasoning applies with equal force to investigation. The Second Circuit recently reversed a district court decision dismissing an EEOC claim for lack of an investigation, finding that "[t]he sole question for judicial review is whether the EEOC conducted an investigation . . . [C]ourts may not review the sufficiency of an investigation—only whether an investigation occurred." *EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 101 (2d Cir. 2015) (emphasis omitted); *see also Bass Pro*, 826 F.3d at 805 ("[Bass Pro] claims that, by relying on statistical and anecdotal evidence rather than evidence about specific aggrieved individuals, the EEOC neglected its duty to investigate its

Section 706 claims.  Like Bass Pro's argument that the EEOC failed to conciliate, its argument concerning failure to investigate wrongly assumes that an investigation under Section 706 necessarily rests on the identifiable individuals' claims."). Consistent with these cases, the EEOC argues the scope of my review of its investigation is narrow.  (Resp. Mot. Dismiss at 13–16, ECF No. 42.)

Western Distributing argues that because *Mach Mining* did not directly address the scope of investigation, my decision should be guided by the Eighth Circuit's decision in *EEOC. v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012). (Mot. Dismiss at 16–17, ECF No. 23; Reply Mot. Dismiss at 8–10, ECF No. 46.)  In *CRST*, the EEOC filed a Section 706 action on behalf of a single named woman and a class of similarly situated women, alleging sexual harassment.  *CRST*, 679 F.3d at 668.  Two years after filing suit, the EEOC named an additional 67 women, whose allegations the EEOC conceded it had not investigated until after suit was filed.  *Id.* at 669–73.  The district court eventually barred the EEOC from pursuing claims as to 67 women based on its conclusion that "the EEOC did not investigate, issue a reasonable cause determination or conciliate the claims." *Id.* at 672.  The Eighth Circuit held that, under those circumstances, the district court did not abuse its discretion in dismissing the case as to those 67 women.  *Id.* at 677.

Assuming *Mach Mining* did not impact the viability of *CRST*, it still does not alter my conclusion here.  Unlike in *CRST*, the EEOC did investigate the claims of the additional individuals.  It sent at least five requests for information to Western Distributing, reviewed the information it received, interviewed employees potentially affected by the allegedly discriminatory practice, interviewed other Western Distributing employees, and afforded Western Distributing the opportunity to provide any additional information it felt was relevant.  (Echeveste Aff. ¶¶ 10–12, ECF No. 42-1.)  Long before it filed suit, the EEOC notified Western Distributing

14

that its investigation had expanded beyond the five initial charging parties and was national in scope. (Ex. F to Echeveste Aff., ECF No. 42-1.) Among the items it requested and reviewed was a list of employees, together with the reason they left the company, through 2014. (Echeveste Aff. ¶ 14, ECF No. 42-1.)

Additionally, I fail to see why it is important that the materials from 2012–2014 were requested as part of the investigation into Galen Tacker instead of Mr. Kallenbach. Western Distributing points to no authority suggesting it is. The statute requires only that the EEOC investigate the charges. *See* § 2000e–5(b). It did so here, and I decline to place unwarranted significance on the details of how it requested and obtained the relevant information.

Plainly, the EEOC sufficiently investigated the charges in this case. I would come to this conclusion whether I applied the broader review urged by Western Distributing or the more narrow scope the EEOC presses.

### E.   Western Included Confidential Documents in its Motion

When Western Distributing filed its motion to dismiss, it extensively argued that the EEOC did not undertake conciliation in good faith, in part because it failed to specifically identify the aggrieved individuals. (Mot. Dismiss, ECF No. 23.) To support its argument, it included a substantial number of confidential materials related to the conciliation process. The materials include letters exchanged by the parties and pictures defense counsel took of an EEOC presentation given at an in-person conciliation meeting.

The EEOC moved to strike these documents under § 2000e–5(b), which prohibits disclosure of anything "said or done during and as part of" the conciliation process and further disallows its use "as evidence in a subsequent proceeding without the written consent of the persons concerned." (Mot. Strike, ECF No. 31.) The EEOC also moved to strike several portions of Western Distributing's motion to

dismiss. (*Id.*) In response, Western Distributing insists that because it argues the EEOC failed to adequately conciliate the charges by not providing adequate notice of the allegations, the confidential materials are necessary to my resolution of the case. (Resp. Mot. Strike, ECF No. 44.)

I disagree. To determine whether Western Distributing complied with the pre-suit conciliation and investigation requirements, I do not need to take a "deep dive" into what happened during the conciliation. *Mach Mining*, 135 S. Ct. at 1653. I do not need to know the precise monetary offers tendered. *Id.* at 1653-54. I do not need to review the back and forth between the attorneys. *Id.* I certainly do not need to review pictures of an EEOC presentation from a conciliation meeting. *See id.* Thus, I do not need to review the extensive materials submitted by Western Distributing, nor am I permitted to under § 2000e–5(b). Instead, I primarily look to the materials the *Mach Mining* court referenced: the reasonable cause letters and affidavits from the EEOC. (*See* Echeveste Aff., ECF No. 43-1 & accompanying exhibits.) As I describe above, I can determine, without reviewing confidential materials, whether the EEOC met its pre-suit requirements.

I do not read *Mach Mining* to hold that if a defendant disputes whether the conciliation was adequate, a court should completely dispense with the confidentiality requirements of § 2000e–5(b). Instead, it holds that a court should conduct the "limited" fact-finding necessary to resolve a factual dispute. *Mach Mining*, 135 S. Ct. at 1656. Here, there is no factual dispute; instead, there are legal ones. Western Distributing does not dispute it received EEOC's reasonable cause letters. (*See* Gaines Aff., ECF No. 23-1.) On their face, I conclude the reasonable cause letters demonstrate Western Distributing received adequate notice of the allegations. Western Distributing certainly disputes this legal conclusion, but it does not dispute that it actually received the letters. *See id.*

Similarly, the EEOC's affidavit demonstrates it discussed conciliation with Western Distributing, and Western Distributing confirms as much in its own affidavit. (*See id.*) As to the EEOC's investigation, the EEOC's affidavit describes its investigation into the claims from 2012-2014, (Echeveste Aff. ¶ 14, ECF No. 42-1) and Western Transportation does not dispute the accuracy of the affidavit (*see* Gaines Aff., ECF No. 23-1).

Moreover, the extensive materials Western Distributing attached to its motion to dismiss do nothing to resolve whether it received adequate notice of the allegations. They instead consist primarily of the back and forth related to the conciliation process: the precise materials the *Mach Mining* court reminded courts were confidential. 135 S. Ct. at 1655 (holding that the district court improperly refused to strike confidential materials based in its view that it should review "descriptions of the conciliation process"). I therefore agree with the EEOC that those materials (paragraphs 4, 5, 7, and 8 of ECF No. 23-1, and the entirety of ECF Nos. 23-4, 23-5, 23-6, 23-7, 23-9, 23-10, 23-11, 23-12, 23-13, 23-15, 23-16, and 23-17) should be stricken. However, some of the portions of the motion to dismiss (ECF No. 23) that the EEOC argues are confidential actually consist of argument. I therefore only partially grant the EEOC's request to strike portions of Western Distributing's motion to dismiss. I grant the request as to any portions of the motion that describe or cite the confidential materials, specifically:

- the first sentence of the final paragraph on page 5;
- all of page 6 except the first full sentence (beginning with "[a]s such . . . .") and the first sentence of the first full paragraph (beginning with "[t]he EEOC and Western Transportation attended. . . .");
- all of page 7 except the first two sentences of the second full paragraph (beginning with "[o]n December 18 . . . .");
- all of page 8 except the first sentence of the second full paragraph (beginning with "[t]he parties held . . . .") and the first sentence of the third full paragraph (beginning with "[o]n May 19, 2015 . . . .");

- the first full paragraph of page 11;
- the last two sentences of the second paragraph of page 11 (beginning with "[n]onetheless, despite Western Transportation's . . .");
- the first sentence of the first full paragraph of page 12; and
- the second full sentence of page 13 (beginning with "[i]ndeed, during conciliation . . .").

To protect the confidentiality of the documents and avoid further undermining the conciliation process, I will also restrict the materials that are wholly confidential (ECF Nos. 23-4, 23-5, 23-6, 23-7, 23-9, 23-10, 23-11, 23-12, 23- 13, 23-15, 23-16, and 23-17) to Level 1 and allow only the parties and this Court to access them. *See* D.C.COLO.LCivR 7.2(b) (describing "Level 1" restriction as access by the court and the parties). I also grant the EEOC's request to bar Western Distributing from submitting any further materials that are confidential under § 2000e–5(b).

Finally, I note the point of conciliation is to resolve discrimination claims informally through voluntary compliance, not to set up a defense for later. *See Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367–68 (1977) ("Congress, in enacting Title VII, chose '(c)ooperation and voluntary compliance . . . as the preferred means of achieving' its goals." (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44 (1974))). As the Supreme Court recently observed, "[t]he maximum results from the voluntary approach will be achieved if the parties know that statements they make cannot come back to haunt them in litigation. And conversely, the minimum results will be achieved if a party can hope to use accounts of those discussions to derail or delay a meritorious claim." *Mach Mining*, 135 S. Ct. at (quotation and citation omitted). Surreptitiously taking pictures during a conciliation meeting to file in court later hardly seems geared toward informal resolution of the claims.

## I.  **Conclusion**

For the reasons described above, I **DENY** Western Distributing's motion to dismiss (ECF No. 23).  I also **GRANT IN PART** the EEOC's motion to strike (ECF No. 31).  In addition to striking the confidential materials, I direct the clerk of this Court assign a Level 1 restriction to the following documents:  ECF Nos. 23-4, 23-5, 23-6, 23-7, 23-9, 23-10, 23-11, 23-12, 23- 13, 23-15, 23-16, and 23-17.

Dated: November  _21_, 2016 in Denver, Colorado.


BY THE COURT:

   s/Lewis T. Babcock_____
LEWIS T.  BABCOCK