IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01727-LTB-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY, d/b/a WESTERN DISTRIBUTING
TRANSPORTATION CORP., a Colorado Corporation,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff's Opposed Motion for Leave to Add an Aggrieved Individual (the "Motion") [#98]. The Motion has been referred to this Court. [#99] This Court has carefully considered the Motion, related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, I **GRANT** the Motion.

**I.**    **Background**

On July 7, 2016, Plaintiff filed its Complaint alleging violations of Title I and Title V of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991. [#1] Plaintiff brought this action "to correct" Defendant's allegedly "unlawful employment practices on the basis of disability and to provide appropriate relief to Clinton Kallenbach and other aggrieved individuals, who were adversely affected by such practices." [*Id.* at 1] Generally, the Complaint alleges that Defendant

maintained a "full duty" return-to-work policy that impermissibly required employees to return to work without restrictions, failed to provide reasonable accommodations, imposed an inflexible policy of allowing medical leave of no more than 12 weeks, and retaliated against individuals who sought reasonable accommodations. [*Id.* at 2, 5-8, 12-18]

On September 14, 2016, United States Magistrate Judge Nina Y. Wang entered a Scheduling Order setting a December 1, 2016 deadline for Plaintiff to identify aggrieved individuals. [#26 at 23-24] On October 21, 2017, this Court held a discovery hearing primarily concerning the nature of the notice that Plaintiff would mail to Defendant's current and former employees. [#65 at 2-14] Due to a dispute over the language of the notice, Defendant did not object to resetting the deadline for identifying aggrieved individuals. [*Id.* at 15] As a result, the Court extended the deadline to January 16, 2017. [*Id.* at 17] The Court warned Plaintiff that it would "only consider an addition [of aggrieved individuals] after that January 16 deadline [] in exceptional circumstances." [*Id.* at 18]

On January 13, 2017, this Court conducted another hearing on Plaintiff's request to extend the deadline to identify aggrieved individuals. [#71] Plaintiff explained that there were 31 individuals who had not received notice and an additional 75 people who had received notice but likely had not had sufficient time to respond. [*Id.* at 5-7] Plaintiff further explained that there were another 45 people who had indicated that they wanted to participate in the litigation, but who had not yet been interviewed. [*Id.* at 11] This Court granted Plaintiff's request and extended the deadline to identify aggrieved individuals for 45 days. [*Id.* at 18-19] But the Court warned Plaintiff that it would not

"grant[] any additional extensions of time to contact people. By [the] March 6th [status conference] if [aggrieved individuals] haven't joined in, they're[] out."[1] [*Id.* at 19]

On March 24, 2017, the parties filed a Joint Motion to Stay Discovery so that the parties could pursue mediation [#81], which this Court granted [#83]. Over the next six months, the parties pursued settlement discussions and the litigation remained stayed until September 26, 2017. [## 88, 89, 91, 92] These settlement discussions ultimately failed and on September 26, 2017, this Court entered an Amended Scheduling Order. [## 94, 95] Pursuant to the Amended Scheduling Order, discovery is due by September 28, 2018, and dispositive motions are due by November 27, 2018. [#95 at 34-35] A Final Pretrial Conference is set for February 4, 2019 [*id.* at 38], a Trial Preparation Conference is set for June 28, 2019, and trial is set to commence on August 5, 2019 [# 96]. To date, Plaintiff has timely identified 63 aggrieved individuals. [#98 at ¶ 4]

On November 6, 2017, Plaintiff filed the instant Motion. [#98] The Motion seeks to add Lee Sombelon, a former employee of Defendant, as an aggrieved individual. [*Id.* at ¶ 5] Attached to the Motion is a Declaration purportedly completed by Mr. Sombelon.[2] [#98-1] The Declaration asserts that, on December 2, 2016, Mr. Sombelon completed, signed, and returned to Plaintiff the participation agreement. [*Id.* at ¶ 4] After not receiving a status update, Mr. Sombelon made several calls to Plaintiff's

---

[1] As explained in detail below, the additional aggrieved individual Plaintiff seeks to include both was contacted by Plaintiff, and signed and mailed his participation agreement, before the March 6 deadline.

[2] The Declaration purports to be submitted pursuant to 28 U.S.C. § 1746, which allows for the submission of unsworn declarations under penalty of perjury. [#98-1 at 1] The Declaration, however, is neither signed nor dated. [*See id.* at 2] As a result, it fails to comply with Section 1746, which requires both a date and a signature. 28 U.S.C. § 1746(2). Nonetheless, because the Motion does not require a sworn affidavit and, in any event, the Defendant does not appear to challenge the authenticity of the assertions made in the Declaration, the Court will consider it.

general number. [*Id.* at ¶¶ 6-10] Mr. Sombelon did not receive a return call. [*Id.* at ¶ 11]

According to the Declaration, in August 2017, Mr. Sombelon again called Plaintiff's general number and referenced the Notice of Litigation letter. [*Id.* at ¶ 12] This time, Mr. Sombelon was given the number for Plaintiff's counsel in this litigation, Karl Tetzlaff. [*Id.*] On August 25, 2017, Mr. Sombelon contacted Mr. Tetzlaff and left a voice message. [*Id.* at ¶ 13] In early September, Mr. Sombelon received a return phone call from an EEOC Legal Technician, Janet Brown. [*Id.* at ¶ 14] During this conversation, Mr. Sombelon conveyed to Ms. Brown his attempts to participate as an aggrieved individual. [*Id.*]

Approximately two months after Mr. Sombelon's call with Ms. Brown, Plaintiff filed the instant Motion. [#98] Defendant filed an opposition on November 27, 2017 [#100], and Plaintiff replied on December 11, 2017 [#102].

## II. Analysis

While the instant Motion requests leave to add an aggrieved individual, in effect, Plaintiff seeks to modify the Scheduling Order, so as to designate Mr. Sombelon as a witness. [*See generally* #98] By extension, Defendant's opposition to the Motion amounts to its attempt to preclude Mr. Sombelon from testifying about his particular damages. [*See generally* #100]

"Numerous courts have noted . . . that a 'Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (quoting *Widhelm v. Wal-Mart Stores, Inc.*, 162 F.R.D. 591, 593 (D. Neb.

1995)).  Federal Rule of Civil Procedure 16(b)(4) allows modification of a Scheduling Order "only for good cause and with the judge's consent."  "Demonstrating good cause under the rule 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)); *see also Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014). Nonetheless, "total inflexibility is undesirable." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 559, 604 (10th Cir. 1997) (quotations omitted).  As a result, "[a]lthough a good cause inquiry will, in most cases, begin with an inquiry into the movant's diligence, there may be other relevant considerations." *E.E.O.C. v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2016 WL 1039907, at *5 (D. Colo. Mar. 16, 2016) (citing 6A Charles Alan Wright &  Arthur R. Miller, *Federal Practice and Procedure* § 1522.2 (3d ed. 2015)).

Initially, the parties dispute the proper standard that the Court should apply in determining whether Plaintiff has established good cause.  Plaintiff argues that the Court should apply the four-factor test set forth in *Burks v. Okla. Publ'g Co.*, 81 F.3d 975 (10th Cir. 1996) ("the *Burks* factors").  [#98 at 3]  Defendant, on the other hand, contends that *Burks* is inapplicable and the Court should consider only the EEOC's diligence in seeking to add aggrieved individuals.  [#100 at 3 n.1]  The Court agrees with Plaintiff that it may look to the *Burks* factors for guidance in deciding the instant

Motion, but even if the factors did not apply here, the Court would nevertheless grant the Motion.[3]

In *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*, Civil Action Nos. 11-cv-02560-MSK-MEH, 12-cv-02137-MSK-MEH, 2013 WL 551573, at *1 (D. Colo. Feb. 13, 2013), the defendant moved to "strike" four allegedly aggrieved individuals on the basis that they were not timely disclosed. Interpreting the motion as seeking to preclude those individuals from providing testimony about their damages, Chief United States District Judge Marcia S. Krieger found the motion premature, reasoning that "whether such evidence should be precluded cannot be determined until it is clear what evidence will be presented at trial." *Id.* at *2.

While the instant Motion does not involve a defendant's motion to strike, the principles are the same. As noted above, by opposing the Motion, Defendant is effectively asking this Court to preclude Mr. Sombelon from presenting testimony about his particular damages. Plaintiff, on the other hand, essentially seeks to modify the scheduling order to designate Mr. Sombelon as a witness who can testify about his damages. The *Burks* factors are helpful in analyzing such a request. *See JBS USA*,

---

[3] The Court notes that this District has applied different approaches to the Rule 16 good cause analysis. *Compare JBS USA*, 2016 WL 1039907, at *5, *5 n.6 (noting that "[w]here a movant seeks to modify a scheduling order to designate additional witnesses, the Tenth Circuit applies the *Burks* factors," but not resolving whether the magistrate judge was required to apply these factors), *with Underwood v. Geo Group, Inc.*, Civil Case No. 10-cv-00306-LTB-KLM, 2011 WL 2607117, at *2 (D. Colo. July 1, 2011) ("The good cause standard 'does not focus on the bad faith of the movant, or the prejudice to the opposing party[; r]ather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." (quoting *Pumpco, Inc. v. Schenker Intern., Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001))). In any event, the Court need not resolve this issue, because the Court would grant the Motion under either standard.

6

2016 WL 1039907, at *5 (finding *Burks* factors instructive in analyzing a movant's motion to modify the scheduling order to designate additional witnesses).

The *Burks* factors ask the Court to consider:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

81 F.3d at 979. Here, all four factors support granting the Motion. Under the first two factors, Defendant has not identified any prejudice, nor can the Court imagine any prejudice, in allowing Plaintiff to add Mr. Sombelon to the suit, given that the discovery deadline is more than eight months away and trial is more than a year and a half away. As to the third factor, because trial is more than a year and a half away, designating Mr. Sombelon as an aggrieved individual will not disrupt the efficient trial of this case or other cases. Finally, there has been no showing of bad faith—at most, Plaintiff was negligent in failing to put Mr. Sombelon in contact with Attorney Tetzlaff earlier. Thus, the *Burks* factors support granting the Motion.

Moreover, even if the Court were to focus exclusively on Plaintiff's diligence, as Defendant proposes, the Court would still grant the Motion. Plaintiff is bringing this suit pursuant to Section 107(a) of the ADA, which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5. [#1 at ¶¶ 1,3]; *see also* 42 U.S.C. § 12117(a). The Complaint makes clear that Plaintiff is relying on Section 706 and that Plaintiff is seeking relief on behalf of all aggrieved individuals. [#1 at ¶¶ 3, 70-74, 78-81, 85, 87-92, 102, 104-109; pp. 19-20] As a result, Plaintiff essentially "stands in the shoes" of Mr. Sombelon and other individuals, who, in turn, cannot independently bring their own

7

suit once the EEOC has done so. *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009); *see generally E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) (explaining that once a charge is filed, the EEOC is in command of the process and, if the EEOC files suit on its own, the employee has no independent cause of action). Given this relationship between aggrieved individuals and the EEOC, the Court finds it appropriate to consider both the diligence of Plaintiff EEOC and Mr. Sombelon's own diligence when determining whether to allow the EEOC to designate an aggrieved individual beyond the deadline for doing so.

Here, the EEOC's diligence presents a clouded picture. As part of its initial attempt to identify aggrieved individuals, the EEOC sent nearly 1,200 notices to past and present employees of Defendant. [#98 at ¶ 1] After this initial effort, the EEOC "search[ed] for better addresses and remail[ed] hundreds of notices that were returned as undeliverable." [#102 at 3] The EEOC further "interview[ed] more than 100 individuals who returned participation agreements, analyz[ed] the facts presented by the individuals interviewed, and timely identif[ied] 63 aggrieved individuals." [*Id.*] These actions would suggest the diligence needed to satisfy the good cause standard of Rule 16(b)(4).

On the other hand, the EEOC appears to have acted negligently in identifying Mr. Sombelon as an aggrieved individual. For reasons unknown, the EEOC either did not receive or did not properly process Mr. Sombelon's timely application. Regardless of whether the EEOC was initially at fault, however, Mr. Sombelon made numerous further inquiries and the EEOC failed to return Mr. Sombelon's calls. [#98-1 at ¶¶ 6-11] It took months of effort by Mr. Sombelon before the EEOC finally bothered to put Mr.

Sombelon in contact with the attorneys handling this litigation. [*See generally* #98-1] Such a result is especially troubling given the EEOC's role as commander of litigation on behalf of aggrieved individuals.

But, in contrast to the EEOC's actions in handling Mr. Sombelon's inquiries, Mr. Sombelon himself remained diligent in attempting to participate in this litigation. He timely completed and mailed the participation agreement. [*Id.* at ¶ 4] Moreover, he continued to call the EEOC to inquire about the litigation, despite the EEOC's failure to return Mr. Sombelon's phone calls. [*Id.* at ¶¶ 8-10] Weighing Mr. Sombelon's diligence in attempting to participate in this litigation and the EEOC's general diligence in identifying aggrieved individuals, against the EEOC's lack of diligence with respect to identifying Mr. Sombelon, the Court concludes that any lack of diligence should not preclude the EEOC from identifying Mr. Sombelon as an aggrieved individual.

Accordingly, Plaintiff's Opposed Motion for Leave to Add an Aggrieved Individual [#98] is **GRANTED**.

DATED: January 3, 2018    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge
