IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on the Notice and Order Regarding Appointment of Master. [#220] As required by Federal Rule of Civil Procedure 53(b)(1), the Court has given the parties notice, and an opportunity to respond. [*Id.*] Plaintiff filed an objection to the appointment of a special master [#221], and Defendant filed a response to the objection in which it indicated its support for a special master [#224]. On May 15, 2019, the Court held argument on the notice and Plaintiff's objection. [#225] Consistent with Federal Rule of Civil Procedure 53(a)(3), the Court has considered the fairness of imposing the likely expenses on the parties and has protected against unreasonable expense or delay, as described below.

I.    BACKGROUND

The Equal Employment Opportunity Commission ("EEOC") initiated the instant matter against Defendant Western Distributing Company ("Western") in July 2016, alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA") and Title I of the Civil Rights Act of 1991. [*See generally* #1] EEOC brings the action on behalf of 58 aggrieved individuals. [*See generally* ##63, 103; *see also* #224 at 3]

Throughout the course of this litigation, the relationship between counsel has been contentious. The Scheduling Order was initially entered on September 14, 2016. [#26] Over the course of the next five months, the Court held four hearings to resolve disputes related to discovery. [##41, 45, 70, 79]

On March 24, 2017, discovery was stayed in this matter so that the parties could pursue mediation. [##81, 83] Mediation was unsuccessful and, on September 26, 2017, the Court lifted the stay and allowed discovery to recommence. [#94] On April 4, 2018, this Court held another discovery dispute hearing to resolve both a motion to quash a third-party subpoena and a motion for protective order. [#134] At the conclusion of that hearing, the EEOC raised another discovery dispute concern, and the Court set the matter for further hearing on May 7. [#135 at 57-61] The parties represented that they were having extensive discovery disputes, and this Court gave them permission to exceed the Court's page limits for discovery dispute statements. [*Id.* at 62]

On May 4, upon receiving the parties' joint discovery statement, this Court vacated the May 7 hearing. [#142] As detailed in the Court's Minute Order, the parties had "submitted approximately 90 pages of briefing raising over 30 separate disputes." [*Id.* at 1] Moreover, "the parties ha[d] not complied with this Court's Civil Practice Standards,

which require the parties to fully complete their meet and confer process on disputes prior to contacting the Court to set a hearing." [*Id.*]  The Court explained that "[t]he discovery dispute statements submitted to the Court reflect[ed] numerous instances in which supplemental responses ha[d] been promised but not yet delivered and where the parties ha[d] a clear misunderstanding between them about exactly what information is being sought." [*Id.*]  Finally, the Court noted that "a cursory review of the dispute statements ma[de] clear that the parties ha[d] not complied with this Court's directive that the parties make a reasonable, good faith effort to resolve the discovery dispute[s] without the need for judicial intervention." [*Id.* at 2 (quotation omitted)].  Thus, the Court ordered the parties to meet and confer in person in an attempt to resolve the disputes.  [*Id.* at 2-3]

Despite the Court's Order, the parties were unable to resolve their disputes and further judicial intervention was necessary.  The Court thus set an August 27, 2018, discovery dispute hearing. [##161, 173]  In advance of the hearing, the parties submitted two joint statements.  The first involved eight disputes that the parties had concerning EEOC's discovery responses.  The joint statement was 45 pages long.  The second involved seven disputes that the parties had concerning Western's discovery responses. It was 38 pages long.  During a hearing held on August 27, 2018, the Court meticulously went through each of the parties' disputes, and issued a ruling on each.  [#174]  That hearing lasted 1 hour and 44 minutes.  The Court spent hours preparing for the hearing.

Undeterred, 25 days later, the parties once again notified the Court that they had a discovery dispute that needed the Court's attention.  [#184]  Thus, the Court set the matter for another discovery hearing on September 25, 2018. [*Id.*]  This discovery dispute involved a request by the EEOC to quash sixteen subpoenas issued to aggrieved

individuals. The Court had previously resolved a similar dispute amongst the parties. At the September hearing, the Court denied the request to quash the subpoenas. [#185] The Minute Order from the hearing reflects that "[a]fter reviewing the joint statement of the parties *and as indicated at the last hearing* that the information sought by Western is relevant and that the relevance overcomes any privacy interests . . . the court . . . will DENY any request to quash the subpoenas." [*Id.* at 1-2 (emphasis added)] Thus, as reflected in the Minute Order, the Court was obligated to rule on an issue that it had already decided.

Slightly over a month later, the parties again notified chambers that they had a discovery dispute that needed judicial intervention. [#188] In advance of the hearing, the parties once again submitted two joint statements. The first purportedly involved four issues raised by the EEOC, but subsumed within the first issue was the EEOC's argument that Western had submitted deficient responses to 16 requests for production. The joint statement was 24 pages long. The second involved two issues raised by Western. That joint statement was 12 pages long. On November 20, 2018, the Court held a hearing on the disputes. [#190] The hearing lasted just under one hour, but the Court spent hours preparing for the hearing.

A month later, on December 21, 2018, the parties again notified the Court that they had a discovery dispute that required the Court's attention. [#199] The Court set a hearing for January 8, 2019. [*Id.*] Due to the government shutdown, however, the hearing was vacated and the case was stayed. [#202] On February 25, 2019, following the conclusion of the government shutdown, the Court lifted the stay and entered a new discovery deadline of August 2, 2019. [#211]

4

On March 15, 2019, the parties again contacted the Court in need of judicial resolution of a discovery dispute. [#212] The Court set a hearing for April 4, 2019. [##212, 213] Once again, the parties submitted two joint statements in advance of the hearing. The first was an issue raised by the EEOC as to whether Western should be permitted to take the deposition of the lead investigator who had interviewed numerous aggrieved individuals. The EEOC objected on relevance and burden grounds, even though the investigator clearly had relevant information and, indeed, her notes conflicted with the sworn testimony of some of the aggrieved individuals. The joint statement on this first issue was 13 pages long.

The second statement involved several issues raised by Western. Western objected to the deposition of its CEO under the apex doctrine. It did so even though the CEO was identified in Western's Rule 26 disclosures as a witness Western expects to rely upon to establish its defenses, the CEO provided the verification for many of Western's responses, and the CEO had already attended 28 depositions in this case.

Another issue raised by Western's statement of issues involved the sufficiency of the EEOC's responses to 17 standard requests for admission and one non-standard requests for admission. The standard requests for admission were directed at each of the 58 aggrieved individuals, thus Western apparently challenged the responses to 986 requests for admission (17*58). The second statement was 46 pages long. At the April 4 hearing, the Court resolved some of the parties' disputes. [#215] The Court also raised the possibility of appointing a special master, especially given the apparent challenge to 986 requests for admission. [*Id.*]

5

On April 16, 2019, this Court issued its Notice and Order Regarding Special Master, providing notice of the Court's intent to appoint Jane G. Ebisch, Esq. as a master to handle discovery disputes in this case. [#220] The Court gave the parties the opportunity to object to this appointment. [*Id.* at 2] EEOC objected to the appointment of a master, arguing that: (1) a master was not warranted, (2) appointment of a master may cause the EEOC to run afoul of federal procurement laws, (3) the Court had not sufficiently laid out the procedure for how discovery matters would be submitted to the master, and (4) Ms. Ebisch had a conflict because she represented a client before the EEOC. [#221]

Western responded to the EEOC's objection, arguing against each point raised by the EEOC. [#224] Of note, Western indicated that it had several discovery disputes that needed to be resolved. [*Id.* at 4-7] These included the EEOC's responses to requests for admission discussed above, "significant issues pertaining to EEOC's ESI," the EEOC's production of videos and pictures from an entry of land inspection, the EEOC's allegedly burdensome discovery requests, the EEOC's request to exceed the deposition limit established by the Court, and the EEOC's allegedly improper deposition conduct. [*Id.*]

On May 15, 2019, the Court held a hearing on the Notice and the EEOC's objection. [#225] During the hearing, the Court ordered the parties to confer on a possible special master that both sides could agree upon. [*Id.*] The Court then took the appointment of a master under advisement. [*Id.*] Later that day, the EEOC submitted a proposed order in the event the Court appointed a master. [#232]

On May 20, 2019, the parties notified the Court that they could not agree upon a specific master should the Court ultimately appoint a master. [##231, 233] That same

day, Western also filed its objection to the proposed order submitted by the EEOC. [#226] Specifically, Western: (1) objected to the EEOC's proposal that this Court review each discovery motion prior to submitting the motion to the master, and (2) argued that the master should be given discretion to conduct informal telephone conferences for issues requiring immediate attention. [*Id.*] Also on May 20, Western filed a motion for extension of time to respond to certain discovery requests propounded by the EEOC. [#230] The EEOC opposes that extension. [#234]

## II. ANALYSIS

The EEOC raises four arguments against the appointment of Ms. Ebisch as special master. [#221] The EEOC argues that: (1) a master is not warranted, (2) appointment of a master may cause the EEOC to run afoul of federal procurement laws, (3) the Court has not sufficiently laid out the procedure for how discovery matters will be submitted to the master, and (4) Ms. Ebisch has a conflict because she represents a client before the EEOC. [*Id.*] The Court addresses each argument below.

### A. A special master is warranted

Federal Rule of Civil Procedure 53(a)(1)(C) authorizes the appointment of a special master to address pretrial matters "that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." The appointment of a master to handle discovery disputes is the exception, not the usual or common practice. 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2602.1 (3d ed. 2019). "Although discovery disputes usually should not require the supervision of a master, the appointment of a master may be necessary at times to resolve protracted disagreements between counsel and to alleviate the burdens on the district judge." *Id.*

(footnotes omitted). Courts in this district have appointed masters to oversee discovery disputes and rule on deposition objections in particularly contentious cases where the court had already held numerous discovery hearings. *Smith v. Keypoint Gov't Sols., Inc.*, No. 15-cv-00865-REB-KLM, 2016 WL 7324606, at *4 n.8 (D. Colo. Dec. 16, 2016) (referencing earlier appointment of a master because the parties had "proved beyond the limits of the court's ordinary mechanisms for handling disputatious discovery"); *Moreland v. State Farm Mut. Auto. Ins. Co.*, No. 06-cv-01075-REB-MJW, 2007 WL 1033453, at *1, *4 (D. Colo. April 3, 2007) (adopting recommendation to appoint special master due to deposition misconduct, continuing discourtesy of counsel, and the inability of the parties to proceed in an orderly fashion in conducting discovery).

This case satisfies the criteria for appointing a special master to handle discovery disputes. As detailed above, the Court has already conducted nine discovery dispute hearings. The hearings have collectively taken approximately six hours of courtroom time. The Court has had to review hundreds of pages of briefing on the discovery disputes, and estimates that it has taken approximately 40 hours to prepare for the various disputes. On several occasions, the Court has had to rule on issues that it had either previously decided, or issues that should have been resolved by the parties based on the guidance provided by the Court's previous rulings.

In May 2018, the Court imposed a remedial measure of ordering the parties to confer in person about any discovery disputes.[1] [#142] This did not work. Indeed, since

---

[1] Thus, contrary to the EEOC's argument [#221 at 7], the Court has already attempted to impose remedial measures, short of appointing a master. The EEOC's related argument that the Court's informal discovery procedures have increased the number of disputes is unavailing. The Court requires the parties to meet and confer, in the hope that the parties can resolve some of their issues without Court intervention. If they cannot, the Court

8

then, the tension between the litigants appears to have heightened. Over the course of the last year, when the matter has not been stayed, the parties have not gone two months before contacting the Court with a discovery dispute. The EEOC has challenged at least 16 of Western's responses to requests for production, and Western has challenged the EEOC's responses to 17 standard requests for admission.

Since the last discovery dispute in April 2019, Western indicates that numerous additional disputes need to be resolved. These include the EEOC's responses to requests for admission discussed above, "significant issues pertaining to EEOC's ESI," the EEOC's production of videos and pictures from an entry of land inspection, the EEOC's allegedly burdensome discovery requests, the EEOC's request to exceed the deposition limit established by the Court, and the EEOC's allegedly improper deposition conduct. [#224 at 4-7] In addition, as detailed earlier, the Court may need to resolve nearly 1,000 requests for admission responses. And, given that the disputes have seldom been one-sided, the Court anticipates that the EEOC has issues to raise with respect to Western's discovery conduct. Indeed, currently pending is Western's opposed motion for extension of time to respond to certain EEOC discovery requests. [##230, 234]

The discovery period ends in just over two months. [#211] In addition to the pending disputes outlined above, the EEOC has proposed 17 new depositions. [#224 at

---

requires the parties to submit a joint statement of disputed issues, rather than filing a formal motion. The Court follows this procedure so that it can quickly resolve the parties' dispute, rather than going through the more time-consuming process of waiting for a formal motion, response, and reply. To the extent the EEOC is arguing that the parties are more willing to take frivolous discovery positions because their joint statements are emailed to the Court rather than filed in a formal motion, the Court would hope that counsel's professional responsibilities and duty of candor would cause counsel to observe the same professionalism in an emailed statement as they would in a formally filed motion or response.

6] Moreover, Western anticipates that at least six experts will be deposed. [*Id.*] Given that Western has already accused the EEOC of deposition misconduct, the Court would not be surprised if the parties needed the Court to resolve disputes during the depositions themselves.

The Court recognizes that the appointment of a master should be the exception, not the rule. Indeed, this Court has never before appointed a master to handle a discovery dispute. Nonetheless, the time already spent resolving the parties' discovery disputes and the anticipated time needed to resolve pending and future disputes demonstrates that this case qualifies as the exception.

### B. Appointment of a special master will not violate procurement laws

Next, EEOC argues that the additional costs of a special master could run afoul of federal procurement laws. [#221 at 4-6] In response, Western argues that there are numerous cases involving the EEOC where a special master has been appointed and, in some cases, it has been the EEOC who requested the appointment. [#224 at 7 (citing *E.E.O.C. v. Original Honeybaked Ham Co. of Ga.*, No. 11-cv-02560-MSK-MEH, 2013 WL 753480, at *1 (D. Colo. Feb. 27, 2013); *E.E.O.C. v. Z Foods, Inc.*, 1:09-CV-02127-OWW-SMS, 2011 WL 13254378, at *9 (E.D. Cal. Feb. 23, 2011); *E.E.O.C. v. Aaron Rents, Inc.*, No. 3:08-cv-683 MJR-DGW, 2009 WL 4068008, at *6 (S.D. Ill. Nov. 24, 2009))] During oral argument, the EEOC conceded that the appointment of a master would not necessitate the violation of federal procurement laws, but that the EEOC may need to get certain approvals in advance of incurring the obligations. The Court is confident that the EEOC will be able to manage the approvals needed for any special master fees, and has fashioned its Order to allow for such approvals prior to the master beginning work on a

10

dispute. Accordingly, the Court will not refuse to appoint a master because of concerns over federal procurement laws.

### C. Concerns over procedures for the special master to resolve disputes

The EEOC also objected to the appointment of the special master because the Court's notice did not set forth the procedures the master would use in resolving disputes. [#221 at 6-8] During the hearing, the Court explained the procedures that would be used, and gave the EEOC the opportunity to present its own proposed order of appointment. The Court has largely adopted the EEOC's proposed order, as delineated below. Thus, the EEOC's concerns about the procedure have been mooted.

### D. Ms. Ebisch's potential conflict

Finally, the EEOC has raised a concern about the appointment of Ms. Ebisch as a special master. [#221 at 8-9] In particular, the EEOC has raised the concern that Ms. Ebisch is currently representing a client before the EEOC and any finding of discrimination by the EEOC in those proceedings may bias Ms. Ebisch against the EEOC here. [*Id.*] While the Court does not necessarily share the same concerns, out of an abundance of caution, the Court will appoint Judge Boyd N. Boland to serve as special master. The parties have agreed that Judge Boland does not have any conflicts that would prohibit him from serving as a special master in this case. [##233, 237]

### III. Order Appointing Special Master[2]

**IT IS HEREBY ORDERED** that, pursuant to Fed. R. Civ. P. 53, Judge Boyd Boland is **APPOINTED MASTER** for the purpose of resolving discovery disputes referred to the Master by this Court.

**IT IS FURTHER ORDERED** that:

1. The parties shall not engage in any *ex parte* discussions with the Master and the Master shall not engage in any *ex parte* discussions with any of the parties. The Master may engage in *ex parte* discussions with Magistrate Judge Varholak.

2. The parties are no longer obligated to comply with Magistrate Judge Varholak's discovery procedures. All discovery disputes, except for those set forth in Paragraph 5 below, shall be addressed by filing the appropriate motion (and subsequent briefing) on the Court's docket. All filings must comply with the applicable Federal and Local Rules.

3. Magistrate Judge Varholak will review each discovery motion to determine in his discretion whether the dispute should be referred to the Master. Magistrate Judge Varholak will refer appropriate discovery motions to the Master. This may include the pending motion for extension of time filed by Western. [#230]

---

[2] Western objects to two aspects of the EEOC's Proposed Order Appointing Master for Discovery [#226-1], which the Court adopts in large part here. First, Western argues that the Master should be given discretion to conduct informal conferences for issues needing urgent attention, such as those that may arise during a deposition. [#232 at 1] The Court has addressed this concern in Paragraph 5 of the Order. Second, Western does not agree that the Court should first review the dispute to determine whether the dispute should be referred to the Master. [*Id.*] Here, the Court agrees with the EEOC that the Court should conduct a preliminary review of any dispute to determine whether the dispute can readily be resolved without reference to the Master. The Court retains discretion to make such a determination.

4. For each motion referred to the Master by Magistrate Judge Varholak, the Master will provide the parties with a non-binding estimate of the time and expenses to decide the matter and complete all necessary paperwork to be compensated by the EEOC. The Master may not begin his consideration of the matter until the EEOC advises the Master that money has been obligated for the matter.

5. If a dispute needs urgent attention, such as one that occurs during a deposition that needs resolved during the deposition itself, the parties may contact Magistrate Judge Varholak's chambers and notify chambers of the dispute. In his discretion, Magistrate Judge Varholak may either resolve the dispute or refer the dispute to the Master.

6. After referral by Magistrate Judge Varholak, the Master shall convene such hearings or direct the submission of additional briefs or materials as the Master deems appropriate and shall issue orders resolving such disputes.

7. The parties shall file on the docket all papers filed for consideration by the Master. The Master shall also file on the docket all orders and reports.

8. After referral by Magistrate Judge Varholak, the Master shall have the sole discretion to determine the appropriate procedures for resolution of all assigned matters as set forth above and shall have the authority to take all appropriate measures to perform the assigned duties as set forth above. The Master may, by order, impose upon a party any sanction other than contempt and may recommend a contempt sanction against a party and contempt or any other sanction against a non-party.

9. Any party seeking review of any ruling by the Master shall file objections pursuant to Fed. R. Civ. P. 53(f)(2). All such objections will be resolved by Magistrate Judge Varholak.

10. The Master shall be reimbursed by the parties for all reasonable fees and expenses incurred. As to any particular portion of the proceedings necessitated by the conduct of one party, the Master may assess fees and expenses of that portion of the proceedings to the responsible party. It is in the discretion of the Master to allocate the fees and expenses between the parties.

11. The Master shall be paid $450 per hour for work done pursuant to this Order. The Master shall bill the parties on a monthly basis for fees and disbursements. Payment to the Master by the parties shall be due upon receipt.

DATED: May 22, 2019

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge