**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

WESTERN DISTRIBUTING CO.,

      Defendant.

---

**ORDER ON 702 MOTIONS FILED IN CONJUNCTION
WITH SUMMARY JUDGMENT BRIEFING**

---

In this case, the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") sues Western Distributing Company ("Western Distributing" or "Defendant") on behalf of 57 aggrieved individuals, alleging a pattern or practice of discrimination against employees with disabilities, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

Before the Court are the following motions, brought under Federal Rule of Evidence 702 and submitted in conjunction with the parties' summary judgment briefing, as required by WJM Revised Practice Standards III.H.2:

- Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Arthur Gutman, Ph.D. ("Gutman Motion") (ECF No. 884);

- Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Catherine L. Schelly ("Schelly Motion") (ECF No. 888); and

- Plaintiff's Motion to Exclude Opinions and Testimony of Defense Expert

Jimmy Sill ("Sill Motion") (ECF No. 890).

Each motion is ripe for disposition.

For the reasons set forth below, the Gutman Motion is granted in part, denied in part, and denied as moot in part; the Schelly Motion is granted in part, denied in part, and denied as moot in part; and the Sill Motion is denied.

## I. BACKGROUND[1]

Both parties have retained several experts for this litigation. Among them are Arthur Gutman, Ph.D., who Plaintiff retained as an expert on industrial and organizational psychology and personnel selection (ECF No. 883-2 at 2); Catherine L. Schelly, who Plaintiff retained as an expert on occupational therapy (ECF No. 886-1 at 2); and Jimmy Sill, who Defendant retained as an expert on the ground transportation industry (ECF No. 889-1 at 2). Each expert provided an expert report and has been deposed.

### A.    Dr. Gutman

Dr. Gutman is Professor Emeritus at Florida Institute of Technology, where he was a member of the faculty for 35 years. (ECF No. 883-2 at 2). He is a Fellow of the Society of Industrial and Organizational Psychology, and his work was among the top 2% of cited publications in the field of industrial and organizational psychology as of 2017. (*Id.* at 2, 2 n.2.) He has authored or co-authored more than 50 articles on industrial and organizational psychology, published a frequently cited book on personnel selection practices and equal employment opportunity laws, and authored or co-authored numerous book chapters. (ECF No. 883-2 at 2–4.) He has served as an

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

expert consultant in over 20 cases in federal court.  (*Id.* at 5.)

Defendant challenges four of Dr. Gutman's opinions as inadmissible on the basis that he is unqualified to offer them or that they are otherwise unreliable.  (ECF No. 884.) Those opinions are:

- Opinion 1: Defendant's "actual policies and practices" do not prohibit disability discrimination.  (*Id.* at 1.)

- Opinion 2: Defendant "rarely engaged in any interactive process with employees on medical leave."  (*Id.* at 2.)

- Opinion 3: Defendant's Director of Human Resources, Jennifer Maddox, was unqualified.  (*Id.*)

- Opinion 4: Not all job functions are essential.  (*Id.*)

**B.    Schelly**

Schelly is an occupational therapist and Fellow of the American Occupational Therapy Association.  (ECF No. 886-1 at 2.)  From 1987 until 2017, Schelly worked at the Center for Community Partnerships at Colorado State University ("CSU"), serving as Director beginning in 1992.  (*Id.*)  As Director, Schelly oversaw a large staff of occupational therapists and human services professionals who worked with individuals with disabilities, injuries, or medical challenges seeking employment, returning to work after an injury, or pursuing education.  (*Id.*)  Schelly was also a faculty member at CSU, conducting research and teaching graduate occupational therapy courses.  (*Id.*)  Schelly has conducted training courses on the ADA for employees of CSU and the City of Fort Collins.  (*Id.*)  In her work with the City of Fort Collins, she provided guidance on employment challenges and accommodations for employees with disabilities,

recommendations on appropriate ADA-driven job announcements, essential job functions documentation, and interviewing and hiring protocols.  (*Id.*)

Defendant challenges three of Schelly's opinions on the basis that she is unqualified to offer them, or that they are an improper legal conclusions.  (ECF No. 888.)  Those opinions are:

- Opinion 1: Loading and unloading the vehicle are marginal job functions, because they are rarely done by the driver; and the attachment of snow chains is rarely necessary, and drivers can carry/pull one 25-pound chain at a time, discrediting Defendant's 50-pound lifting requirement.  (*Id.* at 2.)

- Opinion 2: ErgoMed, a company Defendant hired to perform physical capacity testing, did not accurately measure the physical demands of certain positions. (*Id.*)

- Opinion 3: A long-handed mirror can be used to look underneath a vehicle when performing inspections required by the Department of Transportation ("DOT").  (*Id.*)

## C.    Sill

Sill has over 20 years of experience in the trucking and warehouse industries and more than 10 years of operational and production experience with Fortune 500 companies.  (ECF No. 889-1 at 2.)  Sill has assisted motor carriers in more than 100 compliance reviews and has been a testifying witness or subject-matter consultant in more than 75 cases.  (*Id.*)  Sill is a professional safety consultant and trainer in the transportation industry, preparing curricula and conducting seminars and workshops on industry standards, regulations, safety practices, and procedures in the ground

transportation industry.  (*Id.*)  Sill has held roles as Lead Safety Consultant and Senior

Risk Manager for companies specializing in regulatory compliance, industry standards,

and best practices in the industry.  (*Id.* at 3.)  Over the last 20 years, Sill has also been

involved in evaluating essential job functions in driving and non-driving positions within

the ground transportation industry, developing job descriptions, performing job hazard

analysis, and developing pre-duty, work-hardening, and return-to-work physical

requirement guidance.  (*Id.* at 4.)

Plaintiff challenges Sill's opinions concerning five assistive devices on the basis

that he is unqualified to offer them or that they are otherwise unreliable.  (ECF No. 890.)

Those opinions are:

- Opinion 1: Snow socks are less durable and more expensive in the long
  term than snow chains, have worse traction in certain environments
  compared to snow chains, and are generally inappropriate for commercial
  use.  (*Id.* at 3.)

- Opinion 2: Traction sanders require consistent loading of sanding material
  and frequent inspections and cleaning and are not designed for consistent
  or sustained use.  (*Id.* at 4.)

- Opinion 3: Automatic snow chains were originally intended for intermittent
  use and not in "serious inclement weather," may not be a substitute for
  traditional snow chains when weather requires chains under "Chaining
  Laws," are a financial burden causing undue hardship for employers, and
  frequently break.  (*Id.* at 4–5.)

- Opinion 4: Hood lift devices are cost prohibitive and unjustifiably

burdensome for employers, are not readily available, are unproven science and not generally accepted, lead drivers unfamiliar with them to damage their rigs, and contribute to accidents.  (*Id.* at 5.)

- Opinion 5: Automatic decouplers are cost prohibitive and unjustifiably burdensome, frequently fail (especially in colder climates), are often damaged by drivers unfamiliar with them.  (*Id.* at 5–6.)

## II. LEGAL STANDARDS

A district court must act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993).  The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) the opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods."  *Id.*  The proponent of expert testimony has the burden to show that the testimony is admissible.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.  Further,

Rule 402 provides that irrelevant evidence is not admissible.

### III. ANALYSIS

The Court considers the challenged opinions of each expert in turn.

**A.    Dr. Gutman**

1.    <u>Opinion 1</u>

Defendant argues that Dr. Gutman offers the impermissible opinion that

Defendant's "purported policy of terminating employees after 12 weeks of leave violates

the ADA."  (ECF No. 884 at 3.)  It also argues that he "mischaracterizes" Defendant's

return-to-work policy as requiring "no medical restrictions."  (*Id.*)  Defendant

characterizes Dr. Gutman's conclusion as being that Defendant's policies are

"inadequate from an HR and IO [industrial and occupational] perspective, as well as

[under] the ADA rules."  (*Id.* (quoting ECF No. 883-1 at 13).)

Defendant argues Dr. Gutman is not qualified to offer these opinions because he

never studied equal employment opportunity policies prior to being retained for this

lawsuit; has no formal education in the ADA, business, or human resources; has never

previously studied what companies have in their handbooks on the ADA; and was not

aware that an employer may fire an employee after they exhaust 12 weeks of leave if

their request for additional leave is indefinite.  (*Id.* at 4.)  Defendant also argues Dr.

Gutman's answer to one of counsel's questions at his deposition proves Plaintiff did not

provide adequate information to Dr. Gutman for him to form his opinions.  (*Id.*)

Defendant next argues that Dr. Gutman's opinion is unreliable because it was

based on a review of only "12 or 13" of the aggrieved individuals in this case.  (*Id.*)

Defendant argues it is "alarming" that Dr. Gutman did not know how many aggrieved

individuals there are in this case and suggests Plaintiff skewed his opinions by only

providing him with the most egregious examples.  (*Id.* at 4–5.)  Defendant further argues

Dr. Gutman's opinion rests upon insufficient, cherry-picked data.  (*Id.* at 5.)  Defendant

criticizes Dr. Gutman's focus on a subset of the aggrieved individuals in this case; his

interpretation of Defendant's policies in practice rather than as described in writing; the

factual basis for his opinion that Defendant has a lot of resources; his failure to initially

consider the leave and return-to-work policies in connection with other policies at

Defendant or Maddox's deposition testimony; his failure to consider certain DOT

regulations; and his failure to apply the job analysis methodology.  (*Id.* at 8–9.)

Defendant also takes issue with Dr. Gutman's methodology.  At his deposition,

Dr. Gutman testified that he formed his opinions in this case via "systematic

observation," which he described as a "general term" used in "experimentation and in

scholarly inquiring."  (*Id.* at 6.)  Defendant contrasts this with a reference to "job

analysis" in Dr. Gutman's report, emphasizing that job analysis is peer reviewed, but

systematic observation is not.  (*Id.*)  Dr. Gutman described job analysis as making

systematic observations and comparing the employer's actions with what he believes

the law requires.  (*Id.*)  Defendant argues, had Gutman performed job analysis as he

should have, the resulting opinions would be impermissible because the method results

in an expert offering improper legal conclusions.  Defendant argues Dr. Gutman in fact

offers many legal conclusions as expert opinions, including that Defendant's policies did

not meet "ADA or professional standards" and that Defendant "violated ADA standards."

(*Id.* at 6–7.)

Plaintiff responds that Defendant's argument regarding Dr. Gutman's

qualifications focuses entirely on certain aspects of his deposition testimony while

ignoring that his curriculum vitae, report, and deposition testimony as a whole demonstrate his "extensive training, experience, and expertise in EEO, ADA, HR, and personnel selection issues relevant to this case." (ECF No. 894 at 7.) Plaintiff argues that the examples from Dr. Gutman's deposition where he said he could not provide an answer without more information or because he is not a lawyer do not call his qualifications into question. (*Id.*) If anything, Plaintiff contends, Dr. Gutman's refusal to respond to "complicated, incomplete hypotheticals" with definitive answers demonstrates Dr. Gutman's "respect[ for] the fact-specific nature of ADA issues," and his refusal to answer complicated legal questions demonstrates his "awareness of the appropriate boundaries of his expert opinion." (*Id.*)

With respect to Defendant's argument that Dr. Gutman did not consider sufficient facts or data, Plaintiff responds that Defendant's "argument hinges largely on Western[ Distributing's] mistaken argument that the EEOC must prove its pattern-or-practice case using statistics or anecdotes." (*Id.* at 7–8.) Instead, Plaintiff argues that Dr. Gutman's report is clear that he is analyzing and opining on Defendant's policies and practices directly, and he testified in his deposition that counter examples from Defendant would have "no impact on his conclusions about the individuals whose facts he reviewed." (*Id.* at 8.) Plaintiff argues that Defendant's assertion Dr. Gutman should have considered DOT regulations is "not legally accurate" and ignores that "the parties have hired other experts to opine on DOT issues." (*Id.*) Plaintiff points out that Dr. Gutman reviewed Defendant's written policies contained in its policy manuals and argues that it was appropriate for him to consider both the written policies and what Defendant did in practice. (*Id.* at 10–11.) In Plaintiff's view, Defendant's arguments go

to the weight the jury should assign Dr. Gutman's opinions, suggesting Defendant "is free to argue at trial that Dr. Gutman should have reviewed even more facts and data." (*Id.* at 8, 11.)

Plaintiff further argues Dr. Gutman's methodology is adequate.  It asserts that Defendant's argument conflates his testimony in response to Defendant's questions at his deposition and the actual analysis he performed in this case.  (*Id.* at 8.)  Plaintiff argues that Dr. Gutman was not asked to, and in fact did not, perform a job analysis, and therefore, job analysis methodology is "irrelevant."  (*Id.*)  In Plaintiff's view, Dr. Gutman has sufficient expertise and experience to explain the relevant human resources industry standards, compare them with the facts of this case, and opine that Defendant's conduct fell short of those standards.  (*Id.*)

Plaintiff also contests Defendant's characterization of Dr. Gutman's opinions as legal conclusions.  "Dr. Gutman's expertise is in advising HR and related professionals on what the appropriate industry standards are, and those standards inherently involve reference to the ADA and to operating within the law."  (*Id.* at 9.)  In a footnote, Plaintiff requests that if the Court finds some of Dr. Gutman's opinions in this vein are legal conclusions, that it offer guidelines for what Dr. Gutman can and cannot opine on, rather than simply excluding these opinions wholesale.  (*Id.* at 10 n.3.)

In its reply, Defendant merely reiterates the arguments it made in its initial motion.  (ECF No.897 at 1–4.)

After considering the parties' arguments and reviewing Dr. Gutman's expert and supplemental expert reports (ECF Nos. 883-1, 883-2), the Court finds Dr. Gutman is qualified to offer most of the objected-to opinions styled by Defendant as "Opinion 1."

Dr. Gutman's career in industrial and organizational psychology spanned more than three decades, during which he authored numerous articles and book chapters on topics including personnel selection and equal employment opportunity, age discrimination, and nepotism, in addition to teaching various topics related to personnel selection and statistics.  (ECF No. 883-2 at 2–5.)  The Court agrees with Plaintiff that Dr. Gutman has "extensive training, experience, and expertise" in human resources and personnel selection issues relevant to this case.  (ECF No. 894 at 7.)  Further, the Court agrees that "job analysis" is not necessary for Dr. Gutman to opine that Defendant's policies substantially differ from standards in the human resources industry, which is the core of Opinion 1.  Rule 702 does not require an expert to employ a scientific methodology—or even something *like* a scientific methodology.  It is common, and expressly permitted by Rule 702, for experts to opine based on their training and experience.  *Nacchio*, 555 F.3d at 1241.

In fact, performing job analysis in the way that Dr. Gutman describes the method may well have resulted in him offering impermissible opinions.[2]  At his deposition, Dr. Gutman described job analysis as "making systematic observations[ and] comparing what was done to what [he] believe[s] the law required" under those circumstances.  (ECF No. 882-3 at 21.)  While it is permissible for an expert to testify to "ultimate issue[s]," Fed. R. Evid. 704, and the U.S. Court of Appeals for the Tenth Circuit's case law permits experts to "refer to the law in expressing their opinion," experts are still prohibited from usurping the function of the finder of fact.  *United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (quoting *United States v. Bedford*, 536 F.3d 1148,

---

[2] As noted above, Defendant' argues that performing job analysis yields legal conclusions.  (*See also* ECF No. 884 at 6.)

1158 (10th Cir. 2008)) (internal quotation marks and alteration omitted).  Determining whether a set of facts gives rise to a violation of the law is the exclusive province of the jury, *see id.*, but that is precisely the task Dr. Gutman described when he explained job analysis to defense counsel at his deposition.  Wisely, Dr. Gutman generally stopped short of applying the law to the facts and instead only performed the first part of job analysis—systematic observation of the facts—in forming his opinions in this case.  (ECF No. 882-3 at 21.)

Some of Dr. Gutman's opinions, however, do apply facts to law and therefore improperly usurp the duty of the jury.  For instance, despite Plaintiff's assertion that understanding and applying industry standards in human resources and personnel selection requires some intersection with the law, opinions that Defendant "did not meet" or "violated ADA standards" go further.  (ECF No. 884 at 6–7.)  These opinions compare Dr. Gutman's understanding of the facts with what he believes federal law requires and, as such, are impermissible legal conclusions.  *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1993).   Dr. Gutman may testify as to industry standards in human resources and personnel selection, that Defendant violated those standards, and that federal laws such as the ADA shape those standards, but he may not testify that Defendant violated ADA standards or violated the ADA.

With respect to Defendant's other arguments that Dr. Gutman had insufficient or biased information, did not seek out or review additional information, and has not received formal education and training in or performed research on various subjects Defendant believes are relevant, the Court finds that they go to the weight the jury should give to such testimony, and not to the admissibility of Dr. Gutman's opinions.  To

the extent these arguments have merit, they are more appropriate for cross-examination.

Therefore, with respect to Opinion 1, the Gutman Motion is granted in part and denied in part.

2.   Opinion 2

Defendant argues Opinion 2 is impermissible because it is based on insufficient information, Dr. Gutman was unqualified to offer it, and it is otherwise unreliable.  (ECF No. 884 at 10–12.)  Defendant echoes its argument above, claiming that Dr. Gutman's opinion is based on insufficient facts because he failed to review Maddox's deposition.  (ECF No. 884 at 10–11.)  It argues Dr. Gutman is unqualified to offer Opinion 2 because it is based in part on his assessment of whether Defendant properly considered the availability of various assistive devices, despite not being an expert on the trucking industry or DOT requirements.  (*Id.* at 11.)  And it argues that Dr. Gutman's opinion that Defendant could have accommodated one of the aggrieved individuals' weight limitations via a hydraulic ramp is irrelevant because it is not tied to the specific facts of this case.  (*Id.* at 12 (citing *Hobdy v. Wells Fargo Bank*, 2019 WL 132137, *2–3 (D. Colo. Jan. 8, 2019).)

Plaintiff responds that Dr. Gutman does not in fact offer Opinion 2, and does not opine at all on the "frequency of Western [Distributing] engaging in the interactive process."  (ECF No. 894 at 11.)  For this reason, Plaintiff offers no response to Defendant's arguments.  (*Id.*)  Instead, Plaintiff clarifies that Dr. Gutman opines that Defendant's policies "do not provide for and preclude the interactive process."  (*Id.* at 11 n.4.)  All of Defendant's other arguments, Plaintiff contends, goes to the weight this testimony should be given, rather than to its admissibility.  (*Id.* at 11 n.5.)

Defendant argues Plaintiff has "effectively withdrawn Opinion 2" and seeks an order precluding Dr. Gutman from expressing "any opinion about Western[ Distributing's] engagement in the interactive process" or "as to any assistive device, as these opinions were connected to Opinion 2."  (ECF No. 897.)

The Court will hold Plaintiff to its representation and not permit Dr. Gutman to testify as to the frequency with which Defendant engaged in the interactive process. This portion of Defendant's Motion is therefore moot.

Further, the Motion is granted in part in that, consistent with the Court's ruling on Opinion 1, Dr. Gutman will not be permitted to opine on whether Defendant's policies or conduct violated "ADA standards."  The Court agrees with Plaintiff, however, that Defendant's other arguments go to weight rather than admissibility, and further notes that its reliance on *Hobdy* (a decision issued by the undersigned) is misplaced.  In *Hobdy*, the expert opined that voice recognition software was available and a reasonable accommodation, which was found to be improper because he had not investigated whether such software would have been compatible with hardware or software necessary for the plaintiff to do her job.  2019 WL 132137, at *2–3.  Dr. Gutman expresses no opinion on whether a hydraulic ramp was available or a reasonable accommodation; he simply notes that an aggrieved individual testified that a hydraulic ramp would have accommodated his weight restriction, and Dr. Gutman opined that Defendant did not properly consider the availability of such an accommodation.  (ECF No. 883-2 at 12.)

Therefore, with respect to Opinion 2, the Gutman Motion is granted in part, denied in part, and denied as moot in part, as set forth above.

3.    Opinion 3

Defendant argues Opinion 3 is inadmissible for several reasons already discussed above: (1) Dr. Gutman did not review HR Director Maddox's deposition; (2) Dr. Gutman has no formal education in business or human resources; (3) and Dr. Gutman used "no methodology" to form Opinion 3.  (ECF No. 884 at 13.)  Defendant also argues Dr. Gutman is unqualified to offer Opinion 3 because he has never served as an expert on whether someone is qualified to serve in a human resources position and because Maddox's qualifications to serve as HR director is not an element of Plaintiff's claims.  (*Id.*)

Plaintiff responds that Dr. Gutman is qualified to offer this opinion because of his writing, research, and teaching experience, that Maddox's qualifications for her role are relevant because Defendant "asserts that Maddox was responsible for Western[ Distributing's] reasonable accommodation process, and Defendant's other arguments go to weight rather than admissibility.  (ECF No. 894 at 12.)

The Court finds Dr. Gutman qualified to offer Opinion 3 and further finds that opinion relevant to this case.  The parties focus on whether Maddox's "qualifications," generally, are relevant.  (ECF No. 884 at 13; ECF No. 894 at 12; ECF No. 897 at 5.)  The Court finds that whether Maddox is qualified to be an HR Director generally speaking is irrelevant, and Dr. Gutman will be precluded from offering such an opinion.  But the substance of Dr. Gutman's opinion is not that Maddox should not be the HR Director—his opinion is that Maddox's lack of training and unfamiliarity with the ADA contributes to a pattern discrimination, which is precisely the subject of this litigation.  (*See* ECF No. 883-2 at 13–14.)  Therefore, Dr. Gutman may opine whether Maddox is deficient on a matter relevant to compliance with the ADA due to a lack of expertise,

training, or education.

As discussed above in Section III.A.1, Defendant's other arguments go to the weight of the testimony, and not to its admissibility.  Therefore, with respect to Opinion 3, the Gutman Motion is granted in part and denied in part.

    4.   <u>Opinion 4</u>

Defendant argues Opinion 4 is inadmissible because Dr. Gutman failed "to employ the 'job analysis' methodology" and his opinions are impermissible legal conclusions.  (ECF No. 884 at 13.)  Plaintiff argues that "not all job functions are essential" is "a permissible statement of law" and Dr. Gutman "does not opine on which job functions are essential."  (ECF No. 894 at 12.)  In light of this "concession," Defendant request an "order precluding [Dr.] Gutman from expressing any opinion as to essential job functions."  (ECF No. 897 at 6.)

The Court will hold Plaintiff to its representation and preclude Dr. Gutman from offering any opinions about *which* job functions are essential and nonessential; this portion of the Motion is therefore moot.   Dr. Gutman may, however, refer to the law that "not all job functions are essential" in contextualizing his other permissible opinions.

Therefore, with respect to Opinion 4, the Gutman Motion is denied in part and denied as moot in part.

**B.   Schelly**

    1.   <u>Opinion 1</u>

Under the umbrella of Opinion 1, Schelly offers several opinions on: which job functions were essential or nonessential to particular jobs, the frequency with which certain tasks were required to perform particular jobs, whether certain individuals had a disability, whether Defendant's conduct violated the ADA, whether Defendant engaged

in good faith in the interactive process, and whether certain accommodations were "reasonable." (ECF No. 888 at 4–7.)

Defendant seeks exclusion of all of these opinions on the basis that they are improper legal conclusions. (ECF No. 888 at 4–7; ECF No. 898 at 1–2.) Defendant argues that each of the issues upon which Schelly opines are committed to the finder of fact. (ECF No. 888 at 4.) Plaintiff argues Defendant's arguments are "more suited for credibility examination at trial." (ECF No.896 at 8.)

The Court finds Defendant has the better argument. As discussed above, *supra* Section III.A.1, whether Defendant violated the ADA is an impermissible legal conclusion. Plaintiff apparently acknowledges that this opinion is an impermissible legal conclusion and represents that it will not elicit testimony from Schelly that Defendant violated the ADA. (*Id.* at 11.) The Court will hold Plaintiff to this representation and exclude any such testimony from Schelly to that effect. As such, the Schelly Motion is moot with respect to the opinion that Defendant "violated the ADA."

Despite this concession, Plaintiff argues Schelly should be able to offer the other opinions within the umbrella of Opinion 1. (*Id.* at 10–11.) The Court ruled above, *supra* Section III.A.4, that Dr. Gutman's statement that not all job functions are essential is a permissible statement of law, but deciding *which* functions are essential is a question for the finder of fact. Consistent with this ruling, Schelly's opinions on which job functions—like loading or unloading a truck—are essential (or not) are impermissible legal conclusions. Schelly's other opinions rely heavily on terms with specialized meaning within the law; "disability," "interactive process," and "reasonable accommodation" are all such terms. *See United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013

("[W]hen an expert uses a specialized legal term [she may] usurp[] the jury's function"). Schelly's opinions are presented in this legal language and directly tell the finder of fact how to find on those issues.  This is a usurpation of the factfinder's role and is impermissible.  *See Specht*, 853 F.2d at 808 ("[T]estimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case.")  Therefore, Schelly will not be permitted to offer these opinions.

Schelly's opinion on the frequency with which certain tasks must be performed is not a legal opinion; rather, it is the factual basis for Schelly's (inadmissible) opinion that particular job functions are not essential.  Neither this opinion nor any similar factual opinions will be excluded.

Therefore, with respect to Opinion 1, the Schelly Motion is granted in part, denied in part, and denied as moot in part.

2.    Opinion 2

Defendant seeks to exclude Opinion 2 on the bases that Schelly is unqualified because she is not a medical doctor and that the opinion is unreliable because she never spoke with any representative of ErgoMed.  (ECF No. 888 at 7–8.)  Defendant argues Schelly's opinion is unreliable because it is based on her understanding that ErgoMed depended on Defendant to get information on what was required for certain job functions.  (*Id.* at 7.)

Plaintiff responds that Defendant misstates Schelly's testimony.  Plaintiff argues Schelly's opinion is that Ergomed did not validate that the functionality tests they performed aligned with the requirements of particular jobs, thus undercutting their usefulness.  (ECF No. 896 at 15.)  Plaintiff asserts that because Schelly's testimony is

corroborated by ErgoMed's owner, Defendant has no good-faith basis for challenging Schelly's opinion.  (*Id.*)

In its reply, Defendant argues that Schelly cannot offer an opinion she is not qualified to offer merely because it is supported by other areas of the record.  (ECF No. 898 at 4–5.)  Defendant further emphasizes that Schelly's opinion is simply based on her "understanding," and there is nothing in the record indicating that she independently verified her understanding with anyone from ErgoMed.

The Court finds Schelly is qualified to give Opinion 2.  Defendant does not explain why Schelly needs to be a medical doctor to criticize ErgoMed's testing—it simply states that she is not one and takes it as a given that being a doctor is required.  (ECF No. 888 at 7.)  The Court does not agree with this assessment.  For 30 years Schelly was responsible for assessing the ability of people with disabilities to perform certain jobs and assisting in placing them in appropriate jobs in the community.  (ECF No. 886-1 at 2; ECF No. 896 at 5.)  Assessing what a person with a disability is and is not able to do at work may sometimes require medical training, but it will not always.  *See Tesone v. Empire Mktg Strategies*, 942 F.3d 979, 996 (10th Cir. 2019).  Even a doctor who performs a test correctly may be performing the wrong test, and identifying whether the correct test has been performed will not necessarily be a matter of medical opinion.  Schelly attended the deposition of Defendant's corporate representative, attended a two-day training at Defendant's facility, observed Defendant's employees performing job duties for multiple positions, and reviewed numerous documents.  (ECF No. 886-1 at 3-4.)  Based on this, Schelly can opine on what kinds of tasks Defendant's employees perform, and the factfinder can determine whether ErgoMed's testing

appropriately fits those tasks.  All of Defendant's other arguments go to weight and not admissibility.

Therefore, with respect to Opinion 2, the Schelly Motion is denied.

3.      Opinion 3

Defendant argues Schelly is not qualified to offer Opinion 3 and that Opinion 3 is unreliable and irrelevant.  (ECF No. 888 at 8.)  Defendant argues that Schelly does not have sufficient knowledge, skill, experience, training, or education to opine on "assistive devices purportedly available in the commercial trucking industry" because she had no exposure to them prior to this litigation and "only generally familiarized herself with [them] by conducting online research, interviewing claimants, or reading claimants' deposition transcripts."  (*Id.* at 8.)  The devices Defendant argues Schelly is not qualified to opine on are: snow socks, traction/wheel sanders, automatic snow chains, automatic hood releases, automatic pin pulls, and lifting devices.  (*Id.* at 8–10.)

Defendant also argues that Schelly's opinions are unreliable.  First, Defendant argues she did not "maintain or provide citations to or copies of the websites she visited" in forming her opinions and is unable to "recall anything specific about what she supposedly reviewed."  (ECF No. 888 at 11.)  Second, Defendant argues Schelly's opinions are based on insufficient facts and data because she did not properly consult with people familiar with the assistive devices to learn how they function and determine if they would be compatible with Defendant's trucks.  Nor did Schelly test whether a long-handled mirror would be "an adequate or safe substitute for inspecting the undercarriage of a truck during DOT-required pre-trip inspections."  (*Id.*)  Therefore, Defendant argues this opinion is not "sufficiently tied to the facts of [this] particular case."  (ECF No. 888 at 12 (citing *Hobdy*, 2019 WL 132137, at *3).)

Defendant asserts Opinion 3 is also irrelevant because there "is no evidence" that any aggrieved individual requested snow socks, automatic snow chains, or automatic hood openers or that the aggrieved individual Schelly suggests a long-handled mirror would have assisted ever requested a long-handle mirror.  (ECF No. 888 at 12–13.)  Because an employee must demonstrate that they requested a plausibly reasonable accommodation, these parts of Opinion 3 are irrelevant.  (*Id.* at 12.)

Plaintiff responds that Schelly does not need to be a trucking-industry expert to offer Opinion 3.  During her 30-year career, Schelly used her professional expertise to learn the requirements of specific jobs in various industries and match people with disabilities to jobs they can perform with or without reasonable accommodations "using her functional-based methodology."  (ECF No. 896.)  Plaintiff asserts that Schelly does not need to be an expert in every industry in which she is evaluating a job accommodation for a person with a disability.  (ECF No. 897.)  Plaintiff cites *Jones v. Blue Cross Blue Shield of La.*, 2018 WL 585543 (M.D. La. Jan. 29, 2018), in which a vocational expert who used a similar methodology was permitted to offer similar opinions as Schelly.  *Id.* at *8–9.

Plaintiff argues *Hobdy* is inapposite because, unlike the expert in that case, Schelly's reports "are individually tailored to a specific [aggrieved individual] and the specific positions relevant" to them.  (ECF No. 896 at 14.)  Further, Schelly used an accepted methodology that "was published, taught, and used by Colorado State University since the 1980s."  (*Id.*)

Plaintiff argues that any prejudice to Defendant due to Schelly's failure to list various websites in her report was capable of being cured and therefore, the error was

harmless.  (ECF No. 896 at 13.)  In Plaintiff's view, Defendant "obtained the website information during Schelly's deposition and also afterwards" in Plaintiff's supplemental interrogatory responses.  Plaintiff argues Defendant's decision to never seek a second deposition of Schelly is evidence of the lack of prejudice.  (*Id.*)

As for whether Schelly can opine on assistive devices that were not specifically requested by an aggrieved individual, Plaintiff argues that Defendant is "simply incorrect on the law."  (*Id.* at 14.)  Plaintiff asserts that Defendant "must do its own research on potential accommodations" and cannot simply reject employees' requests.  (*Id.* (citing *Woodman v. Runyon*, 132 F.2d 1330, 1345 (10th Cir. 1997).)

Defendant's reply mostly restates its previous arguments with respect to Opinion 3.  It does, however, respond to Plaintiff's arguments that Schelly's failure to include certain websites in her report is harmless error and that Defendant must "do its own research on potential accommodations."  (ECF No. 898 at 6–7.)  Defendant argues the factors that supposedly cure Schelly's error are inadequate and incurable prejudice exists because "[i]n large part, Schelly could not remember what source she reviewed in forming her opinions."  (*Id.* (emphasis omitted).)  Therefore, it is impossible for Schelly to provide an accurate updated list of the sources she consulted.  (*Id.*)  Defendant contests that it must do its own research on accommodations, arguing that under the Tenth Circuit law, it "cannot have failed to provide reasonable accommodations to individuals who did not request the same."  (*Id.* at 6–7 (citing cases).)

The Court finds Schelly is qualified to offer the opinions under the umbrella of Opinion 3.  Schelly's expertise is in determining reasonable accommodations for people with disabilities and is not limited to particular industries.  (ECF No. 886-1 at 2.)  She is

experienced in familiarizing herself with various industries and specific jobs within them and suggesting potential accommodations based on her wealth of experience and the functional-based methodology.  (*See id.*)  The Court is not convinced by Defendant's attempt to unilaterally limit the kinds of expertise that are relevant.  Just because experience in the trucking industry is potentially relevant or might be helpful to the finder of fact does not mean that it is the only such experience that is relevant or helpful. Schelly applied her functional-based methodology by learning how the jobs are performed at Defendant, observing job tasks being performed, and researching accommodations that might allow specific aggrieved individuals to perform their job duties. (*Id.* at 2–4.)

The Court agrees with Plaintiff that Defendant cannot merely reject its employees' specific requests and avoid liability under the ADA.  Defendant cites Tenth Circuit law holding that an employer's duty to provide a reasonable accommodation or participate in the interactive process is not triggered until the employee informs it of the accommodation he or she wishes to receive.  (ECF No. 898 at 7.)  What these cases do not hold is that accommodations potentially available to an employee are limited to the specific accommodations requested, nor do they hold that the subject matter of the ensuing interactive process is limited to those specific accommodation requests.  *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) ("[A]ssuming the employee has provided notice to the employer of her disability, any limitations which result therefrom, and the accommodation she wishes to receive, then the employer's failure to provide a reasonable accommodation" can result in liability for failure to accommodate.)*; Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013) ("It is not the

employer's responsibility to anticipate the employee's needs and affirmatively offer accommodation if the employer is otherwise open to such requests."); *EEOC v. C.R. England*, 644 F.3d 1028, 1049 (10th Cir. 2011) (holding that an employer's duty to participate in the interactive party is triggered by an employee's adequate notice that informs the employer of the disability and requests accommodation). Endorsing the limitation that Defendant argues is the law would neuter the "interactive" aspect of the process mandated by the ADA.

With respect to Defendant's argument that Schelly could not remember the sources for her opinion, this argument is more appropriately considered with respect to the weight the finder of fact should give to her opinions. The Court finds that Defendant's entire argument on this point is based on a misstatement of Schelly's deposition testimony. Schelly testified that she was not sure from which source she first learned of a particular assistive device, not that she did not log or could not remember her sources generally. (ECF No. 885-1 at 19.) This, combined with the supplemental interrogatory responses and the availability of Schelly for a second deposition, leads the Court to conclude that even if Schelly's inadequate disclosures prejudiced Defendant, this was or could have been cured. This argument and Defendant's other arguments above go to the weight not admissibility of Opinion 3.

Therefore, with respect to Opinion 3, the Schelly Motion is denied.

**C.    Sill**

    1.    The Scope of Plaintiff's Motion Is Not Improper

The Court first addresses the parties' mistaken understanding of its Revised Practice Standards, which is the leading argument in Defendant's response to Plaintiff's motion to exclude Sill's opinions. (ECF No. 892 at 1–3.) Each of the motions

addressed in this Order were filed contemporaneously with the summary judgment briefing in this case. And, in each of these motions, the parties say in footnotes that they have limited their arguments to opinions cited by the other party in the summary judgment briefing and claim to reserve the right to file additional motions relating to the same witnesses seeking exclusion of other opinions not cited in the summary judgment briefing. (ECF No. 884 at 1 n.1; ECF No. 888 at 1 n.1; ECF No. 890 at 2 n.1.)

The parties rely on WJM Revised Practice Standards III.H.2.a in explaining their approach and asserting their "rights" to future motions under Rule 702. WJM Revised Practice Standards III.H.2 reads:

> The following deadlines apply to any motion made under Federal Rule of Evidence 702, including under Daubert and related cases, regardless of how the motion is styled (i.e., whether styled as a motion to strike, a motion to exclude, or otherwise):

WJM Revised Practice Standards III.H.2. WJM Revised Practice Standards III.H.2.a reads:

> In civil cases, such motions must be filed no later than 70 days (10 weeks) before the Final Trial Preparation Conference, unless the motion challenges expert evidence submitted in support of summary judgment briefing, in which case the motion must be filed contemporaneously with the summary judgment response or reply, as appropriate.

WJM Revised Practice Standards III.H.2.a. These provisions, on their face, concern deadlines. As relevant here, WJM Revised Practice Standards III.H.2.a moves up the deadline for Rule 702 motions relating to "expert evidence submitted in support of summary judgment briefing." Id. What is does not say is that the opinions a party seeks to exclude are limited to the opinions cited by the party offering the expert. And it certainly does not provide for additional Rule 702 motions for such experts.

The Court can only speculate on how the parties came to this understanding. The best it can do is assume the parties read these additional provisions into the phrase "submitted in support of summary judgment briefing."  WJM Revised Practice Standards III.H.2.a.  But Revised Practice Standards III.H.2 very clearly lays out deadlines—that is, the timing and not the substance of Rule 702 motions—and the undersigned cannot remember an instance in which the parties read its Revised Practice Standards any differently.

Therefore, the Court will not consider Defendant's argument that the scope of Plaintiff's motion is improper because it addresses opinions Defendant does not cite in its summary judgment briefing.

   2.   <u>Sill is Qualified to Opine on the Use of Assistive Devices in the Trucking Industry</u>

Plaintiff argues Sill is not qualified to offer the five opinions identified above because he is not an expert on assistive devices and he "is not qualified to opine on everything related to trucking merely because he asserts general trucking experience." (ECF No. 890 at 9.)  Nor does Sill's "alleged expertise in the broad categories safety and industry best practices . . . qualify him to opine on the five specific devices at issue." (*Id.*)

Defendant argues Sill is qualified to offer these opinions based on his "twenty years of experience working within the trucking industry in safety and fleet management, risk management, and safety compliance."  (ECF No. 892 at 3.) Defendant asserts Sill is an expert in the challenged topics, which "all relate to how to safely operate an over-the-road trucking business in a legally compliant and efficient manner."  (*Id.* at 3.)  This includes expertise in

> Federal Motor Carrier Safety Administration standards,
> industry best practice and process implementation, motor
> carrier's duty for safe operations (employees and general
> public), driver qualifications and hiring practice, process,
> policy and regulations, driver training practice, process,
> policy, and regulations, and behavior-based safety
> performance, process, policy, and implementation.

(*Id.* at 3–4.)  In other words, Sill is familiar with various aspects of running a trucking business, like Defendant.  And Defendant argues that Plaintiff's motion ignores this experience and its relevance in favor of an "unreasonably narrow" interpretation of the qualifications required to offer the opinions Sill offers in his report.  (*Id.* at 5.)  In Defendant's view, Plaintiff's argument goes to weight and not admissibility.  (*Id.* at 10.)

Plaintiff disagrees that its argument goes to weight rather than admissibility because Sill's offered testimony is not "within the reasonable confines of his subject area."  (ECF No. 899 at 3 (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).)

The Court disagrees with Plaintiff that the use of various assistive devices is outside the reasonable confines of Sill's expertise.  Sill is in part a rebuttal witness, offered for the purpose of giving the jury an understanding of whether the assistive devices described by Schelly would impose an undue burden on Defendant's business.  (*See* ECF No. 889-2 at 3–4.)  While Schelly is an expert on researching assistive devices that might be suitable for someone with a disability (including someone in the trucking industry), Sill is an expert on the operations of trucking businesses who can offer valuable opinions on whether a particular assistive device is a reasonable accommodation or would impose an undue burden within the specialized context of the

trucking industry.[3]  Plaintiff's arguments go to weight, and it is welcome to make them during cross-examination.

### 3.   Sill's Opinions are Reliable

Plaintiff also argues that Sill's opinions are unreliable on the bases that he offers "scientific" opinions without conducting a scientific inquiry, and he lacks personal experience with the specific devices he opines on.  (ECF No. 890 at 9–10.)  Plaintiff argues that four of the opinions Sill offers are "capable of scientific testing by established methodologies." (*Id.* at 10.)  Because Sill neither performed nor reviewed scientific testing in forming those opinions, Plaintiff argues they are unreliable and should be excluded.  (*Id.*)  Sill's other opinions—which Plaintiff designates "his non-scientific opinions"—are not based on Sill's "experience, direct or otherwise, indicating he has studied, installed, repaired, or operated any of the five devices about which he opines." (*Id.* at 10.)

Defendant argues that Sill does not need to be a scientist to offer the challenged opinions because they are based on his industry experience, research of Defendant's business, and discussions with Defendant's representatives.  (ECF No. 892 at 7.)  Defendant criticizes Plaintiff's "inexplicabl[e]" division of Sill's opinions into scientific and non-scientific opinions given that Sill's report and deposition make clear that his opinions are based on his industry experience and research into Defendant's business operations.  (*Id.* at 7–10.)  Again, Defendant asserts that Plaintiff's argument goes to weight and not admissibility.  (*Id.* at 10.)

---

[3] This is not to say that Sill can testify to the ultimate legal conclusion that any particular assistive device or process imposes an undue burden, rendering it an unreasonable accommodation.  But like Schelly, Sill can provide the factual basis undergirding such a conclusion and allow the finder of fact to decide that issue.

In its reply, Plaintiff insists that "Sill's opinions are unreliable because his reports do not explain how his experience led to his opinions."  (ECF No. 899 at 3.)  In Plaintiff's view, Defendant offers "nothing except the *ipse dixit* of Sill to connect his opinions to this case."  (*Id.* at 4.)  Plaintiff argues this goes to admissibility, and Sill's opinions should be excluded.

The Court finds Sill's opinions are reliable because they are based on the application of his training and experience to the contemplated use of the five assistive devices in the context of Defendant's trucking business.  Plaintiff points to no law indicating that opinions "capable" of scientific evaluation must in fact be scientifically evaluated, and the Court will not impose such a requirement here.  The Court finds Plaintiff's arguments all go to the weight the jury may give to the testimony and not to its admissibility.

Therefore, the Sill Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1.     Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Arthur Gutman, Ph.D. (ECF No. 884) is GRANTED in part, DENIED in part, and DENIED AS MOOT in part;

2.     Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Catherine L. Schelly (ECF No. 888) is GRANTED in part, DENIED in part, and DENIED AS MOOT in part; and

3.     Plaintiff's Motion to Exclude Opinions and Testimony of Defense Expert Jimmy Sill is DENIED (ECF No. 890).

Dated this 22nd day of November, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge