**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

WESTERN DISTRIBUTING CO.,

     Defendant.

---

### ORDER ON RULE 702 MOTIONS CONCERNING TRIAL TESTIMONY

---

In this case, the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") sues Western Distributing Company ("Western" or "Defendant") on behalf of 57 aggrieved individuals, alleging a pattern or practice of discrimination against employees with disabilities, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

Before the Court are the following motions, brought under Federal Rule of Evidence 702:

- Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Arthur Gutman, Ph.D. at Trial ("Gutman Motion") (ECF No. 911);

- Defendant's Motion to Exclude Opinions and Testimony of Plaintiff EEOC's Expert Catherine L. Schelly at Trial ("Schelly Motion") (ECF No. 912);

- EEOC's Motion to Exclude Expert Testimony of Dr. Michael Ladwig and Dr. Hector Brignoni ("Ladwig & Brignoni Motion") (ECF No. 918);

- EEOC's Motion to Limit Opinions and Testimony of Defense Expert Natalie P. Hartenbaum ("Hartenbaum Motion") (ECF No. 919); and

- EEOC's Motion to Exclude Opinions and Testimony of Defense Expert Margot Burns ("Burns Motion") (ECF No. 922).

Each motion is now ripe for decision.

For the reasons set forth below, the Gutman Motion is denied; the Schelly Motion is denied; the Ladwig & Brignoni Motion is denied as moot; the Hartenbaum Motion is granted in part and denied in part; and the Burns Motion is granted in part, denied in part, and denied in part as moot.

## I. BACKGROUND[1]

Among the many experts the parties intend to have testify in this litigation are Arthur Gutman, Ph.D., who Plaintiff retained as an expert on industrial and organizational psychology and personnel selection (ECF No. 957 at 2); Catherine L. Schelly, who Plaintiff retained as an expert on occupational therapy (*id.*); Dr. Michael Ladwig and Dr. Hector Brignoni, non-retained treating physicians (ECF No. 918 at 2); Natalie Hartenbaum, M.D., M.P.H., who Defendant retained as an expert on Department of Transportation ("DOT") and Federal Motor Carrier Safety Administration ("FMCSA") requirements (ECF No. 914-1 at 1); and Margot Burns, who Defendant retained as an expert on vocational evaluations (ECF No. 942 at 2, 6).

### A.    Dr. Gutman & Ms. Schelly

The Court discussed Dr. Gutman and Ms. Schelly's backgrounds and several of their challenged opinions in detail in its recent Order ruling on three Rule 702 motions

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

filed in conjunction with the summary judgment briefing.  (ECF No. 957.)  The Court will not reiterate their backgrounds here, and, for reasons discussed below, it is not necessary to identify which of their opinions are challenged in the motions currently before the Court for the purposes of this Order.

**B.     Drs. Ladwig & Brignoni**

Drs. Ladwig and Brignoni are physicians who worked for Aviation & Occupational Medicine, a medical practice that Defendant used for its drivers' DOT certification exams and workers' compensation evaluations.  (ECF No. 918 at 2.)  One or both Drs. Ladwig and Brignoni treated 20 of the 57 aggrieved individuals.  (*Id.*)

Plaintiff challenges Drs. Ladwig and Brignoni's qualifications to testify beyond what they "saw and did and why" as treating physicians.  (ECF No. 918 at 9–10.)

**C.     Dr. Hartenbaum**

Defendant retained Dr. Hartenbaum to opine on whether the aggrieved individuals were able to meet DOT and FMCSA requirements, given their specific medical conditions.  (*See* ECF No. 914-1 at 1.)  Dr. Hartenbaum is board certified in both internal and occupational medicine, holds a Master of Public Health in occupational medicine, and is an active member and past president of the American College of Occupational and Environmental Medicine ("ACOEM").  (ECF No. 915-2 at 1; *see* ECF No. 938 at 1–2.)  She is the Course Director for the ACOEM's National Registry of Certified Medical Examiner Training Course, the medical director for "multiple companies and organizations," and the author of a guide on commercial driver medical certification.  (ECF No. 915-2 at 1, 15.)

Plaintiff challenges several of Dr. Hartenbaum's opinions found throughout her many reports on the aggrieved individuals, organizing them into three "categories":

- Category 1: Opinions that "[i]n general drivers should be able to lift approximately 50 pounds to meet FMCSA medical standards";

- Category 2: Opinions to the effect that any medical restrictions will prevent medical certification; and

- Category 3: Opinions on what are "normal," "typical," or "standard" practices of employers with respect to medical conditions and hiring.

(ECF No. 919 at 2–3.)

**D.   Ms. Burns**

Defendant retained Margot Burns to conduct vocational evaluations of the aggrieved individuals and rebut the expert testimony of Plaintiff's experts Dr. Steve Allison and Ms. Schelly.  (ECF No. 942 at 2, 6.)  Burns is a certified vocational rehabilitation counselor and certified life care planner.  (ECF No. 921-5 at 1.)  She has a master's degree in rehabilitation counseling and more than 30 years' experience conducting vocational evaluations.  (ECF No. 942 at 6.)  She assists employers in "writing functional job descriptions, evaluating the essential functions and physical demands of occupations, identifying possible accommodations, and assessing an individual's capacity to perform his/her regular job with or without accommodations." (ECF No. 921-3 at 2.)  Burns prepared 53 reports regarding aggrieved individuals— many of which were rebuttals to Schelly's opinions—and a rebuttal report to Dr. Allison's expert reports.  (ECF No. 922 at 2.)

Plaintiff challenges four categories of Burns's opinions, some of which appear frequently in the many reports she prepared:

- Category 1: Opinions regarding functional capacity tests, including the

entirety of her rebuttal report of Dr. Allison;

- Category 2: Opinions comprising "legal conclusions unsupported by further analysis";

- Category 3: Opinions stating ADA legal standards and expert qualification standards; and

- Category 4: Opinions that merely bolster the credibility of Defendant's other witnesses.

(*Id.*)

## II. LEGAL STANDARDS

A district court must act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993).  The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) the opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods."  *Id.*  The proponent of expert testimony has the burden to show that the testimony is admissible.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible

unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.  Further, Rule 402 provides that irrelevant evidence is not admissible.

### III. ANALYSIS

#### A.    Dr. Gutman & Ms. Schelly

On April 1, 2022, Defendant filed two motions challenging various opinions offered by Dr. Gutman and Ms. Schelly.  (ECF Nos. 884, 888.)  Those motions were limited in scope, addressing only opinions cited by Plaintiff as part of the summary judgment briefing.  (ECF No. 884 at 1 n.1; ECF No. 888 at 1 n.1.)  This approach was apparently undertaken by Defendant under the impression that subsequent Rule 702 motions concerning the same experts, but addressing other opinions, would be permitted by WJM Revised Practice Standard III.H.2.  (ECF No. 884 at 1 n.1; ECF No. 888 at 1 n.1.)  As the Court explained in its Order dated November 22, 2022, this apprehension on the part of Defendant was mistaken.  (ECF No. 957 at 24–26.)  WJM Revised Practice Standard III.H.2 concerns only the timing of Rule 702 motions and not their substance; nor does it anywhere contemplate subsequent Rule 702 motions.  (*Id.*) The Court considers the Gutman and Schelly Motions to be untimely and duplicative, and it will not consider them further.

Therefore, the Gutman and Schelly Motions are denied.

#### B.    Drs. Ladwig & Brignoni

Drs. Ladwig and Brignoni are "non-retained experts who did not submit expert reports."  (ECF No. 918 at 1.)  Upon reviewing Defendant's witness list, Plaintiff became concerned that Drs. Ladwig and Brignoni would testify as "expert witnesses on subjects that are not specific to treatment of patients."  (*Id.* at 3.)  Because a physician offering

opinions "beyond what he saw and did and why he did it . . . is giving an opinion formed because there is a lawsuit . . . the physician must submit a Rule 26(a)(2)(B) report." *Davis v. Clifford*, 2015 WL 5092890 at *1 (D. Colo. Aug. 31, 2015); (*accord* ECF No. 918 at 6.) Plaintiff argues that Drs. Ladwig and Brignoni's testimony beyond what they "saw and did and why" should be precluded under Rule 37(c)(1). (ECF No. 918 at 9–10.)

Defendant responds that the Ladwig & Brignoni Motion is "totally unnecessary and a waste of judicial resources" because it "has already told EEOC it will not elicit expert testimony from Dr. Ladwig and Dr. Brignoni that goes beyond the scope of their role as treating providers." (ECF No. 940 at 1.) Consequently, Defendant argues that the Ladwig & Brignoni Motion should be denied as moot. (*Id.* at 1, 7.)

Plaintiff disagrees that the Ladwig & Brignoni Motion is moot or unnecessary, arguing that Defendant "did not agree to the requested relief before the EEOC filed its motion." (ECF No. 952 at 1.) Further, it argues that "continuing ambiguities" in what exactly Defendant is agreeing to "necessitates that the Court enter an order granting the EEOC's motion." (*Id.*)

After reviewing the parties' arguments and the e-mail showing their conferral before the Ladwig & Brignoni Motion was filed, the Court will hold Defendant to its representation and limit the testimony of Ladwig & Brignoni to "what [they] saw and did and why [they] did it" in connection with their roles as treating physicians. *Davis*, 2015 WL 5092890, at *1.

Therefore, the Ladwig & Brignoni Motion is denied as moot.

C.     Dr. Hartenbaum

1.     <u>Category 1</u>

Plaintiff argues Dr. Hartenbaum's Category 1 opinions are unreliable because her "opinion that [commercial motor vehicle] operators are required to lift 50 pounds is nothing more than her subjective belief," which conveniently "corresponds exactly" with Defendant's "discriminatory [50-pound] qualification standard for its drivers."  (ECF No. 919 at 5, 8.)  Dr. Hartenbaum's opinion is couched in "FMCSA standards," however, "FMCSA regulations have no weight-lifting requirement."  (*Id.* at 5.)  Dr. Hartenbaum agreed in her deposition that FMCSA regulations do not require drivers to be able to lift a specific number of pounds.  (*Id.*)

Instead, she points to several related sources that Plaintiff argues do not support her ultimate conclusion that drivers should be able to lift 50 pounds.  (*Id.* at 3.)  Dr. Hartenbaum relies on the Medical Examiner Handbook ("Handbook"), the Centers for Disease Control and Prevention's Table of General Physical Activities ("CDC Table"), and the Dictionary of Occupational Titles ("Titles").  (*Id.* at 6.)  Dr. Hartenbaum relies on the CDC Table to determine that loading and unloading a truck requires lifting up to 75 pounds, and she relies on the Titles to determine that truck driving requires "exerting 20 to 50 pounds of force occasionally[] and/or 10 to 25 pounds of force frequently."  (*Id.*)  From these sources, Dr. Hartenbaum derives a "50-pound lifting requirement for all [commercial motor vehicle] drivers."  (*Id.*)

Plaintiff argues this "shotgun approach . . . reveals the analytical gaps in her analysis."  (*Id.*)  In Plaintiff's view, reliance on the CDC Table is "flawed" because it does not reflect the job requirements for Defendant's drivers specifically, who are subject to Defendant's "'no-touch loads' policy that prohibits its drivers from loading or unloading

cargo." (*Id.* at 6–7.) Plaintiff complains that Dr. Hartenbaum neither explains why she relies on the Titles, nor why "exerting 20-50 pounds of force occasionally supports her 50-pound requirement." (*Id.* at 7.) Plaintiff also argues that there is no mention of a 50-pound lifting requirement in Dr. Hartenbaum's training materials, and this fact indicates that there is no support for this requirement in the medical examiner community. (*Id.*) In Plaintiff's view, this "analytical gap" makes Dr. Hartenbaum's opinions in Category 1 unreliable and inadmissible. (*Id.* at 6.)

Defendant contends that Plaintiff's arguments go to the weight Dr. Hartenbaum's opinions should be given, not their admissibility. (ECF No. 938 at 5–6.) Defendant clarifies that Dr. Hartenbaum's opinion is that drivers should in general be able to lift *approximately* 50 pounds. (*Id.* at 7.) Defendant explains that Dr. Hartenbaum relied on the Handbook because it contains specific FMCSA guidance. (*Id.*) In turn, the Handbook directly references the CDC Table. (*Id.*) Defendant contests that Dr. Hartenbaum's trainings do not contain the 50-pound requirement; rather, in her deposition, she testified that she could not remember the exact number in her trainings but knew she had previously expressed this opinion publicly. (*Id.* at 8.)

Defendant argues Plaintiff's complaint that the CDC Table's requirements do not align with the specific job requirements for Defendant's drivers ignores "the realities of DOT/FMCSA requirements." (*Id.*) Defendant argues that Dr. Hartenbaum's opinions are not limited to a particular job or carrier because commercial driver medical certification is not limited in this manner, and a 50-pound lifting requirement "implicates multiple commercial driver tasks" whether or not a carrier has a no-touch loads policy. (*Id.* at 8–9.) This is because "[w]hen a medical examiner grants medical certification,

the examiner certifies the driver to perform any job required of a commercial [motor vehicle] driver, not just the driver's current job duties." (*Id.* at 9.)

In its reply, Plaintiff asserts that Defendant does not contest that "there is no lifting requirement in the FMCSA regulations," and by failing to address Plaintiff's argument, Defendant "concedes the point." (ECF No. 950 at 3.) Plaintiff argues that Defendant's response to the Hartenbaum Motion "fails to bridge" the analytical gaps in Dr. Hartenbaum's Category 1 opinions. (*Id.* (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).) Because it is Defendant's burden to show that its expert's opinions are reliable, and Defendant has failed to do so, Plaintiff argues Dr. Hartenbaum's Category 1 opinions must be excluded.

After considering the parties' arguments, the Court finds Dr. Hartenbaum's Category 1 opinions are unreliable. The Court agrees with Plaintiff that there is "simply too great an analytical gap between the data and the opinion proffered." *Dodge,* 328 F.3d at 1222. Nowhere in Dr. Hartenbaum's data—the regulations, the Handbook, the CDC Table, or Titles—is there any independent discussion of, or even a passing reference to, a 50-pound lifting requirement for a commercial motor vehicle driver. Hartenbaum's opinion, and the analytical leap necessary to get to that opinion, is even more untethered to the realities of Western's operations when the Court considers her 50-pound lifting requirement in the context of Defendant's "no-touch loads" policy.[2] Applying the reasoning of the Tenth Circuit in *Dodge* to this proffered opinion, the Court finds it to be unreliable.

---

[2] Plaintiff also argues Dr. Hartenbaum's conclusion is arbitrary and influenced by Defendant's 50-pound lifting requirement; the Court expresses no opinion on this matter. (ECF No. 919 at 7–8.)

Therefore, with respect to the Category 1 opinions, the Hartenbaum Motion is granted.  Dr. Hartenbaum will not be permitted to opine at trial that commercial motor vehicle drivers should be able to lift approximately 50 pounds to meet FMCSA medical standards.

2.    Category 2

Plaintiff argues that Dr. Hartenbaum's "opinions regarding medical restrictions are similarly unreliable."  (ECF No. 919 at 8.)  Plaintiff argues that Dr. Hartenbaum's Category 2 opinions claim that "FMCSA standards do not permit a driver with any restrictions (other than glasses or hearing aids) to obtain a medical certification."  (*Id.* at 9.)  Plaintiff argues that this category of opinions was formed "through selective inference."  (*Id.* at 10.)  In fact, the relevant FMCSA regulation has thirteen subparts, each identifying specific medical conditions.  (*Id.* (citing 49 C.F.R. § 391.41 (2022).)  Some of these conditions, like a current clinical diagnosis of alcoholism, are disqualifying; however, physical conditions are not among them.  (*Id.*)  Other conditions may be disqualifying if they are "likely to interfere with [the driver's] ability to drive a commercial motor vehicle safely."  (*Id.*)  Plaintiff argues that because Dr. Hartenbaum's opinions are not supported by the FMCSA regulations, they are "nothing more than an unproven proclamation" that "would only confuse the jury about the ability of drivers to drive with restrictions."  (*Id.* at 9–10.)

Defendant asserts that Plaintiff misrepresents Dr. Hartenbaum's Category 2 opinions.  (ECF No. 938 at 9–10.)  Defendant maintains that her opinion is not that drivers cannot be certified if they have any medical restrictions.  (*Id.*)  Rather, her opinion is that a driver with restrictions *that would interfere with their ability to perform the duties required of a commercial motor vehicle operator* would not be certified.  (*Id.* at

10.)  This determination is made by the medical examiner based on the driver's ability to perform any duty required of a commercial motor vehicle operator without reference to the specific position the driver currently holds because the "medical certificate is not limited to a single employer."  (*Id*.)  Consequently, Defendant argues Plaintiff's "complaints regarding Dr. Hartenbaum's opinions go to the weight of the testimony, not its admissibility" and such complaints are best addressed via cross-examination and presentation of contrary evidence.  (*Id.* at 11 (citing *Ramos v. Banner Health*, 426 F. Supp. 3d 815, 820 (D. Colo. 2019).)

In reply, Plaintiff complains that Defendant "attempts to rewrite [Dr.] Hartenbaum's testimony."  (ECF No. 950 at 5.)  Nevertheless, it argues Defendant "concedes" she "should not testify that medical restrictions are not permitted under FMCSA regulations."  (*Id*.)  Plaintiff, for its part, "agrees [Dr.] Hartenbaum may testify that medical restrictions are not disqualifying for DOT certification[] unless they interfere with performing the duties of a [commercial motor vehicle] operator."  (*Id.*)

The Court finds that the parties' concessions resolve this dispute.  To the extent Defendant, notwithstanding its concession, intends to elicit from Dr. Hartenbaum the opinion that medical restrictions are not permitted under FMCSA regulations, that opinion is unreliable and is excluded.  To the extent the Hartenbaum Motion seeks to exclude Dr. Hartenbaum from offering *any* opinion regarding the assessment of medical restrictions under FMCSA regulations, in light of Plaintiff's own concession, it goes too far.  Dr. Hartenbaum is specifically permitted to opine that medical restrictions are disqualifying for DOT certification if they interfere with performing the duties of a commercial motor vehicle operator.

Therefore, with respect to the Category 2 opinions, the Hartenbaum Motion is granted in part and denied in part.

3.    Category 3

Plaintiff argues that employers' "normal," "typical," or "standard" practices are outside the "reasonable confines" of Dr. Hartenbaum's expertise.  (ECF No. 919 at 10 (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).) Plaintiff argues that, though Dr. Hartenbaum may be an expert on "DOT and FMCSA rules, regulations, and guidelines," she is not an expert on what *employers* typically do. (*Id.* at 10–11.)  Plaintiff argues that Dr. Hartenbaum lacks the requisite personal experience to reliably offer these opinions, and she has failed to show that whatever relevant experience she does have "leads to the conclusion reached."  (*Id.* at 11 (citing *Lippe v. Howard*, 2018 WL 3517161, at *4 (W.D. Okla. Feb. 14, 2018).)  As such, Plaintiff asserts Dr. Hartenbaum's Category 3 opinions should be excluded.  (*Id.*)

Defendant argues that Dr. Hartenbaum is qualified based on her "extensive experience advising and consulting with employers on commercial driver certification examinations."  (ECF No. 938 at 3.)  Defendant distinguishes *Ralston* and *Lippe*, arguing that in those cases the expert was experienced in one area, but it was unclear whether that expertise extended to the subject matter upon which the expert's opinion was proffered.  (*Id.* at 4.)  In contrast, Defendant argues that Dr. Hartenbaum's Category 3 opinions "are based on 'over three decades of experience as an occupational medicine clinic director, a corporate medical director and advisor, a medical director for an occupational health third[-]party administrator, and an educator.'" (*Id.* at 4 (citing ECF No. 914-10 at 8 and ECF No. 937-1 at 36–43).)

Plaintiff asserts Defendant's response "fails to explain" why Dr. Hartenbaum

should be permitted to offer "global opinions on employers' habits."  (ECF No. 950 at 6.)

Plaintiff reiterates that Dr. Hartenbaum "was retained to opine on whether the aggrieved

individuals 'would have met FMCSA standards had they presented for a commercial

driver medical certification.'"  (*Id.*)  Though Defendant points to Dr. Hartenbaum's past

positions, none of them "involve[d] FMCSA standards or [commercial motor vehicle]

drivers on large scale."  (*Id.*)  Therefore, opinions on the "normal," "typical," or

"standard" practices of employers with respect to commercial motor vehicle operators is

outside the reasonable confines of her expertise.  (*Id.*)

The Court finds Dr. Hartenbaum is qualified to give the Category 3 opinions,

however, the breadth and generality of the Category 3 opinions calls their relevance into

question.  Dr. Hartenbaum has extensive experience as a medical examiner and

consultant, specifically working with companies that employ commercial vehicle

operators or are otherwise subject to FMCSA regulations.  (ECF No. 938 at 4.)  But her

global opinion on what "employers" do with respect to medical certification risks

misleading the jury into thinking the opinion applies to all employers, not only the subset

of employers relevant to this case.  As such, should Defendant elicit an opinion from Dr.

Hartenbaum in this vein at trial, she must make clear that her opinion is limited to the

"normal," "typical," or "standard" practices of employers that employ commercial vehicle

operators or are otherwise subject to FMCSA regulations.  Plaintiff is free to challenge

Dr. Hartenbaum's perceived lack of experience with employers of this kind during cross-

examination.

Therefore, with respect to the Category 3 opinions, the Hartenbaum Motion is

denied, provided that Dr. Hartenbaum's testimony conforms with the testimonial

guidance in this Order.

**D.    Ms. Burns**

1.    Category 1

Category 1 concerns Burns's opinions rebutting the opinions of Dr. Allison.  (ECF
No. 922 at 9; *see also* ECF No. 921-3.)  At the highest level of generality, Dr. Allison
opined that the functional capacity testing ("FCT") performed by ErgoMed, a third-party
entity hired by Defendant, did not align with the actual job requirements for Defendant's
drivers.  (*See* ECF No. 921-3 at 4–13.)  Burns prepared a report rebutting this opinion.
(*Id.*)

Plaintiff argues Burns is not qualified to offer this rebuttal report because she
"does not have any experience developing FCTs and conceded she does not have the
expertise to evaluate [Dr.] Allison's methodologies and process in developing FCTs."
(ECF No. 922 at 9.)  In Plaintiff's view, Burns's expertise in rehabilitation counseling and
reasonable accommodations does not qualify her to rebut the testimony of Dr. Allison.
(*Id.* at 9–10.)  As it has done with other witnesses, Plaintiff relies on *Ralston* to argue
that the challenged opinions are beyond the "reasonable confines" of Burns's expertise.
(*Id.* at 10.)  Further, Burns failed to perform an "independent evaluation of how ErgoMed
developed and administered the tests."  (*Id.*)  As such, her opinions are merely "her
unqualified word that the FCTs" performed by ErgoMed are "sound," and therefore
Plaintiff seeks exclusion of the report in its entirety.  (*Id.*)

Defendant responds that Plaintiff mischaracterizes Dr. Allison's report in order to
shift the focus to FCTs.  (ECF No. 942 at 2.)  Defendant argues that the core of Dr.
Allison's reports is actually job analysis, which is distinct from FCT and "involves
determining the requirements of a particular job . . . to measure the physical demands."

(*Id.* at 3.)  On the other hand, an FCT measures the physical limitations of an individual. (*Id.*)  In combination, job analysis and FCT can be used to determine if an individual is physically capable of performing a job's duties.  Naturally, job analysis will inform the kinds of tests performed during FCT.  (*See id.*)  In Defendant's view, the "heart" of the disputes in this case—and of Dr. Allison's report—is job analysis.  (*Id.* at 3–4.) Likewise, Defendant argues the core of Burns's rebuttal relates to job analysis (comprising 8 of 10 topics).  (*Id.* at 5.)

Defendant argues that Burns is qualified to offer her rebuttal opinions because of her training as a rehabilitation counselor and life care planner and more than 30 years' experience conducting vocational evaluations.  (*Id.* at 6.)  When conducting these evaluations, she uses "the standard accepted methodology utilized by the International Association of Rehabilitation Professionals, which she has learned through academic training, continuing education, and on-the-job experience."  (*Id.*)  Defendant also contests Plaintiff's claim that Burns testified that she does not have experience with FCTs.  (*Id.* at 7.)  Rather, Defendant points out that Burns testified that she does not *develop* FCTs but is still very familiar with them and has interpreted and reviewed them as part of her work for approximately 30 years.  (*Id.*)

Plaintiff offers three arguments regarding Category 1 in its reply.  First, it argues that Defendant's response fails to address its argument regarding Burns's lack of methodology.  (ECF No. 956 at 2.)  Thus, Defendant has conceded the point.  (*Id.*) Second, Plaintiff argues Defendant "does not refute Burns's lack of expertise in developing FCTs," instead distinguishing between job analysis and FCT.  (*Id.*)  And third, Plaintiff argues it is *Defendant* that mischaracterizes its own expert's report in a

"post-hoc effort to justify imposing the same physical test for multiple positions with different duties." (*Id.* at 3.)

After considering the parties' arguments, the Court finds Burns is qualified to offer her rebuttal opinions, and Plaintiff's arguments are more appropriate for cross-examination. Defendant has satisfied the Court that Burns has substantial experience conducting job analysis, having done so for three decades. Her training and experience more than qualify her to offer rebuttal opinions on the subject. And while Burns has not personally *developed* FCTs, the process is intimately connected to job analysis, and Burns has interpreted and reviewed FCTs throughout her career. In its prior Order, the Court found that Plaintiff's expert Schelly could opine on ErgoMed's testing because even if it had performed their tests correctly, its tests could be measuring the wrong things. (ECF No. 957 at 19–20.) As far as the Court can tell, Schelly has also never developed FCTs. (*See* ECF No. 886-1.) Like Schelly, Burns has an expertise in something other than FCTs that informs her opinion on whether the FCTs were properly tailored to the relevant jobs (*i.e.*, measuring the right things). (ECF No. 942 at 7–8.)

Therefore, with respect to the Category 1 opinions, the Burns Motion is denied.

2.   Category 2

Plaintiff argues that Burns "frequently" usurps the jury's function by offering opinions that are legal conclusions without any analysis. (ECF No. 922 at 10.) These opinions fall into 2 subcategories: (i) whether an accommodation is reasonable and (ii) what constitutes a request for accommodation. (*Id.*) Plaintiff argues that in 27 of her reports on specific aggrieved individuals, Burns opines that certain accommodations Schelly suggests should have been considered are unreasonable without "provid[ing] analysis" on why. (*Id.* at 11.) Burns also opines on what is and is not a request for

17

accommodation—for example, she opines that expressing an interest in returning to work "does not equate to a request for an accommodation." (*Id.*)  In another example, Burns opines "without analysis" on whether Defendant "knew the [aggrieved individuals] had a disability" or "needed a reasonable accommodation." (*Id.*)  In Plaintiff's view, without sufficient analysis, Burns cannot offer these legal conclusions.  (*Id.* at 10–12.)

Defendant protests that Plaintiff "asks the Court to adopt a 'for me but not for thee' approach to admitting expert testimony about legal conclusions." (ECF No. 942 at 8.)  In Defendant's view, Plaintiff's responses to Defendant's Rule 702 motions are inconsistent with its arguments in the Burns Motion.  (*Id.*)  From one side of its mouth Plaintiff argues that Dr. Gutman should be able to testify that Defendant violated the ADA, and from the other it argues Burns should be excluded from offering her conflicting opinions.  Defendant says it has "steadfastly maintained that expert testimony should not cross the line into providing legal conclusions . . . or telling the jury what result to reach." (*Id.* at 9.)  Defendant says that it "has already agreed not to elicit the legal conclusions . . . identified in EEOC's motion"; however, it also claims the "examples of legal conclusions proffered by Ms. Burns are not, in fact, legal conclusions" at all.  (*Id.* at 10.)

In its reply, Plaintiff contests the accusation that it is deploying one-sided arguments regarding legal conclusions.  In its view, the critical distinction between its experts and Defendant's experts is that its experts provide the analysis undergirding their legal conclusions, which allows the jury to evaluate the opinions.  (ECF No. 956 at 4.)  Because, in Plaintiff's view, giving proper analysis is what permits an expert to offer an opinion that is a legal conclusion, Burns's opinions should be excluded even though

other witnesses' opinions should not.  (*See id.*)

As the Court explained in its Order resolving the Rule 702 motions filed in conjunction with the summary judgment briefing, legal conclusions are not permissible expert opinions.  (ECF No. 957 at 11–12, 17.)  An expert opinion is an impermissible legal conclusion when it "appl[ies] facts to law and therefore improperly usurp[s] the duty of the jury."  (*Id.* at 12.)  Plaintiff cites no authority to support its argument that an expert may offer legal opinions so long as the expert also offers their underlying analysis, *see* ECF No. 922 at 3–4, and its reply cites only its own motion and a case that undercuts its own argument.  (ECF No. 956 at 4 (citing *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 2022 WL 1037572, at *5 (D. Colo. Apr. 1, 2022).)  In *Bethel*, United States District Judge Christine M. Arguello permitted an expert to opine on insurance-industry standards—some of which are derived from case law—because it "did not constitute improper legal-conclusion testimony."  *Bethel*, 2022 WL 1037572, at *5.  In her order, Judge Arguello also ruled the expert "may not 'offer ultimate legal opinions.'"  *Id.*  Yet, Plaintiff relies on *Bethel* to argue its experts should be able to do just that, as long as they explain their reasoning.  The Court rejects Plaintiff's argument and finds that the distinction it seeks to draw is unworkable, unwise, and without any legal foundation.

The Court has previously ruled that Plaintiff's experts (Dr. Gutman and Ms. Schelly) may not offer legal conclusions, and as a result, Defendant's complaint of inconsistent application of the law on the issue is moot.  (ECF No. 956 at 11–12, 17.)  The Court has already explained that an expert opinion on whether a particular device or process is a "reasonable accommodation" is an impermissible legal conclusion

because of its heavy reliance on a legal term or terms of art.  (*Id.* at 17–18.)  Like "disability," "interactive process," and "reasonable accommodation," the phrase "request for accommodation" has a specialized legal meaning, and an expert cannot directly opine on whether the facts of a case meet the meaning of that specialized legal phrase. (*See id.*)  Consistent with the Court's prior Order, Burns will be prohibited from offering the legal opinions challenged as Category 2.

Therefore, with respect to the Category 2 opinions, the Burns Motion is granted.

3.     Category 3

Plaintiff argues the Category 3 opinions usurp the exclusive role of this Court to instruct the jury on the law.  (ECF No. 922 at 4–5.)  The specific offending opinions are: (i) that aggrieved individuals were requesting "indefinite" leave, which is *per se* unreasonable; (ii) that an employer is not required by the ADA to create a job for an employee; (iii) that having another employee perform essential functions of a job is not a reasonable accommodation; and (iv) that opining on which job functions are essential is outside the proper scope of testimony for Plaintiff's expert Schelly.  (*Id.*)

Defendant combines its responses to Plaintiff's Category 2 and Category 3 arguments into a single section.  (ECF No. 942 at 8–10.)  Consequently, Defendant's arguments largely overlap.  As with legal conclusions, Defendant describes its position as having "steadfastly maintained that expert testimony should not cross the line into . . . articulating the law."  (*Id.* at 10.)  Defendant "has already agreed not to elicit the . . . statements of law identified."  (*Id.*)  Defendant maintains that, if the Court permits any testimony from Plaintiff's witnesses on these topics, then Burns should be able to provide rebuttal testimony.  (*Id.*)

In its reply, Plaintiff argues that Defendant's response "fail[s] to respond" to its

argument regarding the Category 3 opinions.  (ECF No. 956 at 5.)  Plaintiff argues that "[a]t best" the response "conflates EEOC's arguments about statements of law and legal conclusions"; at worst, Defendant simply fails to respond.  (*Id.*)  Due to this failure, Plaintiff argues the Court should grant the Burns Motion with respect to Category 3 and enter an order "preventing Burns from opining about governing law, including specifically the four areas [specifically] identified."  (*Id.*)

Defendant's response concerning the Category 3 opinions conflates the issues concerning expert testimony on legal conclusions and statements of the law.  This approach leaves something to be desired, but the crux of Defendant's arguments with respect to both Category 2 and Category 3 opinions is that what is good for the goose is good for the gander.  (*See* ECF No. 942 at 8–10.)  It warps the truth-seeking function of a jury trial to apply rules unevenly, and Defendant explicitly requests permission for Burns to opine on the same topics as Plaintiff's experts.  (*Id.* at 10.)  In the Court's view, Defendant has preserved its arguments with respect to Burns's Category 3 opinions, and it will next turn to the question of the admissibility of those opinions in light of its prior rulings.

In its prior Order, the Court permitted Plaintiff's expert Dr. Gutman to "refer to the law that 'not all job functions are essential' in contextualizing his other permissible opinions."  (ECF No. 957 at 16.)  This is because "the U.S. Court of Appeals for the Tenth Circuit's case law permits experts to 'refer to the law in expressing their opinion.'" (*Id.* at 11 (quoting *United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013)).) Plaintiff does not argue that any of the legal rules Burns references are incorrect statements of the law; it merely complains that she refers to the law at all.  (ECF No.

922 at 4–5.)  Plaintiff is correct that it is the Court's exclusive and jealously-guarded duty to instruct the jury on the law, *see Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988), however, simply referring to the law as part of the basis for an opinion will not render that opinion improper.  *Id.* at 809–10.

One of Burns's opinions identified within Category 3, however, clearly invades this Court's role and will be excluded.  Just as it is the Court's duty to instruct the jury on the law, it is the Court's duty to act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler*, 400 F.3d at 1232.  Not only is it not Burns's role to determine what opinions are permissible for another expert to offer, she is not an expert in the law.  The Court has already ruled that Schelly's opinions on which job functions are essential is an impermissible legal conclusion.  (ECF No. 957 at 17.)  While the Court could readily rule that Burns's opinion invades its role as gatekeeper, because Schelly is precluded from offering the opinion Burns's opinion purports to rebut, the issue is moot.

Therefore, with respect to the Category 3 opinions, the Burns Motion is denied in part and denied in part as moot, as described above.

4.   Category 4

The final category of Burns's impermissible opinions that Plaintiff identifies are those that "improperly bolster ErgoMed's credibility" in her report rebutting Dr. Allison. (ECF No. 922 at 13.)  Plaintiff argues that because "Burns admitted that she did not verify any of ErgoMed's assertions and did not have the expertise to assess whether their functional capacity testing was reliable," she acts as a "'mere mouthpiece' for ErgoMed's version of events."  (*Id.*)  As stated in Section III.D.1, Plaintiff seeks exclusion of the rebuttal report in its entirety.  In support of this effort, Plaintiff provides five examples of "particularly egregious" Category 4 opinions:

> First, Burns opines that ErgoMed has a "systematic
> methodology that they have honed over the last 25 years of
> business." Second, Burns opines that ErgoMed's tests are
> "in line with industry standards" even though there is no
> apparent basis for her opinion. Third, she disagrees with Dr.
> Allison's opinion that ErgoMed's tests were unreliable, urging
> without support that "[f]or both evaluation of job functions
> and individual assessment of physical capacity to perform
> required job function, ErgoMed follows a systematic
> methodology for measuring specific physical demands and
> an employee's, or potential employee's, capacity to perform
> the functions necessary for the job." Fourth, her opinion
> without analysis also includes that "evaluations are
> performed in a consistent manner from worker to worker and
> test exactly what they are designed to evaluate." Fifth,
> Burns quotes one of Western's witnesses, Mr. Thompson,
> about what tasks Heavy Wrecker and Rollback drivers are
> required to perform at crash scenes and simply adopts his
> views as her own.

(*Id.* at 5–6 (citations omitted).)  Plaintiff also complains that Burns is "simply parroting"

Defendant by copying and pasting its discovery responses at the end of her report

without further analysis, apparently adopting them as her opinions.  (*Id.* at 14.)

Defendant argues that Burns's reference to her discussions with a witness from

ErgoMed does not improperly bolster ErgoMed's credibility.  (ECF No. 942 at 10–11.)

Defendant agrees that "an expert witness may not directly opine on another witness's

credibility," but an expert can refer to facts not in the expert's personal knowledge and

provided by another witness in forming expert opinions.  (*Id.* at 11. (citing *Ellis v. Hobbs

Police Dep't*, 472 F. Supp. 3d 1087, 1096 (D.N.M. 2020)).)

Plaintiff insists that Burns "attempts to transform witness testimony [in]to expert

testimony by repeating" it.  (ECF No. 956 at 5.)  It argues that Defendant's failure to

address any of the examples it listed in the Burns Motion, Burns's paraphrasing of her

conversation with ErgoMed CEO Max Haynes, and Burns's lack of independent

investigation into Haynes's statements about ErgoMed's process are evidence of the

opinions' unreliability and purpose to improperly bolster Ergomed's credibility.  (*Id.* at 5–6.)

The Court finds Burns's Category 4 opinions are proper, *provided* that her testimony makes clear to the jury that her opinion is based, in part, on her assumption that certain facts conveyed to her about ErgoMed are true and accurate, and that she did not independently confirm the truthfulness or accuracy of those facts.  *See Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006.) Reading Burns's report, it is clear to the Court that her references to her conversations with Haynes and to Defendant's discovery responses assume the accuracy of the facts contained therein, and that she has formulated her opinions based on those assumed facts.  (*See, e.g.*, ECF No. 921-3 at 3–4.)  It is true that Burns restates these assumed facts in definitive terms, but she also cites the source of these facts so that their source is clear and susceptible to a credibility assessment.  (*See id.* at 4, 12.)  While this is clear to the Court, it may be considerably less clear to the jury.  Thus, in giving her testimony at trial, Burns will only be permitted to rely on facts from ErgoMed and Defendant provided that she makes clear to the jury that she is assuming—and not independently confirming—facts based on information received from other witnesses. On this basis the Burns Motion is granted in part, and it is denied in all other respects.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS, consistent with its analysis and rulings set forth above, that:

1.    Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert Arthur Gutman, Ph.D. at Trial (ECF No. 911) is DENIED;

2.    Defendant's Motion to Exclude Opinions and Testimony of Plaintiff EEOC's Expert Catherine L. Schelly at Trial (ECF No. 912) is DENIED;

3.    EEOC's Motion to Exclude Expert Testimony of Dr. Michael Ladwig and Dr. Hector Brignoni (ECF No. 918) is DENIED AS MOOT;

4.    EEOC's Motion to Limit Opinions and Testimony of Defense Expert Natalie P. Hartenbaum (ECF No. 919) is GRANTED IN PART and DENIED IN PART; and

5.    EEOC's Motion to Exclude Opinions and Testimony of Defense Expert Margot Burns (ECF No. 922) is GRANTED IN PART, DENIED IN PART, and DENIED IN PART AS MOOT.

Dated this 1st day of December, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

25