**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING CO.,

    Defendant.

---

**ORDER DENYING EEOC'S AMENDED MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

In this case, the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") sues Western Distributing Company ("Western" or "Defendant") on behalf of 57 aggrieved individuals, alleging a pattern or practice of discrimination against employees with disabilities, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

Before the Court is EEOC's Amended Motion for Partial Summary Judgment (ECF No. 823) ("Motion"), in which Plaintiff seeks summary judgment with respect to its Disparate Treatment Claims, six allegedly discriminatory qualification standards relating to its Disparate Impact Claim, and Defendant's affirmative defense of undue hardship as to four allegedly reasonable accommodations.[1]  (ECF No. 823 at 7.)

---

[1] Throughout this Order, the Court will refer to the "Disparate Treatment Claims," corresponding with Issues 1 and 2 as discussed in Section I, and the "Disparate Impact Claim," corresponding with Issue 4 as discussed in Section I.

## I. BIFURCATION ORDER[2]

Prior to this action being reassigned to the undersigned, trial and discovery were bifurcated into two phases in the July 27, 2018, Memorandum and Order issued by United States District Judge Lewis T. Babcock (ECF No. 166) ("Bifurcation Order"). Per the Bifurcation Order:

> During Phase I of the trial, the EEOC shall have the burden to demonstrate that Defendant has a pattern or practice of unlawful discrimination, and if so, whether the alleged pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities. If it is found that the alleged pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities, an advisory amount of punitive damages shall be awarded. In Phase I, it will also be decided whether Defendant's policies were a standard, criteria, or were administered in a manner that has the effect of discrimination on the basis of disability.[3]

(ECF No. 166 at 17–18.)

In the Final Pretrial Order (ECF No. 808), Plaintiff provides a more detailed description of the issues that, pursuant to Judge Babcock's Bifurcation Order, are to be decided by the jury in the course of the Phase I trial:

> (1) Whether Defendant engaged in a pattern or practice of denying reasonable accommodation to qualified individuals with disabilities, in violation of Sections 102(a) and 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(A);
>
> (2) Whether Defendant engaged in a pattern or practice of denying employment opportunities to qualified individuals with disabilities because of their disabilities or perceived

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[3] The Bifurcation Order also provided, "Phase I shall be tried to a jury, with the Court determining whether it is appropriate to order any prospective relief based upon the jury's finding." (ECF No. 166 at 18.)

2

> disabilities, or because of the need to provide reasonable accommodation, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(B);
>
> (3) If a pattern or practice of discrimination is found, whether the pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities. If it is found that the alleged pattern or practice of discrimination was done with malice or reckless disregard for the federally-protected rights of employees with disabilities, an advisory amount of punitive damages shall be awarded[; and]
>
> (4) Whether Defendant used discriminatory standards, criteria, or methods of administration that have the effect of discriminating on the basis of disability, or used qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, in violation of Sections 102(b)(3) and (b)(6) of the ADA, 42 U.S.C. §§ 12112(b)(3) and (b)(6).[4]

(ECF No. 808 at 6–7) (the "Phase I Issues"). The Court finds this distillation and description of the Phase I Issues to be accurate and helpful and, therefore, adopts it as modified herein for the purposes of this Order, its forthcoming Order on Defendant's Corrected Amended Motion for Summary Judgment (ECF No. 821), and the Phase I trial set to begin on January 9, 2023.[5]

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[4] The statutory bases for this fourth Phase I Issue have been edited from Plaintiff's proposal in the Final Pretrial Order to clarify that it raises a disparate impact theory of discrimination only.

[5] Plaintiff includes a fifth Phase I Issue relating to prospective relief. (ECF No. 808 at 7.) Because this issue will be decided by the Court based on the jury's findings and is not the subject of Plaintiff's Amended Motion for Partial Summary Judgment, it will not be discussed further in this Order.

3

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. MATERIAL FACTS[6]

Since at least 2007, Defendant's employee manual has contained two policies in the section relating to workers' compensation: (1) that in order to return to work from a non-life-threatening injury, an employee must bring a physician report to their supervisor that "must state that [the employee] can return to full duty or that [the employee is] "discharged" before [the employee] can return to work at full duty; and (2) that if the employee is "not able to return at the end of the twelve-week period, [the employee] will be replace in [their] position and [their] employment with the company will be terminated."  (ECF No. 822-10 at 24; ECF No. 823 at 46.)  Plaintiff refers to these

---

[6] The following factual summary is based predominantly on the parties' briefs on the Motion for Summary Judgment and documents submitted in support thereof.  Facts disputed by the parties are noted as such.

policies as the "full-duty" and "maximum-leave" policies, respectively, and the Court adopts this nomenclature.  (ECF No. 823 at 7.)  Two additional relevant policies—the return-to-work policy and the reasonable-accommodation policy—were added to the employee manual in 2015.  (ECF No. 871 at 28; ECF No. 842-2; ECF No. 842-3.)

The parties disagree as to both the existence and nature of the full-duty and maximum-leave policies.  Plaintiff asserts these "interrelated policies" were applied by Western beyond the workers' compensation context, are *per se* discriminatory, and their enforcement constitutes a pattern-or-practice of discrimination against people with disabilities.  (ECF No. 823 at 7.)  Defendant argues Plaintiff seizes upon out-of-context policy language, and the full-duty and maximum-leave policies as "imagined" by Plaintiff never existed.  ECF No. 847 at 46–47.)  Employees at third-party medical and insurance companies that worked closely with Defendant testified in their depositions that they understood Defendant's employment practices did not accommodate medical restrictions.  (ECF No. 823 at 43.)  And managers at Defendant testified that there were no exceptions to the 12-week hard cap on leave.  (*Id.*)  Those same managers also testified that Defendant had informal practices of providing reasonable accommodations to employees with disabilities during the relevant period.  (ECF No. 847 at 6.)  According to Defendant, those pre-existing, informal practices were merely memorialized when the written return-to-work and reasonable-accommodation policies were added to the employee handbook in 2015.  (*Id.* at 9.)

Defendant uses third-party company ErgoMed to assess the physical capacity of prospective drivers before they begin work.  (ECF No. 847 at 2.)  Both applicants and current employees that have been on leave due to injury must submit to ErgoMed's

5

testing before driving for Defendant. (*See id.*; ECF No. 823 at 20.) Relevant to this Order are four physical tests developed and administered by ErgoMed: (1) a 50-pound lift-and-carry test; (2) a 132-pound lifting test; (3) a 130-pound static push/pull test; and (4) a 76-pound push test. (*Id.* at 65, 70.) Plaintiff asserts that Defendant hired ErgoMed to develop these tests so that it could screen drivers with pre-existing conditions, thereby reducing the likelihood that its employees would be hurt on the job and reducing workers compensation costs. (*Id.* at 19–20.) Defendant asserts that the tests accurately assess drivers' ability to perform the very physical work required of commercial motor vehicle operators and protects the community from drivers unable to safely perform their duties. (ECF 847 at 17.)

## IV. ANALYSIS

### A.     Full-Duty and Maximum-Leave Policies

The EEOC contends that Defendant maintained two interrelated, discriminatory employment policies to the detriment of both employees and applicants with disabilities. (ECF No. 823 at 40.) The "full-duty policy" allegedly required employees to receive a "full duty" or "no restrictions" medical clearance before returning to or beginning work. (*See id.* at 42–43.) The "maximum-leave policy" allegedly limits employee leave to twelve weeks and provides for automatic termination if employees cannot return to work (consistent with the full-duty policy) after 12 weeks. (*Id.* at 46–47.) These policies, the existence of which Plaintiff argues is indisputable, form the basis of the Disparate Treatment Claims and are two of the thirteen discriminatory standards, criteria, or methods of administration that form the basis of the Disparate Impact Claim.

1. <u>Genuine Issues of Material Fact Preclude Summary Judgment on Issues Based on the Full-Duty Policy</u>

Predictably, the parties paint starkly contrasting views of Defendant's alleged full-duty policy.

In the EEOC's view, Defendant has a written full-duty policy that was included "in black and white, time and time again, in every [employee policy] manual issued since at least 2009." (*Id.* at 42.) Before an injured employee could return to work under the policy, the employee's "physician report must state that [the employee] can return to full duty or that [the employee is] 'discharged' before [the employee] can return to work at full duty." (ECF 822-10 at 24; ECF No. 823 at 42–43.) Plaintiff argues that, in practice, "full duty" means "no restrictions." (ECF No. 823 at 43–45.) In other words, the full-duty policy is the kind of "100% healed" or "fully healed" policy courts have "consistently" found violate the ADA because they foreclose even the consideration of reasonable accommodations for employees or applicants with disabilities. (*Id.* at 45–46.) Such 100% healed policies are *per se* discriminatory, and Plaintiff argues the full-duty policy was regularly enforced by Defendant. (*Id.* at 46.)

Defendant forcefully maintains it does not have a full-duty policy. (ECF No. 847 at 46.) First, Defendant points out that that policy language Plaintiff cites as the basis of the alleged full-duty policy is contained within its workers' compensation policy. (*Id.* at 47.) It argues that this policy language is unrelated to providing reasonable accommodations to employees with disabilities and that, in practice, it allowed "many" employees to return to work with restrictions. (*Id.* at 47.) And it further contends that its practice of offering or providing reasonable accommodations is "inconsistent with the existence of a 100%-healed policy." (*Id.* (quoting *Gardenhire v. Manville*, 722 F. App'x

835, 840 (10th Cir. 2018)).)  Western also argues its policies and practices merely require employees returning to or beginning work to be able to perform the essential functions of the jobs they were hired to perform.  (*Id.* at 50–51.)  Further, Defendant's written return-to-work and reasonable-accommodation policies "dispel the notion" that it has a 100% healed policy.  (*Id.* 48–49.)

The parties' irreconcilable positions are not legal disputes; they are rooted in an extensive factual record containing voluminous and sometimes conflicting evidence. The parties' submissions on the Motion demonstrate that making any finding with respect to the existence and discriminatory nature of the full-duty policy requires weighing this conflicting evidence to determine, among other things, the importance, weight, credibility, and persuasive value, to assign to such evidence.  These determinations are the exclusive province of the jury.

Among the conflicting evidence creating a genuine dispute as to these material facts, which must be evaluated by the jury, is the following:

- Testimony from Defendant's managers and third parties that worked closely with Defendant as to the meaning of the phrase "full duty" and whether employees could return to work with restrictions (ECF No. 823 at 43–44);

- Business records evidencing that Defendant's employment practices were either in accord with (*id.* at 44) or contrary to (ECF No. 847 at 52) a 100% healed policy; and

- Defendant's additional return-to-work and reasonable-accommodation policies and testimony from Defendant's managers regarding whether

8

>these policies merely memorialized existing informal practices (*id.* at 9) or were created from whole cloth after this matter[7] had begun (ECF No. 871 at 18) (critically, consideration of this evidence requires the paradigmatic jury function of assessing witness credibility).

It is important to understand in this regard that this list is merely illustrative, and well short of exhaustive.

Given these key factual disputes, the Court easily finds there are genuine disputes of material fact as to the existence and nature of Defendant's alleged full-duty policy. As such, Plaintiff is not entitled to judgment as a matter of law, and the Motion is denied with respect to Plaintiff's Disparate Treatment and Disparate Impact claims of disability discrimination, insofar as they are predicated on the existence and application of a purported full-duty policy.

2. <u>Genuine Issues of Material Fact Preclude Summary Judgment on Issues Based on the Maximum-Leave Policy</u>

As with the full-duty policy, the parties have very dissimilar views of the facts relating to the alleged maximum-leave policy.

Plaintiff asserts Defendant "repeatedly stated" the maximum-leave policy in its employee policy manual "from 2007 to the present." (ECF No. 823 at 46.) The policy provides that if an employee is "not able to return at the end of the twelve-week period" of leave, the employee's "employment with the company will be terminated." (ECF No. 822-10 at 24; ECF No. 823 at 46.) Prior to 2015, the policy manual "never included any language suggesting that exceptions would be made to reasonably accommodate

---

[7] These policies were added to Defendant's employee handbook in 2015. (ECF No. 871 at 28.) This civil action was filed in 2016, however, the initial charge of discrimination was filed on August 5, 2009 (ECF No. 550-1 at 2.)

9

disabilities." (ECF No. 823 at 46–47.) Plaintiff asserts the evidence shows there were in fact "no exceptions" to this policy, and Defendant regularly terminated employees via mail without "considering reasonable accommodations for the individual or conducting the individualized assessment required under the ADA." (*Id.* 47–49.) Plaintiff argues Defendant's pattern of failing to engage in the interactive process with employees it knew had disabilities who had requested accommodation violates the ADA. (*Id.* at 49–57.)

Western maintains it does not have a maximum-leave policy. (ECF No. 847 at 40.) As with the alleged full-duty policy, it argues that the language Plaintiff seizes on is found in the section of Defendant's employee policy manual dealing with workers' compensation and is unrelated to its ADA policies or practices. (*See* ECF No. 822-10 at 24.) Defendant argues that it has always "made leave decisions on a case-by-case basis as is required by the ADA" and its human resources employees' unfamiliarity with the legal term of art "interactive process" does not transform its legal employment practices into a pattern or practice of discrimination. (ECF No. 847 at 55.)

In Defendant's view, it has a legal leave policy providing the 12 weeks of leave mandated by the Family and Medical Leave Act of 1993, 28 U.S.C. §§ 2601, *et seq.* ("FMLA"), which must be read in conjunction with its other policies that provide for reasonable accommodations for employees or applicants with disabilities. (*Id.* at 55–56.) According to Defendant, it is only because Plaintiff insists on considering the alleged maximum-leave policy devoid of context that it can mistake Defendant's legal policies and practices for an unlawful pattern or practice of discrimination. (ECF No. 847 at 57–59.)

Like the parties' contrary views of the full-duty policy, their irreconcilable positions on the alleged maximum-leave policy are rooted in the voluminous record and conflicting evidence. The briefs of the parties make clear that making any finding with respect to the existence and discriminatory nature of the maximum-leave policy requires weighing this conflicting evidence in the manner described previously. In the context of these material factual disputes, this undertaking is reserved exclusively for the jury.

Among the conflicting evidence creating a genuine dispute as to these material facts, which must be evaluated by the jury, are the following:

- Representations by Defendant that its "policy and practice is to automatically discharge employees who are not able to return to work after 12 weeks of FMLA" (ECF No. 823 at 47);

- Testimony from Defendant's managers, particularly former HR Director Jennifer Maddox, regarding the existence of a practice of communicating with and potentially accommodating employees returning to work from injury predating the 2015 addition of the return-to-work and reasonable-accommodation policies to Defendant's policy manual (ECF No. 847 at 55);

- Conflicting earlier testimony from Maddox in which she confirmed that there were no exceptions to the maximum-leave policy (ECF No. 823 at 47);

- Documentary evidence tending to show that Defendant enforced the maximum-leave policy (ECF No. 823 at 47–48); and

- Evidence that certain employees in fact were provided accommodations in

the form of extended leave or light-duty work upon returning to work (ECF No. 847 at 57–59).

Again, this list is illustrative and not intended to be exhaustive.

Given these factual disputes, the Court finds there are genuine disputes of material fact as to the existence and nature of Defendant's alleged maximum-leave policy. As such, Plaintiff is not entitled to judgment as a matter of law, and the Motion is denied with respect to Plaintiff's Disparate Treatment and Disparate Impact claims of disability discrimination, insofar as they are predicated on the existence and application of a purported maximum-leave policy.

## B. Disparate Impact of Other Qualification Standards, Employment Tests, or Selection Criteria

Plaintiff argues Defendant's use of thirteen unlawful qualification standards, employment tests, or selection criteria has a disparate impact on employees and applicants with disabilities. (*See* ECF No. 808 at 14.) Of these thirteen, it seeks summary judgment with respect to six—the full-duty and maximum-leave policies, discussed above and as to which the Court has already denied summary judgment on Plaintiff's Disparate Impact Claim of discrimination, and four physical tests "used and administered to further its full-duty policy."[8] (ECF No. 823 at 1, 64.) The four physical test are: (1) the 50-pound lift-and-carry test for over-the-road ("OTR"), United States Armored Company ("USAC"), Local, and Yard Hostler drivers; (2) the 132-pound lifting test for all Western Towing and Recovery ("Towing") drivers; (3) the 130-pound static push/pull tests for OTR, USAC, Local, and Yard Hostler drivers; and (4) the 76-pound

---

[8] Plaintiff references "five qualification standards" in the Motion; however, by the Court's count, the Motion requests summary judgment with respect to six.

push test for Towing drivers.  (ECF No. 823 at 65, 70.)

In Plaintiff's view, these physical tests were used as a screening tool to deny employment to drivers with existing medical conditions.  (*Id.*)  In practice, the physical tests had the effect of "adversely impact[ing] several individuals with disabilities."  (*Id.* at 65.)  Specifically, Plaintiff identifies several individuals with disabilities who were either denied employment or not rehired based on their inability to pass the tests.  (*Id.* at 65, 70–71.)  In Plaintiff's view, "the causal relationship between the [physical tests] and the impact on individuals with disabilities is straightforward."  (*Id.* at 72.)

In Defendant's view, the physical tests are not discriminatory.  Further, Defendant argues that Plaintiff has failed to show that the physical tests had a disparate impact on employees or applicants with disabilities.  (ECF No. 847 at 67.)

After reviewing the parties' arguments, the Court concludes that there are genuine disputes of material fact that preclude summary judgment on the Disparate Impact Claim with respect to the four physical tests.  Among the conflicting evidence creating a genuine dispute as to these material facts, which must be evaluated by the jury, are the following:

- Evidence of five individuals who were denied OTR positions due to lifting restrictions (ECF No. 823 at 66) and the lack of evidence with respect to the other driving positions for which Plaintiff challenges the lifting tests (ECF No. 847 at 69); and
- Evidence tending to show that drivers with very low lifting requirements would not be unable to obtain DOT certification (*id.* at 70).

In addition to these facts, the jury may be presented with evidence that is currently the

13

subject of the EEOC's Motion *in Limine* to Exclude Western's Proposed Testimony and/or Exhibits (ECF No. 976.)  The Court emphasizes that it has neither considered nor ruled on Plaintiff's motion *in limine*, and the parties should not glean anything about the Court's views on the merits of that motion from this Order.  If the Court denies Plaintiff's motion *in limine*, the jury may also be presented with and asked to consider evidence tending to show that only 30 of 1,063 individuals tested by ErgoMed over a 10-year period received a "no-match job recommendation."  (ECF No. 847 at 69.)  And of those 30 individuals, only five received such a recommendation because they were unable to complete one of the physical tests.  (*Id.*)

Given these key factual disputes, set forth for illustrative purposes only, the Court finds there are genuine disputes of material fact as to the disparate impact of the four physical tests on which Plaintiff seeks summary judgment.  As a result, Plaintiff is not entitled to judgment as a matter of law on this theory of discrimination, and the Motion is denied with respect to the Disparate Impact Claims.

**C.    Undue Hardship**

Plaintiff seeks summary judgment on Defendant's undue hardship affirmative defense with respect to four allegedly reasonable accommodations, arguing Defendant failed to produce evidence from which a reasonable trier of fact could find that such accommodations would cause an undue hardship.  (ECF No. 823 at 74.)  Given that the Court has already determined that Plaintiff is not entitled to summary judgment on any of the theories or claims of discrimination that are the subject of the Motion, the Court need not at this juncture of the proceedings take up the issue of whether it should, or should not, determine as a matter of law that Defendant cannot prove its affirmative defense.

14

Therefore, the Motion is denied with respect to Defendant's undue hardship affirmative defense, without prejudice to it being raised at trial, if appropriate.

## V. CONCLUSION

For the foregoing reasons, the EEOC's Amended Motion for Partial Summary Judgment (ECF No. 823) is DENIED.

Dated this 21st day of December, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge