## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

WESTERN DISTRIBUTING CO.,

      Defendant.

---

## ORDER ON PLAINTIFF'S MOTION *IN LIMINE*

---

In this case, the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") sues Western Distributing Company ("Western" or "Defendant") on behalf of 57 aggrieved individuals ("AIs"), alleging a pattern or practice of discrimination against employees with disabilities, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

Before the Court is EEOC's Motion *in Limine* to Exclude Western's Proposed Testimony and/or Exhibits (ECF No. 976) ("Motion"). Western filed a response (ECF No. 997). For the following reasons the Motion is granted in part, denied in part, and denied in part as moot.

### I. LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges

have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action."  Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

The movant "has the burden of demonstrating that the evidence is inadmissible on any relevant ground," and a court "may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded."  *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d, 1078, 1082 (D. Kan. 2000)).

## II. ANALYSIS

Plaintiff argues the Court should preclude Defendant from offering evidence and argument regarding: (1) issues relating to individual AIs reserved for Phase II of this bifurcated action; (2) AIs deferred to Phase II; (3) AIs' prescription medications; (4) late-disclosed individuals whose disabilities Defendant allegedly accommodated; (5) Defendant's alleged accommodations for employees who were not qualified individuals with disabilities; (6) Clinton Kallenbach's reasons for missing his appointment with ErgoMed; (7) statistics on ErgoMed test results; (8) state traction laws and the safety of

snow socks; (9) photographs of accidents and towing jobs unrelated to AIs or EEOC's claims; (10) Western's calculations of the cost of idle trucks; (11) AIs' opinions on their own disability status; (12) AIs' criminal convictions more than ten years old; and (13) AIs' marriages or marital problems.  (ECF No. 976.)

## A.    Individual Issues

Under the July 27, 2018, Memorandum and Order issued by United States District Judge Lewis T. Babcock (ECF No. 166) ("Bifurcation Order"), "all individual claims and resultant damages" will be decided during the Phase II trial.  (ECF No. 166 at 18.)  Plaintiff argues that "individual employment decisions" and all evidence related to those decisions are also reserved for Phase II.  (ECF No. 976 at 2 (citing ECF No. 166 at 3).)  Despite this, according to Plaintiff, Defendant "continues to seek adjudication on Phase II issues."  (*Id.*)  Accordingly, Plaintiff seeks exclusion of evidence of the following facts:

> a) More than half of the AIs (32 of 57) could not work in any capacity at the time of separation.
>
> b) 41 out of 57 AIs were unable to drive commercially at the time of separation.
>
> c) Some AIs admitted they could not safely perform their job duties.
>
> d) Some AIs failed to disclose potentially DOT-disqualifying conditions.
>
> e) EEOC seeks relief on behalf of AIs who were not restricted or impaired at the time of separation.
>
> f) EEOC seeks relief on behalf of AIs whose impairments were short in duration, not permanent or long-term, and/or were not severe.
>
> g) EEOC seeks relief on behalf of AIs who never notified Western of their purported disabilities or disability-related

need for accommodation.

h) EEOC seeks relief on behalf of AIs Russell Brethour, Johnson, Oney, and Otten, who have no documentation showing that they had a purported disability during the relevant time at Western.

i) EEOC seeks relief on behalf of AIs who voluntarily resigned or were separated for performance or conduct issues.

j) Most AIs who lived outside of Colorado were not interested in relocating to Denver for reassignments[.]

(*Id.* (citations omitted).)

Plaintiff argues that permitting evidence of these facts would "stand[] in direct opposition" to the Bifurcation Order "by suggesting that individual employment decisions," "what restrictions an individual had when discharged," "whether an individual had a disability," and "whether a specific accommodation would have been reasonable for a specific individual" are part of the Phase I trial.  (*Id.* at 2–3.)

Defendant argues that the "EEOC misrepresents the Bifurcation Order, which . . . does not state that individual employment decisions are reserved for Phase II ***only***." (ECF No. 997 at 2 (emphasis in original).)  Defendant argues bifurcation of pattern or practice actions under *International Brotherhood of Teamsters v. United States* does not limit the kinds of evidence an employer can use to defend itself and "specifically permits evidence that [the] EEOC's case is 'inaccurate or insignificant.'"  (*Id.* (quoting *Int'l B'hd Teamsters v. U.S.*, 431 U.S. 324, 360 (1977)).)  To do this, Defendant argues it should be able to present evidence that AIs were not qualified individuals, did not have a disability or did not notify Western of their disability, did not desire reassignment, or were discharged for reasons other than their disabilities.  (*Id.*)

The Court agrees with Defendant.  The *Teamsters* Court was clear that Phase I

and Phase II bifurcation does not "suggest that there are any particular limits on the type of evidence an employer may use." 431 U.S. at 360 n.46. The Court went on to state that "at the liability stage of a pattern-or-practice trial the focus *often* will not be on individual hiring decisions." *Id.* (emphasis added). When these two statements in *Teamsters* are read together, it is clear to this Court that individual employment decisions are not rendered irrelevant during Phase I trials solely as a result of the fact that such decisions may have involved only a single AI in the first instance.

Even the more direct language from the Tenth Circuit, quoted in the Bifurcation Order, does not require the conclusion that individual employment decisions are beyond the scope of a Phase I trial. (*See* ECF No. 166 at 3 ("[T]he *initial focus* in a pattern-or-practice case is not on individual employment decisions, but on a pattern of discriminatory decisionmaking.") (*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)) (internal quotations omitted, emphasis added).) While individual employment decisions may not be the central inquiry during a Phase I trial, the *Teamsters* and *Thiessen* decisions are binding on this Court, and they do not support the categorical exclusion of individual-decision evidence the EEOC seeks.

Therefore, with respect to the individual issues identified by Plaintiff, this portion of the Motion is denied.

## B. "Deferred" Aggrieved Individuals

Plaintiff argues that "the parties and Court agreed to bifurcate discovery for treating physicians" at a July 11, 2019, hearing before United States Magistrate Judge Scott T. Varholak. (ECF No. 976 at 3.) At this hearing, Judge Varholak permitted depositions of 20 treating physicians, limited to three hours each during Phase I discovery. (*Id.*) There are 22 AIs whose treating physicians were not deposed, and the

"EEOC understood this to mean the individuals for whom discovery had been deferred[] would not be Phase I witnesses." (*Id.*) "Western, however, identified seven as witnesses." (*Id.*)

Plaintiff further argues that "deferred treating-physician discovery relates primarily to establishing the aggrieved individual's disability, a Phase II individualized issued under the [B]ifurcation [O]rder." (*Id.*) On these grounds, Plaintiff seeks exclusion of any evidence or argument that "any aggrieved individual did not have a disability." (*Id.* at 3.) Alternatively, if the Court permits such evidence and argument, Plaintiff argues Defendant "should not be allowed to challenge the disabilities of the 22 individuals whose treating-physician discovery was deferred to Phase II . . . because the EEOC has not had the opportunity to gather the evidence necessary to establish their disability." (*Id.*)

Defendant argues it is "incredulous[]" to suggest it "cannot defend itself in an ADA lawsuit with evidence that the AIs" did not have disabilities, and it contests that discovery for treating physicians was bifurcated, either by agreement or Court order. (ECF No. 997 at 3.) Defendant also points out that the "EEOC cites not case law in support" of its position. (*Id.*)

After considering the parties' arguments, and closely reviewing transcript excerpts from the July 11, 2019 hearing before Judge Varholak, the Court finds Defendant has the better argument here. The Court has already rejected Plaintiff's "individual issues" argument, *supra* Section II.A, and nothing in the hearing transcript explains how the EEOC came to the understanding that any AIs whose treating physicians it did not depose could not be Phase I witnesses. Judge Varholak limited the

number of depositions for treating physicians because, in his view, "the medical records are sufficient for the vast majority of the information that the EEOC needs."  (ECF No. 995-3 at 7.)  This ruling cannot be harmonized with the EEOC's argument that it has "not had the opportunity to gather the evidence necessary to establish [Western's witnesses'] disability."  (ECF No. 976 at 4.)

Therefore, with respect to "deferred" AIs, this portion of the Motion is denied.

## C.    Prescription Medications

Plaintiff argues evidence of certain AIs' prescription medications should be precluded on the basis that most of it is after-acquired evidence of wrongdoing and unduly prejudicial.  (ECF No. 976 at 4.)  It argues that after-acquired evidence is only relevant to damages, a Phase II issue.  (*Id.* (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360–62 (1995).)  It also argues that, in light of "the national attention around the opioid epidemic," the probative value of evidence that some AIs were prescribed opioids is substantially outweighed by the unfair prejudice of such evidence.  (*Id.* at 3–4 (citing Fed. R. Evid. 403).)

Defendant argues evidence of AIs' prescriptions is not after-acquired evidence of wrongdoing, but rather evidence that undercuts the EEOC's claim that reasonable accommodation was possible.  (ECF No. 997 at 3.)  According to Defendant, these prescriptions prevented certain AIs from driving commercial motor vehicles, regardless of any accommodations for disability.  (*Id.*)  As for Plaintiff's argument regarding unfair prejudice, Defendant argues Federal Rule of Evidence 403 "should be used sparingly," and this is not an appropriate situation for the rule.  (*Id.* at 4.)

The Court agrees with Defendant that evidence of AIs' prescription medications is not after-acquired evidence of wrongdoing.  And while it may be true that "[m]ost, if

not all, of the evidence of medications prescribed for the aggrieved individuals was obtained by Western in the litigation," there is nothing illegal or wrong about using prescription medications.  (ECF No. 976 at 4.)  Moreover, as Plaintiff points out, "evidence that medication was prescribed does not establish the aggrieved individual was not eligible to DOT drive because it does not establish the person took the medicine, how often they took it, or the time of day they took it."  (*Id.*)  The logical gaps Plaintiff identifies in what it perceives to be Western's theory or argument on this issue are ripe fodder for cross examination and closing argument, but are not grounds for their exclusion.

As for Plaintiff's Rule 403 argument, the Court is unconvinced.  The suggestion that jurors will be scandalized and prejudiced against AIs simply by learning they were lawfully prescribed opioid medications by their medical providers has little to no merit.

Therefore, with respect to the AIs' prescribed medications, this portion of the Motion is denied.

## D.   Late-Disclosed, Allegedly Accommodated Individuals

Plaintiff argues Defendant should be precluded from offering evidence of 14 individuals it allegedly provided ADA accommodations to, who were disclosed after the close of discovery.  (ECF No. 976 at 5.)  Plaintiff argues that, despite Defendant's claim that "it rediscovered the accommodations it provided after a court[-]ordered review of backup tapes in 2021," its "[e]vidence of these purported accommodations . . . were easily accessible to Western all along."  (*Id.*)  EEOC proposed "limited discovery related to these individuals," but Western refused. (*Id.*)  Plaintiff now seeks to preclude testimony from "unspecified managers about alleged accommodations" provided to these employees under Rule 37.

Defendant asserts that it could not have known about the evidence relating to these individuals without performing the court-ordered restoration and search of back-up tapes.  (ECF No. 997.)  Defendant represents that it does not intend to call these individuals to testify "unless [the] EEOC opens the door," but argues it should not be precluded from referencing its past accommodations to refute Plaintiff's allegations and claims.  (*Id.*)

The Court previously resolved a similar dispute in its January 4, 2023, Order on Defendant's Motion *in Limine* (ECF No. 1039 at 9–11.)  There, the Court explained that the proper vehicle for seeking relief for discovery violations is a motion for sanctions. (*Id.* at 9.)  As there, and again solely in the interest of justice, the Court will construe this portion—and this portion only—of the Motion as a motion for sanctions, and order the same remedy.  (*Id.*)

The Court therefore orders the parties to proceed as follows: (1) Defendant will be permitted to call the above-referenced 14 allegedly accommodated individuals to testify in its case in chief, or to introduce evidence about their alleged accommodations through another appropriate witness; (2) **no later than 48 hours prior** to the anticipated time of any such testimony, Defendant will provide to Plaintiff a detailed factual summary of the materially relevant testimony (related to these individuals) it anticipates eliciting on direct examination, along with a complete list of all exhibits it anticipates will be in any manner referenced or used in relation to these individuals in the course of its direct examination; and (3) the Plaintiff's cross examination of these individuals will not be limited to the scope of Western's direct with respect to alleged accommodations provided to these individuals.

Therefore, with respect to these 14 late-disclosed witnesses, this portion of the Motion is denied.

### E.   Alleged Accommodations for Employees Who Were Not Qualified Individuals with Disabilities

Plaintiff seeks exclusion of evidence that Defendant provided accommodations, such as headsets and modified schedules, to employees because it "does not know and cannot establish" that any of the accommodated employees had disabilities.  (ECF No. 976 at 7.)  Without such a showing, Plaintiff argues this evidence has no logical or reasonable connection to this case because an "accommodation" within this context is a modification or adjustment to enable an employee with a disability to perform the essential functions of a position.  (*Id.*)

Defendant responds that the EEOC seeks to impose upon it, without any legal basis or authority, a burden "to tender an offer or proof that accommodations it made meet all the exacting elements required for a plaintiff to establish a prima facie case of disability discrimination." (ECF No. 997 at 4.)  Defendant points out that the one case Plaintiff does cite is an unpublished, individual-plaintiff case, in which the Tenth Circuit expressly limited the scope of its holding.  (*Id.* at 5 (citing *Mendelsohn v. Sprint/United Mgmt. Co.*, 402 F. App'x 337, 342 n.2 (10th Cir. 2010)).)

As Western argues, there is no legal basis in this circuit for the Court to impose upon Defendant the significant burden of establishing that all employees for which it allegedly provided an accommodation were qualified individuals with a disability within the meaning of the ADA.  As a consequence, this evidence will not be excluded.  In the Court's view Plaintiff's argument more appropriately goes to the weight the jury should

give such evidence, and not to its admissibility.  Moreover, the EEOC is free to develop this argument during cross examinations and in its closing argument.  Therefore, with respect to alleged past accommodations, this portion of the Motion is denied.

**F.    Extrinsic Evidence Related to Clinton Kallenbach's ErgoMed Appointment**

Al Kallenbach was terminated by Western after exhausting 12 weeks of leave following surgery.  (ECF No. 976 at 8, 8 n.9.)  He reapplied and was extended a job offer, but he had to complete ErgoMed's physical capacity tests before Western would rehire him.  (*Id.*)  Plaintiff asserts the ErgoMed tests were scheduled without consulting Kallenbach about his schedule, and he attempted to reschedule the tests because he needed to visit his uncle in the hospital.  (*Id.*)  Kallenbach testified that he missed the tests because he was in fact visiting his uncle, Leo Pauls.  (*See id.*; ECF No. 997 at 5.) Leo Pauls was deposed during discovery in this litigation, testifying that "he was not ill during the relevant period, [he] had no contact with Kallenbach for 25–30 years outside of a 2018 funeral, and he was 'certain' he had no contact with Kallenbach in 2009." (ECF No. 997 at 5.)  Plaintiff seeks preclusion of Pauls's testimony.  (ECF No. 976 at 8.)

The EEOC argues Defendant should not be permitted to introduce Pauls's testimony because it is irrelevant to the issues in the Phase I trial and is after-acquired evidence of wrongdoing under *McKennon*.  (*Id.* at 8. (quoting *Perkins v. Silver Mountain Sports Club & Spa*, 557 F.3d 1141, 1145 (10th Cir. 2009)) ("[I]nformation that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated [federal law] because it necessarily played no role in the actual decision.") (alterations in ECF No. 976).)  Plaintiff also argues Pauls's testimony is extrinsic evidence of specific conduct that is only admissible if "Kallenbach provides contrary testimony at trial."  (*Id.* (citing Fed. R. Evid. 608(b).)  In a cursory two

sentences, Plaintiff argues this testimony should also be excluded under Rule 403 because it would confuse the jury and waste time.  (*Id.* at 9.)

Defendant argues Pauls's testimony is a "specific contradiction of Kallenbach's own excuse for failing to complete required screenings, which he admits is [the] only reason why he was not reinstated."  (ECF No. 997 at 5.)  Defendant intends to offer this evidence to "show that a statement made on direct examination is false," rather than for the "sole purpose" of attacking Kallenbach's character for truthfulness.  (*Id.*)  Therefore, according to Defendant, Rule 608(b) does not apply.  (*Id.* (citing *Montoya v. Sheldon*, 2012 WL 5378288, at *4–5 (D.N.M. Oct. 29, 2012).)  Relying on unspecified "prior sections above," Defendant argues Pauls's testimony is relevant and admissible under Rule 403.  (*Id.*)

The Court agrees with Plaintiff that Pauls's testimony is after-acquired evidence of wrongdoing that is irrelevant to whether Western's decision to terminate Kallenbach rather than provide him with a reasonable accommodation is part of a pattern or practice of violating the ADA.  Even assuming the jury would credit Pauls's testimony over Kallenbach's and that Kallenbach's lie alone would justify Western in firing him, the only reason Kallenbach was even scheduled for the ErgoMed tests at all is because he was subjected to an adverse employment action the EEOC alleges was discriminatory. (ECF No. 976 at 7–8.)

Despite this, however, it would mislead the jury to permit Kallenbach to testify that he only missed the ErgoMed tests because he was visiting Pauls in the hospital and prevent Defendant from impeaching that testimony with Pauls's testimony.  Even Plaintiff agrees that Pauls's testimony is admissible under Rule 608(b) if "Kallenbach

provides contrary testimony at trial." (*Id.* at 8.)  And while evidence strongly suggesting that Kallenbach lied about visiting Pauls is prejudicial, it is hardly "unfair."  *See* Fed. R. Evid. 403.  As such, the Court rejects Plaintiff's Rule 403 argument.  Accordingly, while Defendant will not be permitted to independently introduce Pauls's testimony, should Kallenbach open the door by repeating this lie while testifying at trial, Defendant may use Pauls's testimony for impeachment purposes on cross examination.

Therefore, with respect to Pauls's testimony regarding whether Kallenbach visited him in the hospital, this portion of the Motion is granted in part and denied in part.

## G.    ErgoMed Statistics

Plaintiff argues Defendant should be precluded from offering the testimony of ErgoMed CEO, Max Haynes, that "he reviewed 1,063 files and found only five Western employees or applicants who failed its test." (ECF No. 976 at 9.)  Plaintiff argues this testimony is unhelpful and unfairly prejudicial and should, therefore, be precluded under Rules 701 and 403.  (*Id.*)  Haynes admitted that he could not review all relevant files because some were destroyed.  (*Id.*)  Plaintiff argues the incomplete records and Haynes's failure to compare the impact of the test on people with disabilities with the impact on a control group makes his testimony misleading.  (*Id.*)

Defendant argues that Haynes's testimony is not scientific, technical, or otherwise specialized—he "simply explained what his own business records reflected in terms of who passed the test and who did not." (ECF No. 997 at 5–6.)  According to Defendant, Haynes did not perform any calculations—he simply reported outcomes. (*Id.*)  As for Plaintiff's arguments that missing records or lack of a control group renders the testimony misleading or confusing, Defendant suggests this is appropriate for cross examination.  (*Id.* at 6.)

The Court agrees with Defendant, provided that Haynes does in fact strictly limit his testimony on this point to simply "report[ing] outcomes" based on the state of his business records.  It also agrees that cross examination is the appropriate way to address any gaps or incompleteness in ErgoMed's recordkeeping.

Plaintiff also argues Defendant should be precluded from presenting this evidence because "it never disclosed the 1,063 files," relying on Rules 26 and 37.  (ECF No. 976 at 9–10.)  As an initial matter, and as the Court noted in Section II.D, *supra*, this argument should more appropriately have been made in a motion for sanctions.

While Defendant does not address Plaintiff's argument under Rules 26 and 37, the Court finds the EEOC has not been prejudiced.  As discussed above, the Court will hold Defendant to its representation that Haynes will merely report on the state of his business records and offer no analysis—comparative or otherwise—of those records.  The EEOC's entire argument is predicated on the assertion that Haynes will testify as a lay expert, offering analysis or opinion with regard to these allegedly incomplete records.  (*See* ECF No. 976 at 10.)  Because Haynes cannot provide such testimony under this Order, sanctions are inappropriate.

Therefore, with respect to testimony of Max Haynes on the 1,063 ErgoMed records, this portion of the Motion is denied in part and denied in part as moot.

## H.  Safety of Snow Socks and State Traction Laws

Plaintiff argues Defendant should not be able to offer "[a]ny lay opinion testimony on the safety of snow socks or Auto Socks, either independently or as compared to tire chains."  (ECF No. 976 at 10–11.)  As Defendant points out, Plaintiff "fails to specifically identify or attach the testimony it challenges."  (ECF No. 997 at 6.)  Therefore, with respect to lay opinion testimony on snow socks or AutoSocks, this portion of the Motion

is denied.  *See* WJM Revised Practice Standards III.G.1.

EEOC also argues Western managers should be precluded from offering testimony on "what traction laws in various states require."  (ECF No. 976 at 11.)  EEOC explains that instructing the jury on the law "is the domain of the Court," and argues only expert witnesses "may refer to specific provisions of the law" because "knowledge of laws and regulations requires specialized knowledge."  (*Id.*)

Defendant responds that its managers will not testify in an expert capacity on what state chaining laws require.  (ECF No. 997 at 6.)  Instead, they will purportedly testify only as to their understanding or belief as to what those laws are.  (*Id.*)  This is testimony that concerns their mental state, rather than the actual requirements of the law, and does not require scientific, technical, or other specialized knowledge.  (*Id.*)

Given Defendant's representations about what testimony it will elicit, this portion of the Motion is denied as moot.  The Court, however, will strictly hold Defendant to its representations, and permit its managers to testify on this matter only if defense counsel first elicits from each such manager testimony that makes clear he or she is only stating their understanding of what the law requires, and not about what the law in fact is.

## I. Photographs of Accidents

Plaintiff argues photographs of accident scenes and wreckage operations that are unrelated to any particular AI should be precluded.  (ECF No. 976 at 11.)  In Plaintiff's view, these photographs are irrelevant because they "do not show workers performing tasks" and are unfairly prejudicial because "they will provoke an emotional response in the jury."  (*Id.* at 11–12.)  Plaintiff describes the photos as showing "Western trucks apparently towing vehicles and debris from grisly, snowy accidents, and clearing away charred remains of semitrailers."  (*Id.* at 12.)

15

Defendant argues the photographs are relevant because they refute the EEOC's claims about the "essential functions of [its] tow driver positions" and "makes incorrect assumptions as to the feasibility of certain assistive devices tow drivers could use to perform those functions."  (ECF No. 997 at 7.)  According to Defendant, the "towing photos reflect inclement weather, challenging grades, locations on busy highways where drivers must work quickly to clear roadways, and circumstances in which heavy debris is widely dispersed," demonstrating how physically demanding the positions are. (*Id.*)  Defendant disputes that the photographs are likely to provoke an emotional response from the jury because none of them depict injuries to people—only property— and many do not depict accidents at all.  (*Id.*)

The Court is persuaded by Defendant's argument that such photographs are relevant to visually demonstrate the essential functions of its tow driver positions, and that their probative value is not substantially outweighed by any unfair prejudice, as Rule 403 requires.  Therefore, with respect to the photographs of accident scenes, this portion of the Motion is denied.

**J.    Cost of Idle Trucks**

The EEOC argues Western CEO Gaines's anticipated testimony on the costs associated with allowing its trucks to sit idle is improper expert testimony that should be precluded.  (ECF No. 976 at 12.)  Plaintiff argues that lay witnesses may opine about basic mathematical calculations, but not the more complicated calculations involving two depreciating assets, costs of insurance and equipment, and an estimation of lost profits, that Gaines will offer.  (*Id.* (citing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011.)).)

Western argues a "manager's testimony of Western's business costs to sideline

a truck due to a driver's extended medical leave is a simple analysis based on business experience." (ECF No. 997 at 7.) According to Western, the calculation requires simple addition and subtraction and are so easy that Gaines was "doing it in [his] head." (*Id.* at 8 (alteration in original).) In Western's view, this calculation is "distinguishable" from the one in *James River*, which was based on an expert report prepared by someone else and was based on "more" than calculating depreciation. (*Id.*)

On this issue, the Court agrees with Plaintiff. As the Tenth Circuit explained, while a lay witness may testify to "elementary mathematical operations," a lay witness may not offer "opinions or inferences . . . [that] require any specialized knowledge [or] could [not] be reached by any ordinary person." *James River*, 658 F.3d at 1214. In *James River*, the Tenth Circuit found a lay witness's testimony was improper expert testimony because "calculating depreciation requires more than applying basic mathematics." *Id.* Moreover, "[t]echnical judgment is required in choosing among different types of depreciation." *Id.* While Defendant argues these calculations are permissible because they are enabled by Gaines's business experience, this fact actually cuts against Defendant's position. "[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id.* at 1215 (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011)).

Therefore, with respect to Gaines's anticipated testimony regarding costs associated with idle trucks, this portion of the Motion is granted.

## K.    Aggrieved Individuals' Opinions on Their Own Disability Status

Plaintiff argues Defendant "should not be allowed to ask about whether a person is "disabled," as it asked most of the aggrieved individuals in their depositions." (ECF

No. 976 at 13.)  Plaintiff argues that any admissions AIs made with respect to their

disability status are not binding on it because it is the party plaintiff and "the master of its

own case."  (*Id.* (citing *General Tele. Co. Nw., Inc. v. EEOC*, 466 U.S. 318, 331

(1980)).)  Plaintiff also argues that because "disability" is a specialized legal term, "it is

decidedly improper for Western to ask any witness to opine about being 'disabled,'

using this complex legal term that has a much more precise definition than the word in

common vernacular."  (*Id.* at 13–14. (citing Fed. R. Evid. 704).)

 Defendant argues AIs' own impressions about their disability status is "relevant

for various purposes."  (ECF No. 997 at 8.)  In Defendant's view, "AIs' admissions that

they are not disabled are highly relevant to the issues in this case—including that [the]

EEOC has failed to identify AIs to support its ADA theories—and the jury should be

permitted to consider them."  (*Id.*)  Defendant also argues that Rule 704 only applies to

expert testimony.  (*Id.*)  Alternatively, if it is precluded from asking AIs about their

disability status, Defendant argues Plaintiff should not be permitted to ask AIs about the

scope of their impairments.  (*Id.* at 9.)

 The Court is convinced by Plaintiff's argument.  Defendant cites no legal

authority for its assertion that Rule 704 applies only to expert witnesses.  (*Id.* at 8.)

While it claims in a footnote that the cases cited by Plaintiff "do not apply" because they

all concern expert witnesses, this bald assertion is easily refuted.  (*Id.* at 8 n.10.)  A two-

minute Westlaw search by the Court yielded *United States v. Goodman*, a published

Tenth Circuit case discussing the application of Rules 704(a) and 704(b) to lay opinion

testimony.  633 F.3d 963, 967–69 (10th Cir. 2011).  In addition, the first sentence of the

advisory committee notes to Rule 704 also makes Defendant's legal error readily

apparent.  Fed. R. Evid. 704 advisory committee's note on proposed rules ("The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier fact.")

As the Court has previously explained, opinions that are overly reliant on legal terms of art are not helpful to the jury because they usurp its factfinding role.  (ECF No. 977 at 19–20.)  What a disability is under the ADA, and whether a person has a disability as defined by that Act, are clearly specialized legal questions, and the testimony Western seeks to introduce is comprised entirely of non-expert AIs' evaluation or use of that term.  Relevant here is also the fact that individuals covered by the ADA, for cultural or "work ethic," or other reasons, may subjectively consider themselves to not be disabled, when in fact as legal matter under the ADA they most certainly are.  Finally, and contrary to Western's argument, an AI's individual subjective opinion about their own disability status is not the substantial equivalent to testimony about the scope of their physical or mental limitations.  While disability status is a specialized legal question, the scope and duration, for example, of an AI's impairments are facts that in turn form the basis for the legal determination of his or her disability status.

Therefore, with respect to AIs' testimony with regarding their individual disability status, this portion of the Motion is granted.

## L.    Criminal Convictions More than Ten Years Old

Plaintiff argues Defendant should be precluded from entering evidence relating to the criminal convictions of five AIs,[1] all of which are over ten years old.  (ECF No. 976 at

---

[1] The EEOC notes that it is unclear whether AI McCafferty was actually convicted of a crime.  In his deposition, he only recalled that he had been arrested and spent six days in jail.

14.)  Because these convictions are so old, Plaintiff argues there is a presumption of inadmissibility under Rule 609(b)(1).  (*Id.* at 14–15.)  This presumption can only be overcome if the evidence's probative value, supported by specific facts and circumstances, substantially outweighs the prejudicial effect.[2]  Fed. R. Evid. 609(b)(1).

For AIs Bahmer, Ingland, Jarvis, and McCafferty, "Western identifies only one 'specific fact and circumstance'—that the convictions . . . were omitted from the witnesses' employment applications with Western."  (ECF No. 976 at 15.)  Plaintiff argues that this is not enough to overcome Rule 609(b)'s presumption of exclusion, particularly because each conviction was of a misdemeanor and none were for crimes of dishonesty.  (*Id.* at 14–15.)  Only AI Morin's prior conviction was for a felony—a June 2001 charge of unlawful possession of marijuana with intent to distribute.  (*Id.*)  With respect to Morin's conviction, Plaintiff argues Defendant "provides no 'specific facts or circumstances' that indicate Morin's conviction is probative of any fact at issue in the Phase I trial."  (*Id.* at 15.)

Additionally, Plaintiff argues that because Defendant only learned of the convictions during discovery, evidence of them is after-acquired evidence of wrongdoing under *McKennon*.  (*Id.*)

Defendant responds that each AI's failure to disclose requested criminal history information on their applications, and the evidence of their criminal histories, is admissible because it "goes to untruthfulness in the application process."  (ECF No.

_____

(ECF No. 976 at 14.)  For the purposes of this Order, the Court treats this incident as if it had resulted in a conviction.

[2] The Rule also requires the proponent of the evidence to give written notice of its intent to introduce evidence of the convictions.  Fed. R. Evid. 609(b)(2).  There is no dispute that Defendant gave Plaintiff appropriate notice.  (*See* ECF No. 976 at 14.)

997.)  With respect to Morin, it emphasizes that his criminal conviction "involved use of a commercial motor vehicle to distribute marijuana." (*Id.*)  For these reasons, it argues the probative value to determinations of these witnesses' credibility and qualifications for the positions substantially outweigh any prejudicial effect.  (*Id.*)

The Court disagrees and easily adopts Plaintiff's position on this question. Assuming that this evidence is indeed only for the purpose of showing these AIs lied on their applications, proving that fact is irrelevant to the Phase I trial.  Further assuming that lying on an application is alone cause for termination, proving these AIs lied would merely impact damages, which the EEOC correctly points out is not at issue in Phase I of this action.  *See McKennon*, 513 U.S. 352, 362–63.

> It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds. . . .  An absolute rule barring any recovery of backpay, however, would undermine the [ADA's] objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from [disability] discrimination.

*Id.*  Defendant's other apparent purpose for introducing this evidence—"casting doubt on the veracity of [these AIs'] other representations to Western"—makes it perfectly clear that Rule 609 does in fact apply.  (ECF No. 997 at 9.)  No sleight of hand can obscure the reality that Western intends to use this evidence to convince the jury that because these AIs lied to Western before, they lied or may have lied to Western again, or may now be lying to the jury, in conformity with their character for untruthfulness. *See* Fed. R. Evid. 609(a).

Therefore, with respect to evidence of AIs' convictions that are more than ten years old, this portion of the Motion is granted.

**M.**   **Evidence of Aggrieved Individuals' Marital Problems**

Plaintiff argues "evidence about any of the aggrieved individuals' marriages or marital problems should be excluded as irrelevant, unfairly prejudicial, misleading, and a waste of time." (ECF No. 976 at 16 (citing Fed. R. Evid. 401, 402, 403).)  The basis for this argument is that Western "extensively questioned" AI Edwards about his marriage during his deposition, and "any evidence related to marital problems is irrelevant[,] and evidence related to past marriages and marital difficulties is generally inadmissible." (*Id.*)

Defendant argues that Edwards's testimony "does not pertain to marriage or marital problems." (ECF No. 997 at 9.)  Rather, "Edwards misrepresented to Western that his girlfriend was his wife to obtain insurance benefits." (*Id.*)  Defendant argues that Plaintiff's request to preclude all evidence of AIs' marriages and marital problems is too vague and broad to be appropriate for a motion *in limine* (especially given that some AIs' spouses are on Plaintiff's witness list).  (*Id.*)

The Court agrees with Defendant that the EEOC's request is too vague and broad to be considered at this stage.  *See* WJM Revised Practice Standards III.G.1. Accordingly, the Court will determine the admissibility of such evidence, if offered, during trial when it has the benefit of making such a ruling in the context of all the other evidence that has been admitted.  Nonetheless, the parties are advised that the Court will require a strong showing of relevance and lack of prejudice with regard to such marital evidence before it allows this category of testimony into evidence.

Therefore, with respect to evidence of AIs' marriages or marital problems, this portion of the Motion is denied.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS EEOC's Motion *in Limine* to Exclude Western's Proposed Testimony and/or Exhibits (ECF No. 976) is GRANTED IN PART, DENIED IN PART, AND DENIED IN PART AS MOOT, to the extent set forth above.

Dated this 6th day of January, 2023.

BY THE COURT:

_____
William J. Martinez
United States District Judge