**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1727-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY,

    Defendant.

*Final set of
Jury Instructions
Read to Jury
27 Jan 2023
13:25*

---

## FINAL JURY INSTRUCTIONS

---

### PART I: GENERAL INSTRUCTIONS & EVIDENTIARY CONSIDERATIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law.  You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every civil case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the

jury room, so you need not take notes.[1]

---
[1] Tenth Circuit Criminal Pattern Jury Instructions § 1.03.

## **JURORS' DUTIES**

In reaching your decision as to the facts, it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences.  However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

You are not to be concerned with the wisdom of any rule of law stated by me.  It would be a violation of your oath to base your verdict on anything other than the law as presented in these instructions and the facts as you find them.  Counsel may properly refer to some of the governing rules of law in their arguments.  If there is any difference between the law as stated by counsel or in the exhibits, and that stated by me in these instructions, my instructions prevail.  The law contained in these instructions is the law that must govern your deliberations in this case.

Finally, it is your duty to base your verdict solely upon the evidence, without prejudice or sympathy.  That was the promise you made and the oath you took.[2]

---

[2] Tenth Circuit Criminal Pattern Jury Instructions § 1.04.

## EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I ordered you to disregard things that you heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.[3]

---

[3] Tenth Circuit Criminal Pattern Jury Instructions § 1.06.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.[4]

---

[4] Tenth Circuit Criminal Pattern Jury Instructions § 1.07.

## **PREPONDERANCE OF THE EVIDENCE**

At the beginning of this case, I talked to you about the difference between a criminal and a civil case with respect to the burden of proof.  At least some of you may have heard of the term "proof beyond a reasonable doubt."  Proof beyond a reasonable doubt is a stricter standard that applies in criminal cases.  It does not generally apply in civil cases such as this.  You should, therefore, put it out of your minds.[5]

In a civil case, such as this one, the burden of proof is preponderance of the evidence.  To prove something by a "preponderance of the evidence" means to prove that it is more probably true than not.[6]  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[7]

---

[5] 3 Fed. Jury Prac. & Instr. § 104.01 (5th ed.).

[6] CJI-Civ. 3:1 (CLE 2011).

[7] 3 Fed. Jury Prac. & Instr. § 104.01 (5th ed.).

## STIPULATIONS

You have heard me say that the parties have stipulated to certain facts.  This agreement makes the presentation of any evidence to prove this fact unnecessary.  The agreement means that you must accept these facts as true:[8]

In this case, the parties have stipulated to the following facts:

1. The Equal Employment Opportunity Commission ("EEOC") is an agency of the United States of America.

2. Western Distributing Company ("Western") is headquartered in Denver, Colorado.

3. Western's Reefer division specializes in providing over-the-road and local transportation of refrigerated commodities, though not all loads transported are refrigerated.

4. Reefer employs Department of Transportation ("DOT") certified drivers who can be either Over-the-Road ("OTR") (who drive longer distances and typically sleep in their trucks) or Local/Regional (who typically come home at the end of the day), but the physical requirements are the same for both jobs.

5. Local drivers for Western drive DOT-regulated vehicles on routes within a 100-mile radius of Denver.

6. Western's United States Armored Company Division is called USAC. USAC employs DOT-certified drivers who work in two-person teams.

7. Western's Towing division employs drivers of heavy wreckers, rollback (flatbed) trucks, and other vehicles to handle towing, hauling, and recovery tasks.

---

[8] Colorado Jury Instructions—Civil § 1:13.

8. Western employs yard hostlers to wash, sanitize, inspect, inventory, and fuel trailers, as well as repairing chains, and handling yard maintenance tasks.

9. Western also employs dispatchers. A dispatcher is an office position that, among other things, coordinates with Western drivers and customers about deliveries.

10. Until approximately 2018, Western had a small Auto Transport division, which employed DOT-certified drivers to load, transport, unload, and deliver vehicles using an enclosed commercial truck.

11. Western used to have a Beverage Division, which closed in 2010.

12. Since at least 2008, Western has used Aviation & Occupational Medicine (Aviation) to conduct DOT certification exams and workers' compensation evaluations of Western's drivers.

13. In 2007, Western engaged ErgoMed Work Systems ("ErgoMed") to conduct post-offer and fitness-for-duty physical tests for various Western driving positions.

14. Pinnacol Assurance is Western's worker's compensation carrier.

15. When the parties reference an "OTR truck", they are referring to both the tractor and trailer.

16. The "fifth wheel" is what connects and locks a truck's tractor to its trailer.

17. Jennifer Maddox was employed as Western's Director of Human Resources from March 2008 to December 2017.

18. During Jennifer Maddox's employment with Western, she was also known as Jennifer Prochaska.

19. Between 2008 and 2017, Western had between 285 and 441 employees.

20. Lakesha McLemore was employed as Western's Director of Human

Resources until March 2008.

21. Stephanie Dechant was employed as Western's Director of Human Resources beginning in 2017 to mid-2018.

22. Vieri Gaines is the Chief Executive Officer (CEO) of Western.

23. Martin (Marty) Garcia is the Vice President of Western Distributing Transportation Corporation. He has been in this role since October 2018.

24. Martin (Marty) Rau is the General Manager of Western's Reefer division. He has been in this role since July 2017.

25. Michael Padilla has been employed as Western's Safety Director since March 2014.

26. Mark Respass was employed as Western's Safety Director from August 2010 until March 2014.[9]

---

[9] Revised Proposed Jury Instruction Stipulations (ECF No. 1041) (adopted).

## JUROR'S FINDINGS—PROBABILITIES

Any finding of fact you make must be based on probabilities, not possibilities.

You should not guess or speculate about a fact.[10]

---

[10] CJI - Civil 3.4 (CLE ed. 2005).

## CREDIBILITY OF WITNESSES

You are not required to accept all of the evidence as true or accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.

You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions:

- Did the witness impress you as honest?
- Did the witness have any particular reason not to tell the truth?
- Did the witness have a personal interest in the outcome in this case?
- Did the witness have any relationship with either party?
- Did the witness seem to have a good memory?
- Did the witness clearly see or hear the things about which he/she testified?
- Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from the testimony of other witnesses?

When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

In reaching a conclusion on particular point, or ultimately in reaching a verdict in

11

this case, do not make any decisions simply because there were more witnesses on

one side than on the other.[11]

---

[11] Tenth Circuit Criminal Pattern Jury Instructions § 1.08 (modified).

## **ORAL STATEMENTS OR ADMISSIONS**

Evidence as to any oral statements or admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care.  The person making the alleged statement or admission may not have expressed clearly the meaning intended, or the witness testifying to an alleged admission may have misunderstood or may have misquoted what was actually said.

However, when an oral statement or admission made outside of court is proved by reliable evidence, that statement or admission may be treated as trustworthy and should be considered along with all other evidence in the case.[12]

---

[12] 3 Fed. Jury Prac. & Instr. § 104.53 (5th ed.).

## **USE OF DEPOSITIONS**

During the trial, certain testimony has been presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason is not present to testify from the witness stand, may be presented in writing under oath.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.[13]

---

[13] 3 Fed. Jury Prac. & Instr. § 105.02 (5th ed.).

## **EXPERT WITNESS**

In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue.  A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

During the trial you heard the testimony of Cathy Schelly, Dr. Steven Allison, Dr. Robert Swotinsky, Dr. Natalie Hartenbaum, Jimmy Sill, and Margot Burns, who were designated as expert witnesses.  You are not required to accept their opinions.  You should consider opinion testimony just as you consider other testimony in this trial.  Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.[14]

---

[14] Tenth Circuit Pattern Jury Instructions—Criminal  § 1.17 (modified).

## **EXPERT TESTIMONY ON LEGAL STANDARDS AND CONCLUSIONS**

Expert witnesses are not allowed to opine about legal standards or draw legal conclusions such as to whether an individual has a "disability" under the Americans with Disabilities Act ("ADA") and whether an accommodation is "reasonable" under the ADA. To the extent you heard any expert witness reach such conclusions, you should disregard them.  It is your role as the jury to make these determinations.[15]

---

[15] Adapted from *Shostrom v. Ethicon, Inc.*, No. 20-cv-1933 (D. Colo.), ECF No. 237.

## **EQUAL STANDING**

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation as well as a government agency are entitled to the same fair trial as a natural individual.  All persons, including individuals, Western Distributing Company, the EEOC, and other corporations or organizations stand equal before the law, and are to be treated as equals, no better and no worse.[16]

---

[16] *E.E.O.C. v. Western Trading Company*, 2013 WL 1285825 (D. Colo. Mar. 7, 2013) (Jury Instructions in ADA Case), ECF No. 985-1; Stipulated Jury Instruction 2 (ECF No. 987 at 2) (modified).

## ROLE OF THE EEOC IN THIS CASE

The EEOC is the plaintiff in this case.  It is an agency of the United States of America that has the duty of enforcing the ADA.  When the EEOC learns of an allegation of disability discrimination in the workplace, it has the responsibility to investigate the claim of discrimination.  When it is allegedly in the public interest, the EEOC may enforce the ADA by filing a lawsuit against the employer.  This is the procedure the EEOC followed in this case, and this is why the EEOC is the plaintiff in this litigation.[17]

---

[17] Adapted from *E.E.O.C. v. Western Trading Company*, 2013 WL 1285825 (D. Colo. March 7, 2013) (Jury Instructions in ADA Case), ECF No. 985-1; Plaintiff's Disputed Jury Instruction No. 1 (modified); Defendant's Disputed Jury Instruction A (modified).

## **CORPORATE DEFENDANT**

A corporation may act only through natural persons as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.[18]

---

[18] 3 Fed. Jury Prac. & Instr. § 103.31 (5th ed.); Plaintiff's Disputed Jury Instruction No. 4 (adopted).

## ALL AVAILABLE WITNESSES NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.[19]

---

[19] 3 Fed. Jury Prac. & Instr. § 105.11 (5th ed.).

## **NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.[20]

---

[20] 3 Fed. Jury Prac. & Instr. § 104.54 (5th ed.).

## **LAWYERS' OBJECTIONS**

The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.

Do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.[21]

---

[21] Sixth Circuit Criminal Pattern Jury Instructions § 1.09.

## DISABILITY – DEFINED

Under the ADA, the term "disability" means, with respect to an individual:

1.      a physical or mental impairment that substantially limits one or more major life activities of such individual;

2.      a record of such an impairment; or

3.      being regarded as having such an impairment.

"Physical or mental impairment" means:

1.      Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

2.      Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

This definition of what a disability is under the ADA should be applied broadly in favor of expansive coverage. As a result, the determination of whether a particular impairment is a disability under this definition should not require extensive analysis.[22]

---

[22] 42 U.S.C. § 12102(1)(A)–(C); 29 C.F.R. § 1630.2(h); Plaintiff's Disputed Jury Instruction No. 10 (modified); Defendant's Disputed Jury Instruction B (modified).

## SUBSTANTIALLY LIMITS – DEFINED

An impairment is a disability if it substantially limits a major life activity as compared to most people in the general population. An impairment does not have to prevent or severely restrict a major life activity to be substantially limiting. Nonetheless, not every impairment will constitute a disability.

Generally, medical evidence is not necessary to establish a disability. An individual's testimony about their injury or illness and how it affects their life, may be sufficient to establish the person has a disability.

The term substantially limits should be also be applied broadly in favor of expansive coverage.[23]

---

[23] Plaintiff's Disputed Jury Instruction 10 (modified); Defendant's Disputed Jury Instruction C (adapted from O'Malley, Grenig, & Lee, 3C Fed. Jury Prac. & Instr. §§ 172: 34 (Substantially limited) (6th ed.) (reject).

## MAJOR LIFE ACTIVITIES - DEFINED

The ADA states that major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

A major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

Whether an activity is a "major life activity" is not determined by reference to whether it is of "central importance to daily life."

The inability to perform a single job does not constitute a substantial limitation in the major life activity of working.[24]

---

[24] 42 U.S.C. § 12102(2) (definition of major life activities); 29 C.F.R. § 1630.2(i)(2) (definition of major life activities); *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1092 (10th Cir. 2007) (inability to perform single job not a substantial limitation in the major life activity of working); Plaintiff's Disputed Jury Instruction No. 10 (modified); Defendant's Disputed Jury Instruction D (modified).

## **"RECORD OF" AND "REGARDED AS" – DEFINED**

An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.  Stated slightly differently, an individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population or was misclassified as having had such an impairment.

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.  Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment.[25]

---

[25] 42 U.S.C. § 12102(3)(A); 29 C.F.R. §§ 1630.2(l), (k); Plaintiff's Disputed Jury Instruction No. 11 (modified); Defendant's Disputed Jury Instruction E (rejected).

## QUALIFIED INDIVIDUAL WITH A DISABILITY – DEFINED

The term "qualified individual with a disability" means an individual with a disability who can perform the essential functions of the employment position that such individual holds or desires, with or without reasonable accommodation.[26]

---

[26] 42 U.S.C. § 12111(8) (definition of "qualified individual with a disability"); Adapted from *EEOC v. Western Trading Co.*, (ECF No. 985-1 at 10); Plaintiff's Disputed Jury Instruction No. 13 (modified); Defendant's Disputed Jury Instruction F (rejected).

## **COMPLIANCE WITH FEDERAL SAFETY RULES AND REGULATIONS**

For all positions that require the operation of a commercial vehicle as an essential function of the position, Western must comply with all DOT and Federal Motor Carrier Safety Administration rules and regulations, including that drivers be certified. The DOT requires that a person undergo a medical evaluation to be certified to drive a commercial vehicle.  The regulations include a medical examination and DOT recertification for any driver whose ability to perform his normal duties has been impaired by a physical or mental injury or disease.[27]

---

[27] 49 C.F.R. § 391.41(a); 49 C.F.R. § 391.45(g); Plaintiff's Disputed Jury Instruction Nos. 14 &17 (modified); Plaintiff's Disputed Jury Instruction Nos. 15 & 16 (rejected); Defendant's Disputed Jury Instruction H (modified).

## ESSENTIAL FUNCTIONS – DEFINED

The term "essential functions" means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position; however, it may include emergency functions, provided that the need to perform in an emergency is a realistic component of the job.

A job function may be considered essential for any of several reasons, including but not limited to the following:

1. The function may be essential because the reason the position exists is to perform that function;

2. The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

3. The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

Evidence of whether a particular function is essential includes, but is not limited to:

1. The employer's judgment as to which functions are essential;

2. Written job descriptions prepared before advertising or interviewing applicants for the job;

3. The amount of time spent on the job performing the function;

4. The consequences of not requiring the incumbent to perform the function;

5. The work experience of past incumbents in the job; and/or

6. The current work experience of incumbents in similar jobs.[28]

---

[28] 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n); *Wilkerson v. Shinki*, 606 F.3d 1256, 1264–65 (10th Cir. 2010); Defendant's Disputed Instruction G (modified); Plaintiff's Disputed Instruction No. 19 (rejected).

## QUALIFICATION STANDARDS – DEFINED

Qualification standards means the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired.[29]

---

[29] 29 C.F.R. § 1630.2(q); Plaintiff's Disputed Jury Instruction No. 18 (modified).

## REASONABLE ACCOMMODATION – DEFINED

The term reasonable accommodation means:

1. Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

2. Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

3. Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

Reasonable accommodation may include but is not limited to:

1. Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

2. Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.[30]

---

[30] 42 U.S.C. § 12111(9); 29 C.F.R. 1630.2(o); Plaintiff's Disputed Instruction No. 20 (modified); Defendant's Disputed Instruction I (modified).

## <u>INTERACTIVE PROCESS TO DETERMINE REASONABLE ACCOMMODATION</u>

Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee, or, if necessary, with his medical provider, whether there is a reasonable accommodation that will permit him to perform the job.  To this end, as part of the interactive process, the employer may make medical inquiries into the ability of an employee to perform job-related functions.  While under no obligation to do so, if there is a need to determine whether an employee is able to perform the essential job functions, an employer may require the employee to undergo a fitness-for-duty exam, by a doctor of the employer's choice, at the employer's expense, to evaluate the employee 's ability to perform job-related functions.  Both the employer and the employee must cooperate in this interactive process in good faith.[31]

---

[31] *E.E.O.C. v. Western Trading Co.*, 2013 WL 1285825 (D. Colo. March 7, 2013) (Jury Instructions in ADA Case), ECF No. 985-1; Plaintiff's Disputed Instruction No. 22 (rejected); Defendant's Disputed Instruction J (adopted).

## **PROOF OF DISCRIMINATION**

The EEOC may prove discriminatory animus through either direct or circumstantial evidence.

If believed, direct evidence proves the existence of a fact in issue without inference or presumption.  Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons.[32]

Evidence that requires a factfinder to infer the current existence of a discriminatory policy and motive, is circumstantial, not direct, evidence.[33]

---

[32] *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021); *West v. New Mexico Tax'n & Revenue Dep't*, 757 F. Supp. 2d 1065, 1096 (D.N.M. 2010) (citations omitted).

[33] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1189 n.6 (10th Cir. 2007).

## **PART II: ELEMENTS OF CAUSE OF ACTION**

That concludes the part of my instructions explaining your duties and the general rules that apply in every civil case.  Now I will explain the elements of the claims at issue here—(1) Claim 1: pattern or practice of discrimination by failing to accommodate qualified individuals with disabilities; (2) Claim 2: pattern or practice of discrimination by denying employment opportunities to qualified individuals with disabilities; and (3) Claim 3: disparate impact.

## CLAIM 1: PATTERN OR PRACTICE OF DISCRIMINATION – ELEMENTS

In Claim 1, the EEOC alleges Western has a pattern or practice of failing to accommodate qualified individuals with disabilities.  To succeed on this claim, the EEOC must prove by a preponderance of the evidence that:

1.  Western's policies or practices were discriminatory; and

2.  The policies or practices were Western's standard operating procedure rather than something isolated, accidental, or sporadic.

If you find the EEOC has not proved either element, you must find for Western on Claim 1.  If you find the EEOC has proved both elements of this claim, then you must consider Western's Undue Hardship Defense.  Please review the jury instruction on the Undue Hardship Defense before answering any questions on the Verdict Form.[34]

---

[34] Fed. Civ. Jury Inst. 7th Cir. 3.03 (2021) (Pattern or Practice) (modified); Defendant's Disputed Jury Instruction K (modified); Plaintiff's Disputed Instruction Nos. 25–27 (modified).

### CLAIM 2: PATTERN OR PRACTICE OF DISCRIMINATION – ELEMENTS

In Claim 2, the EEOC alleges Western has a pattern or practice of denying employment opportunities to qualified individuals with disabilities.  To succeed on this claim, the EEOC must prove by a preponderance of the evidence that:

1.  Western's policies or practices were discriminatory; and

2.  The policies or practices were Western's standard operating procedure rather than something isolated, accidental, or sporadic.

If you find the EEOC has not proved either element, you must find for Western on Claim 2.  If you find the EEOC has proved both elements of this claim, then you must consider Western's Undue Hardship Defense.  Please review the jury instruction on the Undue Hardship Defense before answering any questions on the Verdict Form.[35]

---

[35] Fed. Civ. Jury Inst. 7th Cir. 3.03 (2021) (Pattern or Practice) (modified); Defendant's Disputed Jury Instruction K (modified); Plaintiff's Disputed Instruction Nos. 25–27 (modified).

## UNDUE HARDSHIP DEFENSE

Western has asserted the affirmative defense of "undue hardship."  Under the ADA, Western does not need to accommodate an employee if it would cause an "undue hardship" to its business.  "Undue hardship" means an action requiring significant difficulty or expense.  Western must prove by a preponderance of the evidence that the proposed accommodation would be an "undue hardship."

In determining whether an accommodation would impose an undue hardship on Western, factors to be considered include:

1.  The nature and cost of the accommodation;

2.  Western's overall financial resources.  This might include the size of its business, the number of people it employs, and the types of facilities it runs;

3.  The financial resources of the facility where the accommodation would be made.  This might include the number of people who work there and the impact that the accommodation would have on its operations and costs; and

4.  The way that Western conducts its operations.  This might include its workforce structure; the location of its facility where the accommodation would be made compared to Western's other facilities; and the relationship between these facilities.

If you find Western has failed to prove this defense by a preponderance of the evidence, your verdict must be for the EEOC on Claims 1 and/or 2, as applicable.  If you find Western has proved this defense by a preponderance of the evidence, your verdict

must be for Western on Claims 1 and/or 2, as applicable.[36]

---

[36] Seventh Circuit Civil Pattern Jury Instructions 4.09; 42 U.S.C. § 12111(10); Plaintiff's Disputed Jury Instruction No. 30 (modified); Defendant's Disputed Jury Instruction N (modified).

## CLAIM 3: DISPARATE IMPACT – ELEMENTS

In this case, the EEOC claims that Western, by implementing certain standards, criteria, or methods of administration, has caused an adverse disproportionate impact on individuals with a disability.  Conduct that is neutral on its face but results in individuals with a disability being treated more harshly as a result of the standard, criteria, or method of administration is known in the law as "disparate impact."  To find disparate impact, you do not need to consider whether Western intended to discriminate against qualified individuals with a disability.  You must focus on the consequences or the results of specific employment policies or practices. To recover on Claim 3, the EEOC must prove the following by a preponderance of the evidence:

1. Any of the thirteen standards, criteria, or methods of administration listed in the Challenged Standards instruction caused Western to fail to hire or terminate one or more individuals with a disability because of their disability;

2. Any of the thirteen standards, criteria, or methods of administration listed in the Challenged Standards instruction had a disproportionate adverse impact on qualified individuals with a disability as compared to individuals without a disability.

It is not enough for the EEOC to prove that individuals with a disability have suffered an adverse impact.  Nor is it enough to allege that some generalized policy is responsible for a disparate impact.  Instead, the EEOC must prove that a specific employment practice or practices caused the disproportionate adverse impact on individuals with a disability.

If you find the EEOC has failed to prove either of these two elements for any of the thirteen standards, criteria, or methods of administration, your deliberations with

40

respect to those standards, criteria, or methods of administration are at an end.  With

respect to those standards, criteria, or methods of administration that you find the

EEOC has proved both of these elements, you must consider Western's defense of

business necessity.  Please review the jury instruction on Business Necessity Defense

before answering any questions on the Verdict Form.[37]

---

[37] Model Civ. Jury Instr. 3d Cir. 8.1.4 (2019); Plaintiff's Disputed Instruction Nos. 31, 33, 36, 37 (modified); Defendant's Disputed Instruction Q (modified).

## **CHALLENGED STANDARDS, CRITERIA, AND METHODS OF ADMINISTRATION**

The EEOC asserts the following standards or criteria have, or are administered in a way that have, a disparate impact on individuals with disabilities in violation of the ADA:

1.  The alleged "full-duty" policy;

2.  The alleged "12-week" policy;

3.  Requiring that OTR, USAC, Local drivers, and Yard Hostlers be able to lift 50 pounds of weight;

4.  Requiring that OTR, USAC, Local drivers, and Yard Hostlers be able to lift 50 pounds of weight and carry it 75 feet;

5.  Requiring that OTR, USAC, Local drivers, and Yard Hostlers be able to lift 50 pounds from the ground to their shoulder;

6.  Requiring that OTR, USAC, Local drivers, and Yard Hostlers be able to static push and pull 130 pounds of weight;

7.  Requiring that OTR, USAC, Local drivers, and Yard Hostlers be able to static push and pull 130 pounds of weight at 58 inches above the ground;

8.  Requiring tow drivers be able to push 76 pounds of weight;

9.  Requiring tow drivers be able to push 76 pounds of weight for 100 feet;

10. Requiring tow drivers be able to lift 60 pounds of weight;

11. Requiring tow drivers be able to lift 60 pounds of weight to 45 inches from the ground or to the waist;

12. Requiring tow drivers be able to lift 132 pounds; and

13. Requiring tow drivers be able to lift 132 pounds 40 inches off the ground

and carry it 30 feet.

Western denies this allegation.[38]

---

[38] Plaintiff's Disputed Instruction No. 32 (modified).

## BUSINESS NECESSITY DEFENSE

Western contends that the thirteen standards, criteria, or methods of administration listed in the Challenged Standards, Criteria, or Methods of Administration instruction were a business necessity.

To prevail on this defense, Western has the burden of proving each of the following elements by a preponderance of the evidence:

1. The thirteen standards, criteria, or methods of administration listed in the Challenged Standards, Criteria, or Methods of Administration instruction have a clear relationship or connection to the job(s) or position(s) in question; and

2. The thirteen standards, criteria, or methods of administration listed in the Challenged Standards, Criteria, or Methods of Administration instruction substantially promotes safe, efficient, or successful job performance.

If you find Western has failed to prove either element of this defense by a preponderance of the evidence as to whichever of the standards, criteria, or methods of administration you have found in favor of the EEOC, your verdict must be for the EEOC on Claim 3. If you find Western has proved both elements of this defense by a preponderance of the evidence on any of the standards, criteria, or methods of administration that you have found in favor of the EEOC, you must next consider whether there are or were suitable alternative standards, criteria, or methods of administration.[39]

---

[39] O'Malley, Grenig & Lee, 3C Fed. Jury Prac. & Instr. § 172:63 (Business Necessity); Plaintiff's Disputed Instruction No. 34 (modified); Defendant's Disputed Instruction R (modified).

## SUITABLE ALTERNATIVE – DEFINED

A suitable alternative is one that would have also served Western's interest in safe, efficient and successful job performance.

If you find the EEOC has proved by a preponderance of the evidence that Western:

- had a suitable alternative that would have resulted in a lesser adverse impact on qualified individuals with a disability; and

- Western refused to adopt it,

then your verdict on Claim 3 must be for the EEOC.

However, if you find the EEOC has not proved by a preponderance of the evidence that Western:

- had a suitable alternative that would have resulted in a lesser adverse impact on qualified individuals with a disability; and

- Western refused to adopt it,

then your verdict on Claim 3 must be for Western.[40]

---

[40] O'Malley, Grenig & Lee, 3C Fed. Jury Prac. & Instr. § 172:63 (Business Necessity); Plaintiff's Disputed Instruction No. 34 (modified); Defendant's Disputed Instruction R (modified).

## **BUSINESS JUDGMENT**

You may not return a verdict for the EEOC solely because you might disagree with Western's employment decisions or actions, or believe particular decisions or actions to be harsh or unreasonable.[41]

---

[41] Defendant's Disputed Jury Instruction L (adapted from O'Malley, Grenig, & Lee, 3C Fed. Jury Prac. & Instr. § 172:64 (Business Judgment) (rejected); Plaintiff's Disputed Jury Instruction No. 38 (adopted).

## PUNITIVE DAMAGES

The EEOC seeks an award of punitive damages against Western. The purpose of an award of punitive damages is first, to punish a wrongdoer, and second, to deter Western and other companies from like conduct in the future.

Under the ADA, punitive damages may be awarded on Claim 1 or Claim 2.  In addition to proving one of those claims, the EEOC must also prove by a preponderance of the evidence that Western engaged in the pattern or practice of discrimination with malice or with reckless indifference to the federally protected rights of individuals with disabilities.  The question has two parts.

- First, whether the defendant acted with "malice" – meaning a bad motive, ill will, or spite towards individuals with disabilities; or

- Second, whether the defendant knew or showed reckless indifference for whether its conduct was prohibited by the ADA – meaning the defendant knew or should have known that its actions might violate the law.

An award of punitive damages does not require showing egregious or outrageous discrimination.

If you find that Western acted with malice or reckless indifference for the federally protected rights of individuals with disabilities, then you may, but are not required to, award punitive damages if you find it is appropriate to punish Western, or to deter Western and others from like conduct in the future.

If you find that punitive damages should be assessed against Western, you may consider the following factors in fixing the amount of such damages: (1) Western's financial resources; (2) the impact or severity of Western's conduct; (3) the amount of

time Western conducted itself in this manner; ~~(4) the amount of compensatory~~ *(4)* ~~damages;~~ (5) the potential profits Defendant may have made from Defendant's conduct; *and* (5) ~~(6)~~ the attitudes and actions of Defendant's top management.[42]

---

[42] Plaintiff's Disputed Instruction No. 39 (modified); Defendant's Disputed Instruction P (rejected).

## **GOOD FAITH EFFORTS AT REASONABLE ACCOMMODATION**

Western asserts it has made good faith efforts to reasonably accommodate individuals with disabilities.

You cannot assess any punitive damages against Western on Claim 1 if Western has proved by a preponderance of the evidence that:

1.  Western's employees informed it that reasonable accommodations were needed because of the employees' disabilities; and

2.  Western either made a good faith effort, in consultation with its employees, to identify and make a reasonable accommodation that would provide the employees with an equally effective opportunity at the work place; or

3.  The efforts at the reasonable accommodation would cause an undue hardship on the operation of Western's business.[43]

---

[43] O'Malley, Grenig & Lee, 3C Fed. Jury Prac. & Instr. § 172:60 (Good faith efforts at reasonable accommodation) (modified); 42 U.S.C. § 1981a(a)(3); Defendant's Disputed Jury Instruction O (modified).

## PART III: DELIBERATION AND VERDICT FORM

That concludes the part of my instructions explaining the law that applies in this case.  Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

## **DUTY TO DELIBERATE**

After the parties' closing statements, the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations.

To reach a verdict, whether for the Plaintiff or ~~one or both~~ Defendant(s) all of you must agree.  Your verdict must be unanimous.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The Court has prepared a Verdict Form for your convenience.  It reads as follows:

**[Explain the Verdict Form]**

After you have deliberated and consulted with each other, the foreperson will

write the unanimous answer of the jury in response to each question on the Verdict Form.

Only one copy of this Verdict Form will be provided to you.  If you make an error on the Form, please tell the bailiff.  The bailiff will destroy the erroneous form and a blank form will be provided.[44]

---

[44] Tenth Circuit Pattern Jury Instructions—Criminal § 1.23 (2011) (modified).

## **COMMUNICATION WITH THE COURT**

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to the bailiff, who will bring it to my attention.  I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.[45]

---

[45] Tenth Circuit Pattern Jury Instructions—Criminal § 1.44.