IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY,

    Defendant.

## ORDER DENYING PARTIES' CONSTRUED RULE 50(b) MOTIONS

The Court presided over a 14-day Phase One jury trial beginning on January 9, 2023. This Phase One jury trial on the issues of liability was held in accordance with the trial model established for employment discrimination pattern or practice cases by the U.S. Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).

On January 23, 2023, at the close of the Equal Employment Opportunity Commission's ("Plaintiff") case-in-chief, Western Distributing Company ("Defendant") moved for judgment as a matter of law on all claims pursuant to Federal Rule of Civil Procedure 50(a). Trial Tr., Day 9, 114:21–115:1. The Court took the motion under advisement. Trial Tr., Day 9, 159:12–13. On January 26, 2023, after resting its own case, Defendant renewed its Rule 50(a) motion as to all claims. Trial Tr., Day 12, 166:21–22, 170:4–9, 171:24–172:2. At this time, Plaintiff made its own Rule 50(a) motion, seeking judgment as a matter of law on Defendant's affirmative defenses of

1

undue hardship and business necessity.  Trial Tr., Day 12, 200:13–15.  The Court took both motions under advisement and submitted the action to the jury, subject to the parties' motions.  Trial Tr., Day 12, 199:20–25, 205:9–13.

On January 30, 2023, the jury returned a verdict in favor of Defendant on Plaintiff's two Disparate Treatment Claims, and in favor of Plaintiff on its sole Disparate Impact Claim.[1]  (ECF No. 1086.)  Given this verdict, the Court construes the parties' Rule 50(a) motions as renewed motions for judgment as a matter of law under Rule 50(b) ("Defendant's Motion" and "Plaintiff's Motion," respectively).[2]  For the reasons below, the construed motions are denied.

## I. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  Stated another way, "[a] directed verdict is justified only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion."  *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993).  In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party.  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case

---

[1] The Court has previously defined these claims and uses them here consistently with its prior practice and orders.  The Court assumes the parties' familiarity with these terms as used herein.

[2] The Court does not intend to foreclose either party from filing a motion for a new trial under Rule 59.

being submitted to the jury, that party may renew the motion after the jury returns its verdict. See Fed. R. Civ. P. 50(b); *Atchley v. Nordam Grp.*, 180 F.3d 1143, 1147–48 (10th Cir. 1999). In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

## II. ANALYSIS

### 1. Defendant's Motion

Defendant moved for judgment as a matter of law with respect to the Disparate Treatment Claims, punitive damages, and the Disparate Impact Claim. Trial Tr., Day 9, 114:21–115:1.

#### a. *Disparate Treatment Claims*

The jury returned a verdict in favor of Defendant on the Disparate Treatment Claims (Claims 1 and 2 as defined in the jury instructions and verdict form). (ECF No. 1086 at 1, 3.) As such, Defendant's Motion is denied as moot with respect to those claims.

#### b. *Punitive Damages*

The parties agree—and the Court instructed the jury—that punitive damages are properly available only on the basis of the Disparate Treatment Claims. (ECF No. 1080 at 47–48.) The jury, having found that Plaintiff failed to carry its burden on the Disparate Treatment Claims, did not impose any punitive damages on Defendant. (ECF No. 1086 at 2, 4.) As such, Defendant's Motion is denied as moot with respect to punitive damages.

c.   *Disparate Impact Claim*

The jury returned a verdict in favor of Plaintiff, finding that three of the thirteen standards, criteria, or methods of administration[3] Plaintiff identified had a disparate impact on individuals with disabilities.  (*Id.* at 4.)

Defendant argued Plaintiff had failed to meet its evidentiary burden with respect to causation or disparate impact, primarily on the basis that Plaintiff had failed to offer any statistical evidence comparing the impact of the standards, criteria, or methods of administration on a group of employees without a disability with a group of employees with a disability.  Trial Tr., Day 9, 138:17–139:2.  Defendant also argued that because no aggrieved individual failed certain physical tests, any verdict based on those tests would be advisory and outside the Court's power under Article III of the United States Constitution.  *See* Trial Tr., Day 9, 142:3–143:7.

Plaintiff argued that it did not have to show statistical evidence to prevail on the Disparate Impact Claim,[4] and noted evidence of individuals with disabilities who failed the physical tests administered by ErgoMed, including seven individuals with disabilities who failed the two 130-pound static push/pull tests that underly the jury's verdict.  Trial Tr., Day 9, 153:14–156:11.

To establish a disparate impact discrimination claim, Plaintiff must: (1) identify

---

[3] The three standards, criteria, or methods of administration the jury found caused a disparate impact on individuals with a disability are: (1) "[t]he alleged 'full-duty' policy"; (2) "[r]equiring that OTR, Local drivers, and Yard Hostlers be able to static push and pull 130 pounds of weight"; and (3) "[r]equiring that OTR, Local drivers, and Yard Hostlers be able to static push and pull 130 pounds of weight at 58 inches above the ground."  (ECF No. 1080 at 42.)

[4] The Court previously ruled that Plaintiff was not required to offer statistical evidence, despite such evidence being typical in disparate impact claims.  (ECF No. 1028 at 22–23.)

the challenged employment policy or practice and pinpoint Defendant's use of it; (2) demonstrate a disparate impact on a group that falls with the protected class; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999). The Court finds Plaintiff introduced sufficient evidence of each element at trial for the jury to reach its verdict on Plaintiff's Disparate Impact Claim.

Plaintiff identified the full-duty policy and the two static 130-pound push/pull tests and pinpointed Defendant's use of them. The full-duty policy took center stage in the trial, starting from the very first witness: Helbis Varangot. *See* Trial Tr., Day 2, 16:11–22; *see also* Trial Tr., Day 3, 80:12–16; Trial Tr., Day 5, 139:1–14; Trial Tr., Day 7, 106:8–16. As a representative sampling of the evidence on this issue only, Plaintiff introduced evidence of the two 130-pound static push/pull tests most prominently through the deposition testimony of Ronald Perkins. *See* Trial Tr., Day 3, 36:14–38:17. Perkins testified that after he informed his manager Wayne Long that he had failed these tests, Long told him he was "done" and could not return to work. Trial Tr., Day 3, 37:19–38:2. Dino Guadagni testified that Allen Gilbert was disqualified from employment because he could only pull 121 pounds. Trial Tr., Day 6, 125:13–18. Max Haynes testified that a driver applicant named Mr. Prince received a "no-job match recommendation" from ErgoMed because "he was unable to push and pull 130 pounds." Trial Tr., Day 7, 246:23–247:18. Haynes testified that Robert Jeeter and Laurie Deview also received no-job match recommendations for failing the 130-pound push/pull tests. Trial Tr., Day 8, 10:25–11:16, 28:4–29:5. The Court finds there was ample evidence introduced at trial for the jury to find that Plaintiff identified the challenged standards,

criteria, or methods of administration and pinpointed Defendant's use of them.

In its Order Denying Defendant's Corrected Amended Motion for Summary Judgment, the Court explained:

> As the Court understands it, Plaintiff's theory is that Defendant implemented the subject policies and tests to intentionally exclude persons with medical restrictions, and that these policies and tests in fact had the effect of disproportionately excluding people with disabilities. It will not require statistical evidence for the jury to conclude that policies that operate to exclude someone with a medical restriction from driving for Defendant may disproportionately affect those who have a disability due to such medical restrictions[.]

(ECF No.1028 at 23.)  At trial, this was precisely Plaintiff's theory of the case.  Trial Tr., Day 1, 170:16–24.  The Court further explained in its prior Order that if Plaintiff is able to prove the existence of the full-duty policy, "non-statistical evidence of persons actually impact by Defendant's allegedly discriminatory qualification standards may be sufficient to establish disparate impact."  (ECF No. 1028 at 23.)

The only way to make sense of the jury's verdict is to conclude that it found Plaintiff had proved the existence of the full-duty policy—otherwise it could not have found that the full-duty policy had a disparate impact on individuals with disabilities. (ECF No. 1086 at 4.)  In light of this fact, the Court finds the evidence of several specific individuals with disabilities who failed the 130-pound static push/pull tests and were denied employment was sufficient for the jury find disparate impact.

As Defendant apparently acknowledged, in this case, the third element of causation goes hand in hand with disparate impact.  Trial Tr., Day 9, 138:15–19.  It also treated these two elements together in its motion for summary judgment.  (ECF No. 1028 at 23–24.)  At trial, Haynes testified that ErgoMed would make no-job match

6

recommendations *because* an applicant or returning employee had failed one of the physical tests. Trial Tr., Day 7, 247:13–18. Considering this testimony in light Perkins's testimony that he could not return to work after failing the 130-pound static push/pull test and Guadagni's testimony that Gilbert was "disqualified" because he failed the test, the Court is satisfied that the jury was presented with sufficient evidence on causation to reach its verdict.

Therefore, viewing the totality of the trial evidence in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could have reached the verdict reached by the jury in this case on the Disparate Impact Claim. As a consequence, Defendant's Motion is denied with respect to the Disparate Impact Claim.

    2.    <u>Plaintiff's Motion</u>

Plaintiff moved for judgment as a matter of law as to Defendant's two affirmative defenses. Trial Tr., Day 12, 200:13–15.

        a.    *Undue Hardship*

As referenced earlier, the jury returned a verdict in favor of Defendant on both of the Disparate Treatment Claims. (ECF No. 1086 at 1, 3.)

Plaintiff argued Defendant had not presented sufficient evidence of its financial resources for a reasonable jury to find that four proposed accommodations—AutoSocks, automatic decouplers, automatic hood openers, and additional leave—would be an undue hardship to Defendant. Trial Tr., Day 12, 200:21–24, 202:4–13.

Defendant argued it had presented testimony from its expert Jimmy Sill on the "impracticality" of these accommodations. Trial Tr., Day 12, 203:11–12. Defendant argued AutoSocks do not work in all conditions and delayed deliveries could cost the

company as much as $150,000. Trial Tr., Day 12, 203:18–25. It also argued that additional leave would result in expensive health insurance costs. Trial Tr., Day 12, 203:25–204:3.

Whether an accommodation would present an undue hardship for an employer is considered on a case-by-case basis. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 (10th Cir. 1999) (en banc). An undue hardship is "an action requiring significant difficulty or expense when considered in light of various factors," including: "the nature and cost of the accommodation; the number of persons employed by the company; the financial resources of the company; and the impact of the accommodation of the operation of the company." *Id.*

As Defendant pointed out, there was substantial expert testimony on the nature and cost of the subject accommodations. *See, e.g.*, Trial Tr., Day 11, 43:9–45:12. The jury heard testimony from Defendant's corporate representative that it employs roughly 500 people. Trial Tr., Day 6, 85:10–12. And the jury heard extensive evidence on Defendant's operations, including the time-sensitive nature of its deliveries, the relative danger of the mountain passes through which it hauls cargo, and the complexity of its dispatch process. *See, e.g.*, Trial Tr., Day 10, 97:25–99:10, 96:1–97:19; Trial Tr., Day 4, 274:21–275:25. Plaintiff's argument that there is little evidence of Defendant's financial condition is well taken; however, there was testimony from Defendant's corporate representative on its annual assets and operating revenue during the relevant period. Trial Tr., Day 6, 59:3–60:4.

Given this evidence, viewing the totality of the trial evidence in the light most favorable to the Defendant, the Court finds a reasonable jury could have found the

proposed accommodations posed an undue burden on Defendant. As a consequence, Plaintiff's Motion is denied with respect to Defendant's affirmative defense of undue hardship.

      b.    *Business Necessity*

Business necessity is an affirmative defense to the Disparate Impact Claim, upon which the jury returned a verdict in favor of Plaintiff. (ECF No. 1080 at 44; ECF No. 1086 at 4.) As such, Plaintiff's Motion with respect to the business necessity defense is denied as moot.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Defendant's construed renewed motion for judgment as a matter of law is DENIED IN PART and DENIED IN PART AS MOOT, as set forth above; and

2. Plaintiff's construed renewed motion for judgment as a matter of law is DENIED IN PART and DENIED IN PART AS MOOT, as set forth above.

Dated this 14th day of February, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge