IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY,

    Defendant.

---

**ORDER ON DEFENDANT WESTERN'S POST-TRIAL MOTIONS**

---

This matter is before the Court on Western Distributing Company's ("Western" or "Defendant") Rule 12(b)(1) Motion to Dismiss for Lack of Standing ("Standing Motion") (ECF No. 1098) and Motion to Reconsider the Court's Denial of Its Yet-to-be-filed Rule 50(b) Motion ("Motion to Reconsider") (ECF No. 1128). The Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") filed responses (ECF Nos. 1130, 1138), to which Western filed replies (ECF Nos. 1136, 1141). For the reasons stated below, the Standing Motin is denied and the Motion to Reconsider is granted in part and denied in part.

## I. ANALYSIS

**A.    Standing Motion**

Western argues that the EEOC lacks standing to pursue its Disparate Impact Claim because the only remedy available on that claim is a prospective injunction and the three standards, criteria, or methods of administration that the jury found had a

disparate impact on individuals with disabilities had been discontinued in 2015, prior to the initiation of this litigation.  The relevant standards, criteria, or methods of administration are: (1) Western's "full-duty" policy; (2) requiring certain drivers to be able to static push and pull 130 pounds of weight; and (3) requiring certain drivers to be able to static push and pull 130 pounds of weight at 58 inches above the ground.  (ECF No. 1086 at 4.)  Further, Defendant argues that the EEOC cannot rely upon the voluntary cessation exception because it is relevant only to mootness and not standing at the outset of litigation.  (ECF No. 1098 at 7 (citing *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190–91(2000)).)

After considering these arguments, the EEOC's arguments in response, and Western's arguments in reply, the Court concludes the EEOC has standing.  Western's position puts great weight on two things: (1) Senior U.S. District Judge Lewis T. Babcock's Bifurcation Order (ECF No. 166); and (2) several statements by the EEOC's counsel and the Court during the trial.  (*See generally* ECF No. 1098.)

The foundation of the argument is thus:

1. The EEOC suggested its Disparate Impact Claim may be tried in Phase I, and Judge Babcock granted that implicit request in the Bifurcation Order. (ECF No. 166.)  In that Order, Judge Babcock explained that "Phase I shall be tried to a jury, with the Court determining whether it is appropriate to order any *prospective* relief based upon the jury's finding." (*Id.* at 18 (emphasis added).)

2. When the Court heard argument on the parties' Rule 50 motions, it expressed the opinion "that only equitable relief is available and no

monetary damages" on the Disparate Impact Claim.  (ECF No. 1123 at 35:20–21.)  While it is true that this statement was made in the context of a conversation about whether the claim should be given to the jury, it is difficult to imagine that no member of the EEOC's large trial team would have corrected the Court if this was not the EEOC's understanding of the available remedies at the time.  During trial, the EEOC's counsel conceded: "[T]here's no compensatory and punitive damages on a disparate impact case."  (ECF No. 1119 at 1161:5–6.)

While the inherently compensatory nature of backpay suggests at first blush that this concession alone is fatal to the EEOC, "backpay is viewed as equitable relief . . . to be decided by the judge."  *Tudor v. Se Okla. State Univ.*, 13 F.4th 1019, 1047 (10th Cir. 2021) (Title VII).  That said, backpay by definition can only be retrospective in nature, *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (affirming state's Eleventh Amendment immunity from claim for backpay under *Ex Parte Young*, 209 U.S. 123 (1908)), so the Court must consider whether retrospective relief is available on the Disparate Impact Claim.

The Court finds a literal reading of Judge Babcock's Order, which if taken to its fullest extent would prevent the Court from awarding backpay, would be unjust.  The obvious purpose of the Bifurcation Order is twofold: (1) to give the parties a clear procedure for trying this action; and (2) to give to the jury issues it can legally decide and reserve for the Court issues upon which it must rule.  (*See* ECF No. 166 at 17–18.)  The undersigned took the same general approach when it submitted the Disparate Impact Claim to the jury for an advisory verdict.  (ECF No. 1123 at 37:11–16.)  Judge

Babcock's Order is not like the Eleventh Amendment, which prohibits retrospective relief against the states but permits prospective injunctive relief against state actors. *Meiners*, 359 F.3d at 1232. The Court will not ascribe to it the power to foreclose retrospective relief to which the EEOC and aggrieved individuals might be entitled. Nor will the Court rule such relief is improper simply because the EEOC did not present any damages evidence to a jury that could not award equitable backpay. To do so based on an interlocutory[1] procedural order that clearly contemplates separate fact finding on "all individual claims and resultant damages" would be unjust and border on absurd. (ECF No. 166 at 18.)

---

[1]     Western appeals to the law-of-the-case doctrine, which it refers to as the "'rule of the case' case [*sic*] doctrine," to assert that the Court must apply a strict reading of the Bifurcation Order. (ECF No. 1136 at 7 (citing *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)).)

*Monsisvais* is a strange citation for the proposition that Judge Babcock's Bifurcation Order "precludes the EEOC's current position," which the Court implicitly adopts by denying the Standing Motion in this Order. (*Id.*) In *Monsisvais*, the Tenth Circuit considered the doctrine in the context of the "dynamics between trial and appellate courts," stating that it "signifies, in broad outline, that a decision of an appellate tribunal on a particular issue, unless vacated or set aside, governs the issue during all subsequent stages of the litigation in the nisi prius court, and thereafter on any further appeal." 946 F.2d at 115 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Western specifically notes that *Monsisvais* quotes *Arizona v. California*, yet it is somehow lost on Western that that case undercuts its position that the Court is bound by Western's particular reading of the Bifurcation Order. (*See* ECF No. 1136 at 7.) In *Arizona v. California*, the Supreme Court explained: "Law of the case directs a court's discretion, it does not limit the tribunal's power." 460 U.S. at 618. It is then no wonder that the Tenth Circuit has held that the "law of the case doctrine has no bearing on the revisiting of interlocutory orders." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011); *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007) ("district courts generally remain free to reconsider their earlier interlocutory orders"). Therefore, even if the Court found Western's reading was justified— which it does not—it finds it can revisit Judge Babcock's decision and amend that determination in order to avoid an unjust result.

**B.     Motion to Reconsider**

Western also seeks reconsideration of the portion of the Court's Order Denying Parties' Construed Rule 50(b) Motions relating to the Court's rejection of its anticipated Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b).  Western's point that the Court inadvertently failed to address all of its substantive arguments from its initial motion under Rule 50(a) is well-taken.  Therefore, the Motion to Reconsider is granted to the extent that the Court now addresses those arguments.

       1.     <u>Waiver of Instruction of Full-duty Policy in Disparate Impact Claim</u>

Western argues that the EEOC waived its Disparate Impact Claim to the extent it is based on the full-duty policy.  (ECF No. 1128 at 5–7.)  When the EEOC submitted its Proposed Jury Instructions, it failed to include the full-duty policy in its proposed "Challenged Standards" instruction, despite clearly including it as a relevant qualification standard in its Motion for Partial Summary Judgment.  (ECF No. 992-1 at 48; ECF No. 823 at 64 ("The full-duty . . . polic[y] discussed above [is] a discriminatory qualification standard.").)  Therefore, Western argues the EEOC consciously abandoned the theory that the full-duty policy is an illegal qualification standard.  (ECF No. 1128 at 17.)  Moreover, it argues it relied on this apparent waiver in preparing and putting on their defense at trial and that it was surprised and prejudiced by the Court's inclusion of the full-duty policy in the jury instructions.  (*Id.* at 17–18.)

Defendant's assertions are belied, first, by the Court's Order Denying EEOC's Amended Motion for Partial Summary Judgment (and related briefing), issued less than a month before trial: *See*, ECF No. 1026 at 6, wherein the Court clearly stated that the

full-duty and maximum-leave policies "are two of the thirteen discriminatory standards, criteria, or methods of administration that form the basis of the Disparate Impact Claim."); and, *id.* at 12, where the Court notes that "Plaintiff argues Defendant's use of thirteen unlawful qualification standards, employment tests, or selection criteria has a disparate impact on employees and applicants with disabilities." Defendant could not, therefore, have reasonably concluded, on the eve of trial, that the full-duty and maximum-leave policies were going to be anything other than front and center in the parties' respective evidence presentations to the jury.

Defendant's separate argument that it was unaware that it would have to defend itself from the alleged existence and effect of the full-duty policy truly strains credulity. The Court concludes as much given the significant body of evidence Western in fact prepared and marshaled to do just that. (*See* ECF No.1138 at 8–9.) And—as Western is keen to point out—the jury clearly found much of this evidence compelling because it delivered a verdict largely in Western's favor. (*See generally id.*)

Moreover, the Court sees no reference to Rule 51 in any of the briefing on the Motion to Reconsider. Subsection (a)(1) of that Rule provides: "At the close of the evidence or at any earlier reasonable time that the court orders, a party *may* file and furnish to every other party written requests for the jury instructions it wants the court to give." Fed. R. Civ. P. 51(a)(1) (emphasis added). The Rule precludes a party from assigning error to a district court's failure to give an instruction if it did not "properly request[] it." 51(d)(1)(B). This is the only consequence for failure to propose any instruction contemplated by the Rule. *See generally* Rule 51. There is no Local Rule of this District modifying the permissive nature of Rule 51(a)(1), *see* D.C.COLO.LCivR;

however, the undersigned's Revised Practice Standards do.  WJM Revised Practice Standards VI.A ("The parties shall submit proposed jury instructions . . . .")  Though the Revised Practice Standards require parties to propose instructions, they are silent on the effect of failure to include any instruction and do nothing to limit the Court's significant discretion with respect to formulating jury instructions.  *See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1259 (10th Cir. 2016) (The Tenth Circuit "reviews a district court's decision 'on whether to give a particular instruction for abuse of discretion.'") (quoting *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1248 (10th Cir. 1998)).

The Court will not confine its discretion to the scope of instructions submitted by the parties, nor will it *ad hoc* assign greater importance to those submissions than assigned by the Rules or the undersigned's Revised Practice Standards.  With respect to its waiver argument, the Motion to Reconsider is denied.

  2. <u>Adequacy of Evidence as to Existence of Full-duty Policy and Causation of Disparate Impact</u>

Western frames the second argument put forth in the Motion to Reconsider as concerning the adequacy of the evidence the EEOC presented at trial with respect to the existence of the full-duty policy and its disparate impact on qualified individuals with disabilities.  (ECF No. 1128 at 7–12.)  In truth, the first portion of this argument (existence of the policy) is an attempt to have the Court reweigh the evidence considered by the jury and the second portion (disparate impact) is a retread of one of Western's rejected summary judgment arguments.  (*See id.*)

While moving the Court to reweigh the evidence is more appropriate with respect to the jury's verdict on the Disparate Impact Claim than it would be with respect to a

non-advisory verdict, the Court rejects Western's invitation to do so. The jury during the Phase I trial was attentive, engaged, and clearly thoughtful in issuing a narrow verdict that, for the record, in significant part reflected Western's view of the evidence. (*See* ECF No. 1123 at 13:14–17 ("[P]ulling out a magnifying glass and trying to figure out which claimant has somehow been affected by these so-called ErgoMed standards. And it looks like it was Ron Perkins, okay? He failed [the] 130-pound push/pull standard.").) As for Western's retread argument regarding the lack of statistical evidence, the Court will not functionally reverse its own legal conclusions reached during the summary judgment phase of this action.

With respect to its inadequate-evidence argument, therefore, the Motion for Reconsideration is denied.

3.  Statistical Evidence Regarding 130-pound Push/Pull Tests

Western's third argument is practically the same as the "retread" argument discussed in the previous section, the only substantive difference being that it focuses on the 130-pound push/pull tests instead of the full-duty policy. (*See* ECF No. 1128 at 12–13.) The Court rejects this argument for the same reasons.

4.  Standing

Western's fourth argument is merely a short summary of the arguments raised in the Standing Motion. (*See id.* at 13 n.6 ("Western has filed a separate 12(b)(1) motion . . . . That said, Western felt it was appropriate to summarize the argument here for the court's consideration.").) As with the Standing Motion, the Motion for Reconsideration is denied with respect to this argument.

## II. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Western's Rule 12(b)(1) Motion to Dismiss for Lack of Standing (ECF No. 1098) is DENIED; and

2. Western's Motion to Reconsider the Court's Denial of Its Yet-to-be-filed Rule 50(b) Motion is GRANTED IN PART and DENIED IN PART as set forth above.

Dated this 31st day of January, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge