**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:16-cv-01727-WJM-STV

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

WESTERN DISTRIBUTING COMPANY,

     Defendant.

---

**CONSENT DECREE**

---

### I.    RECITALS

**1.**     Pursuant to the Court's Order dated December 27, 2024 (ECF No. 1170), Plaintiff, Equal Employment Opportunity Commission ("Commission" or "Plaintiff" or "EEOC") and Defendant Western Distributing Company ("Defendant" or "Western") participated in a settlement conference with Mag. Judge Varholak on Friday, February 21, 2025, and April 28, 2025, and have agreed upon this Consent Decree to resolve the lawsuit.

**2.**     Whereas nine charges have been asserted against Defendant alleging claims under the ADA, ADEA, Title VII, and Equal Pay Act by Charging Parties.

**3.**     Whereas EEOC filed a lawsuit against Defendant alleging four claims for relief under the ADA: 1) failure to accommodate disabilities under 42 U.S.C. ¶ 12112(a); 2) disparate treatment based on disability or the need to provide accommodation under 42 U.S.C. ¶¶ 12112(a) and (b)(5)(B); 3) use of

discriminatory standards, criteria, or methods of administration under 42 U.S.C. ¶¶ 12112(a), (b)(3)(A), and (b)(6), and; 4) retaliation under 42 U.S.C. ¶ 12203.

**4.**     Whereas EEOC alleged these four claims on behalf of 58 Aggrieved Individuals (including Charging Parties).

**5.**     Whereas Defendant specifically denies any liability for any claims asserted against it.

**6.**     Whereas the Parties enter into this settlement to avoid further costs, disruption and delay.

**7.**     The Parties agree to the jurisdiction of this Court over the Parties and the subject matter of this action, and agree to the power of this Court to enter a Consent Decree enforceable against Defendant.

**8.**     As to the issues resolved, this Decree is final and binding upon the Parties and their successors and assigns.

**9.**     This Decree does not constitute an adjudication on the merits of the EEOC's case, and it shall not be construed as an admission by Defendant of any discriminatory conduct, which is expressly denied.

**10.**     For the purpose of amicably resolving disputed claims, the Parties jointly request this Court to acknowledge the following settlement of the parties:

## II.     JURISDICTION

**11.**     The Parties stipulate to the jurisdiction of the Court over the Parties and subject matter of this action, and have entered this Consent Decree to resolve the matter.

### III.    ISSUES RESOLVED

**12.**    This Decree resolves all claims that were alleged in the above-captioned

lawsuit. In addition, this Decree constitutes a complete resolution of all of the

Commission's claims of unlawful employment practices under the ADA, Equal Pay

Act, and Title VII that were raised in EEOC Charge Numbers 541-2009-02762,

541-2013-00234, 541-2013-00123, 541-2013-00122, 541-2014-01461, 541-2020-

00013, 541-2017-00731, 846-2017-36022, 541-2013-02321 and the instant civil

action.  The EEOC agrees not to litigate on behalf of any individual or class of

individuals regarding allegations of (a) disability-based discrimination under the

ADA, including denial of reasonable accommodations;(b) retaliation for

participating or cooperating with the EEOC in this civil action; or (c) retaliation for

opposing disability-based discrimination; where all of the alleged discriminatory or

retaliatory conduct occurred prior to the Effective Date of this Consent Decree.

**13.**    Defendant and its officers, agents, employees, successors, and all other

persons in active concert or participation with any of them, will not interfere with the

relief herein ordered, but shall cooperate in the implementation of this Decree.

**14.**    Aggrieved Individuals entitled to participate in this settlement consist of

individuals who were employed by Defendant at some time during the period from

January 1, 2008 to the present, and are alleged to have been denied employment

opportunities for disability.  The EEOC identified and disclosed to Defendant the

names of fifty-eight individuals who alleged that they were denied a reasonable

accommodation, discharged or otherwise discriminated against, including,

Charging Parties Clinton Kallenbach, Walter Edwards, Edwyn Wyman, Catherine Valdez, and Galen Tacker.

### IV.    TERM AND SCOPE

**15.**    The terms of this Decree shall apply to all of Defendant's facilities.

**16.**    The duration of this Decree shall be four years from the date of signing by the Court.

### V.    MONETARY RELIEF

**17.**    Within 90 days of the entry of this Decree, Defendant shall pay $919,000 to Charging Parties and other Aggrieved Individuals in the amounts as determined by the EEOC in accordance with Sec. VII. below.

**18.**    If any portion of the monetary relief due to the Charging Parties and/or Aggrieved Individuals is not issued and mailed to the Charging Parties and/or Aggrieved Individuals within 90 calendar days of entry of the consent decree, Defendant shall pay a $6,000 per week late fee, to be distributed to the Charging Parties and/or Aggrieved Individuals as determined by the EEOC.

**19.**    In the event of non-payment, Defendant acknowledges that the monetary relief agreed to herein is a debt owed to and collectible by the United States, notwithstanding that the Charging Parties and Aggrieved Individuals are the ultimate beneficiaries of any agreed monetary relief.

**20.**    The monetary awards shall be allocated 25% to back pay and 75% to compensatory damages, and the Parties agree that 25% to back pay and 75% to

compensatory damages is fair and accurate considering the facts and circumstances involved in this settlement.

**21.**     Defendant will not condition the receipt of individual relief upon any Charging Party's or Aggrieved Individual's agreement to: (a) maintain as confidential the terms of this Decree or the facts of the case; (b) waive his or her statutory right to file a charge with any federal or state anti-discrimination agency; or (c) promise not to reapply for a position at Defendant.  The receipt of individual relief is conditioned upon the individual's execution of the Release attached as Exhibit B.

**22.**     To each Charging Party and Aggrieved Individual receiving payment, Defendant shall issue an IRS Form W-2 for the back pay component of the monetary award, and an IRS Form 1099 for the compensatory damages component of the monetary award. Defendant shall be responsible for making required tax withholdings from the back pay component of settlement awards. In addition to the settlement amount distributed to eligible Aggrieved Individuals and Charging Parties, Defendant is responsible for paying the employer's share of payroll taxes on the back pay component of settlement awards. EEOC will provide an address for each individual receiving payment.

## VI. EEOC'S REPORTING REQUIREMENTS UNDER IRC SECTIONS 162(f) & 6050X

**23.**     The EEOC may be required to report the fact of this settlement to the Internal Revenue Service (IRS) under Section 162(f) and 6050X of the Internal

Revenue Code, which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the IRS. The EEOC has made no representations regarding whether the amount paid pursuant to this settlement qualifies for the deduction under the Internal Revenue Code. The provision of the Form 1098-F by the EEOC does not mean that the requirements to claim a deduction under the Internal Revenue Code have been met. Any decision about a deduction pursuant to the Internal Revenue Code will be made solely by the IRS with no input from the EEOC. The parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this agreement qualify for a deduction under the Internal Revenue Code.

**24.**    The Defendant's EIN is: 840376087.

**25.**    The individual to whom the EEOC should mail a copy of the form 1098-F, if the EEOC is required to issue one is: Western Distributing Company, c/o Vieri Gaines, 4955 Bannock Street, Denver, Colorado 80216.

## VII.    DISTRIBUTION PROCEDURE

**26.    Final Distribution List for Charging Parties and Aggrieved Individuals.**

Within sixty (60) calendar days of the Court's entry of this Decree, the EEOC will provide Defendant with a Final Distribution List for Charging Parties and Aggrieved Individuals, indicating (a) payment amounts, (b) whether payment is to be made by electronic transfer or check sent vis U.S. Postal System, and (c) either account information as necessary to effect electronic payment, or mailing address for

sending checks. Within sixty (60) calendar days of the Court's entry of this Decree,

EEOC will provide Defendant with a signed copy of the release (Exhibit B) for each

Aggrieved Individual (including Charging Parties) who will receive monetary relief

under this Decree.  Within 90 calendar days of entry of the consent decree,

Defendant will issue payments in accordance with the Final Distribution List

provided by the EEOC.

**27.    Copies to EEOC.**  Within ten (10) business days after payments are made

to payees, the Defendant shall submit to EEOC documentation confirming

payments made.

## VIII.    OTHER INDIVIDUAL RELIEF

**28.**    For the duration of this Decree, Defendant agrees that it will offer

employment to any Aggrieved Individual who: (1) applies for a vacant position, (2)

is qualified to perform the essential functions of the job with or without reasonable

accommodation, and (3) is not on the list of five aggrieved individuals who are not

eligible for rehire, which includes Rodolfo Morin, Kassandra Wones, Michael

Hines, Gene Scott, and Israel Jimenez. If more than one Aggrieved Individual

applies for the same vacant position, Defendant Western shall select the most

qualified person from such applicants covered by this Decree.  Defendant Western

agrees to engage in the interactive process with a returning Aggrieved Individual

who may need a reasonable accommodation for the performance of the essential

job duties.  Nothing herein shall be interpreted as preventing Defendant Western

from being able to decline employment to any applicant who is not qualified for the

position, including circumstances where the applicant does not obtain appropriate

certifications from the Department of Transportation or pass any applicable drug

test.

## IX.    EQUITABLE RELIEF

A.    *Injunctive Relief*

**29.**    Defendant, its officers, agents, employees, successors, and other persons

in active concert of participation with it, or any of them, are, for the duration of this

Decree, enjoined from engaging in any employment practice which discriminates

on the basis of disability in violation of the ADA.

**30.**    Defendant, its officers, agents, employees, successors, and other persons

in active concert or participation with them, or any of them, are, for the duration of

this Decree, enjoined from engaging in reprisal or retaliation of any kind against

any person because of such person's opposition to any practice made unlawful

under the ADA.  Defendant shall not retaliate against a person because such

person brings an internal complaint of discrimination with Defendant; because such

person files or causes to be filed a charge of discrimination with the Commission,

or whose statements serve as the basis of a charge; or because such person

testifies or participates in the investigation or prosecution of a violation of these

statutes.  Defendant shall not retaliate in any manner against individuals identified

as witnesses in this action or who assisted in the investigation giving rise to this

action. Nor shall Defendant retaliate against any such persons identified as a

witness or possible witnesses of discrimination in future investigations or
proceedings.

**B.**    *Review and Revision of EEO and ADA policies*

**31.**    Within one hundred twenty (120) days of the Court's entry of this Decree,
Defendant shall review and revise its existing policies and procedures, develop
and implement new and/or revised policies and procedures as set forth below, and
otherwise as necessary to ensure equal employment opportunities are afforded to
employees with disabilities and to ensure that Defendant's policy and procedures
are consistent with the ADA, including all attendant regulations, and terms of this
Consent Decree.

**32.**    Defendant has already implemented revisions to its handbook and other
policies.  Unless already completed, within one hundred twenty (120) days of the
Court's entry of this Decree, Defendant shall:

**A.**  Ensure that managers and supervisors are trained that all requests for
medical leave or other accommodations should be directed to a designated
human resources manager.  The designated individual will address: (a) requests
for reasonable accommodations, including request for accommodation in any
physical testing to determine fitness for duty of an employee or prospective
employee; and (b) employee requests to return to work after medical leave.

**B.**  Modify Defendant's existing policies to delete any reference to "full duty" and
explain that there is no requirement that employees be fully healed or without
restrictions in order to return to work, and that whether an employee is physically

able to perform their essential job functions will be determined through the interactive process and individualized assessment provided in the Reasonable Accommodation policy.

**C.**   Modify Defendant's policies regarding any form of leave for a medical condition, including specifically Western's policies currently-named "Family and Medical Leave Act Policy (including pregnancy)", and "Workers Compensation & Safety", will be modified to expressly state that the time period allowed for such leave (presently up to twelve weeks) may be extended if the extension is appropriate as a reasonable accommodation for a disability, as provided in Western's policy currently-named "Reasonable Accommodation for Individuals with Disabilities."

**D.**   Modify Defendant's policies, manuals, job postings, job descriptions, and essential function statements to delete any physical requirement that is not consistent with the essential functions identified by the job analyst.

**E.**   Modify Defendant's policies and manuals to specify that Defendant will provide alternative traction devices upon request (to be used in lieu of tire chains) as a reasonable accommodation to drivers with a disability.

**F.**   Modify Defendant's existing policies to include a description of the consequences, up to and including discharge, that shall be imposed upon violators of the policy and an assurance of non-retaliation against persons and witnesses who report to Defendant that they believe they or other employees

173695793.1

have been subjected to unlawful discrimination and/or denied reasonable
accommodations.

**G.**  Modify Defendant's existing policies to require the attached Exhibit C be
provided to each individual placed on medical, FMLA, or worker's compensation
leave at the beginning of their leave.

**33.**      Defendant shall maintain a written policy that addresses how reasonable
accommodations for disabilities will be provided during the course of employment and
will at minimum a) inform employees of who to contact to request a disability-related
accommodation; and b) require Defendant to conduct and document the following
individualized assessment and interactive process steps, to the extent applicable or
necessary:

**A.**  Defendant shall meet and discuss reasonable accommodation with the
applicant or employee, including an explanation of potential accommodations
and the various considerations in the decision-making process.

**B.**  Determine the applicant's or employee's abilities and limitations. This may
require information gathering from the employee's medical provider, or a
medical provider of Western's choice at Western's expense.

**C.**  Determine the duties of the job, based on a current job description shared
with the employee or applicant.

**D.**  Determine which of the job duties the applicant or employee cannot do, or
needs help doing, because of their disability, and discuss the applicant or
employee.

**E.**   Determine whether the affected duties are essential or marginal duties,
based on standards articulated in ADA regulations and interpretive guidance
published at 29 C.F.R. § 1630.2 (n) (regulation) and Appendix to Part 1630, §
1630.2(n) (interpretive guidance).

**F.**   Reassign marginal duties, if needed.

**G.**   Research the potential accommodations that might enable the employee to
do the essential functions. This will usually require Defendant to research
and gather information from sources such as the employee's medical
provider, Job Accommodation Network (askjan.org), Colorado Department of
Vocational Rehabilitation, and/or subject experts (e.g. Diabetes foundation,
Epilepsy foundation, etc.)

**H.**   Determine whether each potential accommodation will actually enable the
employee to perform the essential functions of the job.

**I.**   Discuss all potential accommodations with the applicant or employee.

**J.**   Determine the cost of each potential accommodation and determine  whether
there are any other difficulties or undue hardship the accommodation will
cause to the operation of Defendant's business.

**K.**   Determine if there is a workable reasonable accommodation and provide it to
the applicant or employee.

**L.**   If Defendant rejects an accommodation, Defendant will explain the reasons
to the applicant or employee and document the reasons.

**M.** Reassignment may be an accommodation, and must be considered if no reasonable accommodation will enable an employee to perform essential functions of their own job. If reassignment is considered, Defendant will discuss with the employee potential reassignment to another position that is available or expected to be available within six months.

**N.** If reassignment is considered, Defendant will document what jobs were considered and offered to the employee as a reassignment.

**34.** Defendant shall develop and utilize a form to document each step in the individualized assessment and interactive process, as set forth in Paragraph 33 above, and will retain copies of all records documenting the process. The Parties acknowledge there may be some circumstances where an accommodation is granted without going through each step in Paragraph 33. However, Defendant will memorialize these requests and granted accommodations.

**35.** Within 30 days of the policy review required under this Section B, Defendant shall provide the EEOC with a copy of the revised policies and form required herein.

**36.** Within one hundred twenty (120) days of the Court's entry of this Decree, Defendant shall include the revised policies in Paragraph 32(B) in an employee handbook or manual that is provided to all Western Distributing Co. employees, and also incorporated into the USAC and Transportation Manuals. Copies of the revised policies will also be provided to Western's workers compensation medical

providers and insurers, and to any person or entity Western employs to administer fitness-for-duty physical testing.

37.     For duration of this Decree, should Defendant further amend its existing policies relating to equal employment opportunities, the ADA, or the provision of reasonable accommodation under the ADA, Defendant will notify the EEOC of the amendment(s) within fourteen (14) days of the implementation of the modified policies.

## C.    *ADA Training*

38.     Defendant has twice previously engaged a third party to provide ADA training of its supervisory workforce. Defendant agrees to conduct ADA training for all non-supervisory, supervisory/managerial, and human resource employees on an annual basis. The purpose of this training is to educate employees on discrimination covered by the ADA. The training will define conduct which violates the ADA and explain the responsibilities of employees and management in maintaining a work environment free of discrimination and retaliation pursuant to the requirements of ADA, explain the procedure for providing reasonable accommodation for disabilities, and explain the procedure for how employees may complain if they believe they have been denied accommodation or otherwise subjected to disability-based discrimination. In addition, the training will explain policies related to compliance with this Decree. All training under this Paragraph shall be at Defendant's selection and expense.  The trainer or qualified professional for the Human Resources Employees' training shall be an outside

vendor, not employed by Defendant, who is selected by Defendant and who is subject to approval by the EEOC.  The trainer or qualified professional for training of all other employees may be an employee of Defendant.  The Human Resources and supervisor/manager training will be conducted in-person, if reasonably possible. However, the training for non-supervisory employees may be conducted in-person, by video, by webinar, by audio, or by any combination of these methods or another similar method.  The training will be conducted as follows:

**A.  Supervisors and Managers:** Defendant agrees to conduct ADA training on an annual basis for at least three (3) hours per year for its supervisors and managers.

**B.  Human Resource Employees:**  Defendant agrees to conduct ADA training on an annual basis for at least six (6) hours per year for its Human Resource ("HR") employees. Training for HR employees will additionally focus on what is necessary to conduct a full and fair investigation of employee complaints of disability discrimination.  Two (2) of these hours per year should consist of specific training regarding how HR employees should conduct the ADA interactive process.  Additionally, Defendant will require employees who are newly hired or promoted into a human resource position, complete four (4) hours of general EEO training within forty-five (45) days of being hired or promoted into a human resource position.

**C.  Non-Supervisory Employees:**  Defendant agrees to conduct ADA training on an annual basis for at least one (1) hour per year for all non-supervisory

employees.  For all new hires the Defendant agrees to conduct at least a 30-minute ADA training required under this paragraph during the employee's orientation, prior to their hire or within fourteen (14) days of their hire. This training for new employees will satisfy the first annual requirement for non-supervisory employees.

**D.**  The training may also include information about other laws prohibiting discrimination and harassment or other topics chosen by Defendant; however, the periods of time outlined above in Paragraphs 38(A)-38(C), at a minimum, must relate to ADA training.

**E.**  The ADA trainings will focus on

**38.E.1.**    Defendant's Anti-Discrimination and Reasonable Accommodation Policies described above;

**38.E.2.**    Discrimination based on disability;

**38.E.3.**    Employees' available avenues to complain of discrimination;

**38.E.4.**    Employees' available avenues to request reasonable accommodations, including but not limited to extensions of medical, FMLA or worker's compensation leave;

**38.E.5.**    Explanation of the interactive process for assessing reasonable accommodations; and

**38.E.6.**    Training for supervisory, management, and HR employees will additionally focus on their obligation to prevent and promptly correct

harassing and retaliatory conduct and how to properly respond to requests for accommodations.

**38.E.7.**    Accommodations available for DOT drivers with lifting, pushing, or pulling restrictions, including a variety of assistive devices and resources for help finding potential accommodations for particular medical conditions.

**F.**  Defendant agrees that the first such training session for each employee group identified above, will take place within one hundred and twenty (120) days after the Court's entry of this Decree.

**G.**  The ADA-related training required by this Decree will not be a basis to reduce the amount of EEO training provided on subjects other than the ADA.

**39.**    For each training program required under this Decree and conducted during the reporting period, Defendant shall record a registry of attendance.

**40.**    For each training program required under this Decree and completed during the reporting period, Defendant shall provide a certificate of completion.

**41.**    For each training program required under this Decree, Defendant will provide the following information to the Monitor, identified in Sec. H: (a) a detailed agenda; (b) copies of all training material provided to or utilized by the trainers; and (c) the name of each trainer and a summary of his or her qualifications.

**D.**    *Physical Demands Testing and Validation Process*

**42.**    **Periodic Validation Assessments.**  Within sixty (60) days of the entry of this Decree, Defendant will ensure a job analyst performs updated validation

assessments for its physical demands testing for each of its driving positions, to be completed by 10% of the employees working in each of those positions.  Western will repeat this validation testing with a job analyst at least every 12 months or sooner, if there are changes to physical demands testing or the essential functions of the position.

**43.    Evaluation of Essential Job Functions.**  Within ninety (90) days of the entry of this Decree, Defendant will review its physical demands tests and validation assessments for each driving position and evaluate whether the testing is accurately measure the essential functions of the job.  Defendant will include in this review meeting at least one representative from human resources, safety, and management with responsibility over each job.  Western will repeat the review at least annually, or sooner if there are changes to the essential functions of the job.

**44.    Updates to Physical Demands Testing.**  If Western becomes aware that the physical demands testing for any driving position is no longer accurate, Western will engage a job analyst to make any changes needed to the testing and will repeat the validation process.

**E.    *Notice Posting***

**45.    Within five (5) business days after the Court's entry of this Decree, Defendant shall post in conspicuous areas readily accessible to all employees (such as the employees' lounge or break room) and on Defendant's intranet, the Notice attached as Exhibit A to this Decree.  The Notice shall be similar type and style as Exhibit A.  The Notice shall remain posted for the duration of this Decree.

If Defendant observes that the Notice is covered, removed, defaced or otherwise altered, it will take action to replace the Notice, but Defendant is not required to protect against or otherwise monitor any activity that results in the covering, removal, defacing or other alterations of the Notice.  Defendant shall certify to the Commission, in writing, within thirty (30) days of entry of this Decree that the Notice has been properly posted.

**F.    *EEO Compliance and Discipline***

**46.**    Defendant agrees that if any Defendant employee violates its Anti-Discrimination Policy or Reasonable Accommodation Policy, the employee shall be subject to discipline, up to and including, discharge.  If such employee is not discharged, the discipline shall be commented upon in that employee's performance evaluation.

**47.**    Defendant shall, within sixty (60) days of the entry of this Decree, and at least continuously for the duration of this Decree, develop and implement a management evaluation system which includes EEO compliance, compliance with policies and laws prohibiting retaliation, and compliance with this Decree as factors which shall be used to evaluate all managerial employees.

**48.**    For the duration of this Decree, Defendant shall submit EEO-1 Component 1 reports on an annual basis, in accordance with the requirements and deadlines of section 709(c) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-8(c), and 29 CFR 1602.7-.14 and 41 CFR 60-1.7(a).

### G.    Consent Decree Monitor

**49.    Appointment.** Within thirty (30) days of the entry of this Decree, Defendant must contract with a qualified candidate who will act as the Consent Decree Monitor ("Monitor") to oversee the implementation by Defendant of the terms of this Decree, who is acceptable to the EEOC. Any Monitor selected must receive pre-approval from the EEOC. Defendant will seek a qualified neutral from an organization such as JAMS, AAA or JAG. The Defendant and EEOC have agreed on Elizabeth Wylie as the Monitor.

**50.    Replacement.** In the event the Monitor is unable or unwilling to continue to serve, Defendant will select a different monitor.

**51.    Monitor's Responsibilities.** During the term of the Decree, the Monitor will have the following responsibilities:

**A.**  Within ninety (90) days of the entry of the Decree, and every three (3) months for the duration of the Decree, the Monitor shall review all requests for a reasonable accommodation, all records documenting the required interactive process and individualized assessment of potential accommodations for employees or prospective employees with disabilities, separations due to expired medical, FMLA or worker's compensation leave, and separations due to medical restrictions. Based on the Monitor's records review, the Monitor shall communicate to Defendant any recommendations.

**B.**  The Monitor shall continually evaluate whether Defendant has taken appropriate and reasonable action to protect employees from the unlawful denial

of a reasonable accommodation, and from retaliation. The Monitor shall make recommendations for corrective actions to Defendant.

**C.**  The Monitor shall review all records documenting employee complaints of discrimination based on disability, including oral and written complaints, charges of discrimination, and records relating to such complaints, and including complaints about matters relating to accommodation of disabilities and complaints about unfair treatment based on disabilities, even if not characterized as discrimination. The Monitor shall make recommendations for corrective actions to Defendant.

**D.**  The Monitor shall review Defendant's validation studies, summaries of Defendant's review meetings, and any changes to Defendant's physical demands testing as referenced in Paragraphs 43 and 44.

**E.**  The Monitor, to the extent necessary, shall make recommendations to Defendant regarding compliance with this Decree.

**F.**   The Monitor shall report to the EEOC every six (6) months regarding what actions he/she took during the prior three (3) month reporting period(s).

**G.**  The Monitor shall ensure that Defendant complies with the requirements that it provide each employee a copy of its revised EEO and Reasonable Accommodation policies as required by Sections VIII(B)-(C), including distribution of Exhibit C as required.

**H.**   For the duration of this Decree, and for two years thereafter, the Monitor shall maintain all original documents received and generated by the Monitor during the Monitor's term.

**I.**   The Monitor shall review for adequacy the training agendas and materials identified in Paragraph 38.

**J.**   The Monitor shall provide quarterly reports to the EEOC for each three-month period following the entry of this Decree.  The reports shall be due thirty (30) days following the respective three (3) month period, except the final report which shall be submitted to the Commission four (4) weeks prior to the date on which the Consent Decree is to expire.

**52.**   **Reporting Requirements:**  Each report of the Monitor shall provide the following information:

**A.   Generally.** The Monitor shall identify in its report any areas of concern arising from the responsibilities listed in Paragraph 51.

**B.   Recommendations.** The report shall include all recommendations made to Defendant under Paragraph 51, the reason for the recommendation and Defendant's response to the recommendation.

**C.   Reports of Disability Discrimination**

**52.C.1.**   For purposes of this paragraph, the term "report of discrimination" will include any written or verbal complaint made to a manager or of which a manager is aware which alleges discrimination, or the witnessing of discrimination, based on disability or injury, even if such terminology is not

used by the complainant. The complainant need not invoke the terms "discrimination," "ADA," "retaliation," "violation," or "rights," etc. Employees are not trained in legalese and frequently use such terms as "unfair," "unprofessional," "uncomfortable," "unjust," "retaliatory," "treated differently," or "needing additional time to return" and other such language that indicates an allegation of discrimination.  The report is not required to identify workers compensation claims.

**52.C.2.**  The report shall include:

a.      The name, address, email address, and telephone number of each person making a complaint of ADA discrimination to Defendant or to any federal, state, or local government agency;

b.      The name, address, email address, and telephone number of each person identified as a potential witness to the incident of discrimination;

c.      A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the discriminatory conduct, the Defendant's investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what, if any resolution was reached; and

d.      Copies of all documents memorializing or referring to the complaint, investigation, and/or resolution thereof.

**D. Request for Accommodation**

**52.D.1.**  For purposes of this paragraph, the term "request for accommodation" will include any written or verbal request of an accommodation, by an employee or applicant, related to job performance, including job restructuring, leave, modified or part-time schedules, modified workplace policies, such as extensions of medical, FMLA or worker's compensation leave, job restructuring, such as a reassignment of routes, and reassignment to open positions or positions known to become available in the foreseeable future.

**52.D.2.**  The report shall include:

a.  The name, address, email address, and telephone number of each person making a request for an accommodation to Defendant;

b.  A brief summary of the reason for the request, whether the request was granted; if the request was not granted, an explanation of the reasons the request was denied; and

c.  A copy of any completed accommodation worksheets or forms used.

**E. Complaints of Retaliation**

**52.E.1.**  For purposes of this paragraph, the term "complaint of retaliation" will include any written or verbal complaint which alleges retaliation for activity that is protected under the ADA, or alleges retaliation for conduct which the Defendant recognizes or should have recognized as protected

activity under the statute even if the complainant does not use legal or technical terminology.

**52.E.2.**   The report shall include:

a.      The name, address, email address, and telephone number of each person making a complaint of retaliation to Defendant or to any federal, state, or local government agency;

b.      The name, address, email address, and telephone number of each person identified as a potential witness to the incident of retaliation;

c.      A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the retaliatory conduct, the Defendant's investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what, if any resolution was reached; and

d.      Copies of all documents memorializing or referring to the complaint, investigation, and/or resolution thereof.

### F.   Requests for FMLA Leave

**53.**   In all instances where an FMLA form is provided to an employee or an employee's physician, for leave based on the employee's own medical condition, Defendant Western shall include the job description and list of essential functions for the employee's current position.

## X.      Record Keeping and Reporting Provisions

**54.**    For the duration of this Decree, Defendant shall maintain such records as are necessary to demonstrate its compliance with this Decree, including but not limited to the documents specifically identified below. For the duration of the Decree and for one year following termination of the Decree, Defendant shall retain the following hard-copy (paper) and electronic data or records relating to activities occurring during the duration of the Decree:

    **A.**    All records regarding employees placed on leave due to illness, injury, or other medical-related reasons (hereafter referred to as "medical leave"), including any employee requests for leave and medical records requiring leave;

    **B.**    All records regarding potential extensions of medical leave, including employee requests, FMLA forms with medical provider information indicating extended leave may be necessary, and other medical provider information indicating extended leave may be necessary;

    **C.**    All records regarding requests for reasonable accommodations from employees or prospective employees;

    **D.**    All records reflecting any interactive process engaged in to determine reasonable accommodation for disability;

    **E.**    All records regarding reasonable accommodations granted;

    **F.**    All records regarding reasonable accommodations denied, including an explanation for the denial, and whether some other accommodation was provided;

**G.**  All records regarding complaints of discrimination based upon disability, including the complaint, records of the investigation, any investigative memo or recommendation, and any remedial measures taken;

**H.**  All records and recommendations provided by the Job Analyst;

**I.**  All records regarding the completion of or attempts to complete physical tests used to determine fitness for duty of an employee or prospective employee.

**J.**  All registries of attendance recorded in Paragraph 38;

**K.**  Copies of all certificates of completion created in Paragraph 38; and

**L.**  Copies of all training information identified in Paragraph 38.

**55.**    The preceding paragraph requires the retention of existing documents and records, and retention of documents and records that are hereinafter created and maintained in the normal course of Defendant's business activities or in compliance with this Decree.

**56.    Information Requests.** The EEOC shall have the right to make reasonable and not overly burdensome requests for non-privileged information from Defendant which demonstrates compliance with the Decree over the duration of the Decree. Defendant shall comply with a reasonable request for such information within thirty (30) days of the request.

**57.    Reporting Requirements.**  Defendant shall provide semi-annual reports for each six (6) month period following the entry of the Decree.  The reports shall be due thirty (30) days following the respective six (6) month period, except the final

report which shall be submitted to the Commission at least eight (8) weeks prior to

the date on which the Consent Decree is to expire.

**58.**    For the semi-annual reports described in Paragraph 52, Defendant shall

provide to the EEOC the following information (in electronic format):

A.  **Separations**:  A list of every employee separated from employment with

Western, or otherwise disqualified from employment during the reporting period

for reasons related to disability, injury or illness. The report shall include all of the

following data: employee's full name, contact information (including addresses,

phone numbers, and email addresses), position, termination date, and reason for

termination.

B.  **Records relating to medical leave, and extensions of medical leave**: All

information gathered and records relating to decisions made during the reporting

period to grant or deny medical leave, and/or extensions of medical leave,

including: employee's full name, contact information (including addresses, phone

numbers, and email addresses), position, reason for needing medical leave or

extended medical leave; whether the leave or extension was granted; if the leave

or extension was not granted, an explanation of the reasons the leave or

extension was denied.

C.  **Records relating to disability-related accommodations**:  All information

gathered and records relating to decisions made during the reporting period to

grant or deny disability-related accommodations, including: employee's full name,

contact information (including addresses, phone numbers, and email addresses),

position, any documented request, what accommodation, if any, was granted, a complete explanation of any decision to provide no accommodation, and copies of all records documenting the required interactive process and individualized assessment, including job description and other records collected in researching potential accommodations.

**D. Disability Complaints**:  All complaints of discrimination based upon disability, including: employee's full name; contact information (including addresses, phone numbers, and email addresses); position of individual making complaint; description of complaint or copy of complaint; name and position of individual(s) who conducted investigation; copy of all notes, memorandums, e-mails and documentation used and/or generated in the investigation; and any actions taken by Defendant in response to the complaint.

**E. Training**:  For each training program required under Paragraph 38, and conducted during the reporting period, Defendant shall identify the vendor, provide a copy of the program agenda, training materials and record of which employees attended the training.

**F. Posting of Notice**:  Defendant shall recertify to the Commission that the Notice required to be posted under Paragraph 45 of this Consent Decree has remained posted during the reporting period, or, if removed or defaced, was promptly replaced.

**G. Policy Review**:  Defendant shall report on the status of the EEO and Reasonable Accommodation policy reviews required under Sections B and C

above, and provide copies of all polices impacted, modified, or created under Sections B and C above.

## XI.    RETENTION OF JURISDICTION AND ENFORCEMENT OF DECREE

**59.**    This Court shall retain jurisdiction of this cause for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate equal employment opportunities for employees.

**60.**    There is no private right of action to enforce Defendant's obligations under the Decree and only the Commission, or its successors or assigns may enforce compliance herewith.

**61.**    The Commission may petition this Court for compliance with this Decree at any time during which this Court maintains jurisdiction over this action.  Should the Court determine that Defendant has not complied with this Decree, appropriate relief, including extension of this Decree for such period as may be necessary to remedy its non-compliance, may be ordered.

**62.**    In the event that the EEOC believes the Defendant has failed to comply with any provisions of the Decree, the EEOC shall notify the Defendant in writing of such non-compliance and afford the Defendant fourteen (14) days to remedy the non-compliance or satisfy the EEOC that the Defendant has complied.  If the Defendant has not remedied the alleged non-compliance or satisfied the EEOC that it has complied within fourteen (14) days, the EEOC may apply to the Court for appropriate relief.

**63.**    Absent extension, this Decree shall expire by its own terms at the end of forty-eight (48) months from the date of entry without further action by the Parties.

## XII.    EEOC AUTHORITY

**64.**    With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts which are not encompassed by this Decree, and are made unlawful by any of the statutes over which the EEOC has enforcement authority.

## XIII.    COSTS AND ATTORNEY'S FEES

**65.**    Each party shall be responsible for and shall pay its own costs and attorney's fees.

## XIV.    MISCELLANEOUS

**66.**    Nothing in this Decree shall be deemed to create any rights on the part of non-parties to enforce this Decree.  The right to seek enforcement of the Decree is vested exclusively in the EEOC.

**67.**    Nothing in this Decree, nor any statements, discussions, or communications, nor any materials prepared, exchanged, issued or used during the negotiations leading to this Decree, shall be admissible in any proceeding of whatever kind or nature as evidence of disability discrimination, or as evidence of any violation of the ADA, the common law of any jurisdiction, or any federal, state, or local law.  Notwithstanding the foregoing, the Decree may be used by either

Party in any proceeding in this Court to enforce or implement the Decree or any

orders or judgments of this Court entered in conjunction with the Decree.

## XV.    NOTICE

**68.**    Unless otherwise indicated, any notice, report, or communication required

under the provisions of this Decree shall be sent by certified mail, postage prepaid,

as follows:

| | |
|---|---|
| Karl Tetzlaff | Steven W. Moore |
| Trial Attorney | Fox Rothschild, LLP |
| EEOC Denver Field Office | 1225 17th Street |
| 950 17th Street, Suite 300 | Suite 2200 |
| Denver, CO 80202 | Denver, CO 80202 |
| karl.tetzlaff@eeoc.gov | swmoore@foxrothschild.com |

## XVI.   SIGNATURES

**69.**    The parties agree to the entry of this Decree subject to final approval by the

Court.

SO ORDERED this ___15th___ day of __July_____, 2025.

BY THE COURT:

_____

United States District Judge

BY CONSENT:

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

By: *Mary Jo O'Neill*                    Date: _____

Mary Jo O'Neill
Regional Attorney


WESTERN DISTRIBUTING COMPANY

By: _____            Date: ___6/24/25___

Vieri Gaines
President


APPROVED AS TO FORM:

_____                _____

Karl Tetzlaff                          Steven W. Moore
Trial Attorney                         Renee Sheyko
EEOC Denver Field Office               Fox Rothschild, LLP
950 17th St., Suite 300                1225 17th Street, Suite 2200
Denver, CO 80202                       Denver, CO 80202

Attorney for Plaintiff EEOC            Nicole H. Howell
                                       Fox Rothschild, LLP
                                       4900 Main Street
                                       Suite 150
                                       Kansas City, MO 64112

                                       Attorneys for Defendant

173695793.1

**Exhibit A**

### NOTICE TO EMPLOYEES

This Notice is being posted by agreement between Western Distributing Company ("Western") and the Equal Employment Opportunity Commission (EEOC), pursuant to a Consent Decree entered in the case of EEOC v. Western Distributing Company, Civ. No. 1:16-cv-01727-WJM-STV.

**Unlawful Disability Discrimination:** Under federal law, it is unlawful for an employer to discriminate against any employee or applicant for employment based on, among other things, disability.  In other words, an employer may not make any decision regarding job application procedures, hiring, promotion, discharge, pay, job training, and other terms, conditions, and privileges of employment based on disability.

**Reasonable Accommodation for Disabilities:**  Under federal law, an employer is required to provide reasonable accommodation for people with disabilities if some accommodation can be provided which will enable the person to perform essential job functions and such accommodation can be provided without causing undue hardship to the employer.  When an employee requests reasonable accommodation for disability, the employer is required to engage with the employee in an interactive process to determine what, if any, accommodation is appropriate under the unique circumstances of the requesting employee.  Failure to provide reasonable accommodation is a form of unlawful disability discrimination. You do not have to be 100% healed to be able to return to your job, so long as there is a reasonable accommodation that can be made to your job so that you can perform the essential functions of that position. Western does not have a 100% return-to-work policy and you should inform Western if you are able to return to your job, even if you have restrictions.

**Requests for Medical Information:**  Generally, Western can only ask medical questions or require a medical exam of its employees if it needs medical documentation to support an employee's request for an accommodation or if Western believes that an employee is not able to perform a job successfully or safely because of a medical condition.  If you have been absent from work due to illness or injury, Western may require that you provide a doctor's note indicating that you are able to return to work.  Western is entitled to know that you are physically able to return to work and what, if any, medical restrictions you have that may affect your ability to perform your job functions.  If you have any medical restrictions, it is imperative that Western know about those restrictions so that Western can work with you to try to accommodate your restrictions.  If you have medical restrictions or otherwise ask for reasonable accommodation for a disability (see prior paragraph), it may be necessary for Western to obtain medical records or talk to your doctor in order to determine what accommodations may be appropriate.  If Western requests medical information in order to determine what accommodation may be appropriate, your medical information must be kept confidential and cannot not be stored in your personnel file.

**Unlawful Discrimination and Retaliation:** In addition to disability discrimination, it is also unlawful to make employment decisions based on race, color, religion, sex (including pregnancy), national origin, age (over 40), or genetic information.  It is also unlawful to retaliate against any individual because he or she has opposed what he or she believes in good faith to be unlawful discrimination, or has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing regarding such alleged unlawful discrimination.

**Western's Policies:** Under Western's Policies, employees are entitled to work in an environment free of discrimination or harassment based on disability, race, color, religion, sex (including pregnancy), national origin, age (over 40), or genetic information. Similarly, employees are encouraged to report any conduct believed to be unlawful discrimination or harassment, and Western Policies specifically forbid any retaliation against an employee who reports such conduct.

**Reporting Improper Conduct:** If you are aware of any events, conduct, or information, which you believe may indicate some unlawful discrimination (including failure to provide reasonable accommodation for disabilities), harassment, hostile work environment, or retaliation, it is very important that you report the information so that steps may be taken to investigate and remedy any unlawful discrimination (including failure to provide reasonable accommodation for disabilities), harassment, hostile work environment, or retaliation which has been found to exist. You may report such matters to Western, the EEOC, or the agency of your state that enforces the state's anti-discrimination laws, as set forth below.

**Reporting to Western:** Within Western, you may make such a report to your supervisor, manager, superintendent, human resources personnel or Safety Director. By reporting in this manner, you do not waive any right to file a charge of discrimination with EEOC or the agency of your state that enforces the state's anti-discrimination laws.

**Reporting to the EEOC:** EEOC is the federal agency responsible for enforcing federal laws prohibiting employment discrimination based on race, color, religion, sex (including pregnancy), national origin, age (over 40), disability, or genetic information. You may directly contact the Denver Field Office of EEOC, located at 950 17th Street, Suite 300, Denver, Colorado 80202, or at any of the following numbers:

|            |              |
|------------|--------------|
| Telephone: | 720.779-3610 |
| TTY:       | 800.669.6820 |
| Fax:       | 303.866.1085 |

This Notice shall remain posted through _____, 2029_.


_____          _____
Date                          Western Distributing Company

**Exhibit B**

## RELEASE AND WAIVER

In consideration for the $ _____ paid to me by Western Distributing Company, in connection with the resolution of *EEOC v. Western Distributing Company*, case number 1:16-cv-01727-WJM-STV, I waive my right to recover for any federal claims of disability discrimination arising under the Americans with Disabilities Act that were asserted against Western Distributing Company in EEOC's complaint prior to the date of this release, and which were subject to the Consent Decree in *EEOC v. Western Distributing Company*, case number 1:16-cv-01727-WJM-STV. [For Charging Parties, add the following:  I also waive my right to recover for any claims asserted in my charge of discrimination No. _____,]


Date _____     Signature: _____

173695793.1

**Exhibit C**

## ACCOMMODATIONS FOR WORKERS
## WITH DISABILITIES, INJURIES AND ILLNESSES

This document is being provided to you because Western Distributing Company ("Western") is placing you on a form of medical leave that may be the result of a disability, injury or illness. In certain situations the law allows you to return to work with an accommodation, receive an extension of your medical leave or be reassigned to an open position, if you are qualified.

**Reasonable Accommodation for Disabilities:** Under federal law and Western's policies, you may be entitled to return to work even if you have medical restrictions. You should consult with your doctor to determine when you can return to work and whether there are any accommodations that Western could provide which allow you to return with medical restrictions. You do not have to be 100% healed to be able to return to your job, so long as there is a reasonable accommodation that can be made to your job so that you can perform the essential functions of that position. Western does not have a 100% return-to-work policy and you should inform Western if you are able to return to your job, even if you have restrictions.

**Extensions of Medical Leave:** If you believe you need an accommodation or an extension of your medical, worker's compensation or FMLA leave, please contact Western's HR department. In certain circumstances, Western will extend medical, worker's compensation or FMLA leave beyond twelve weeks.

If you request a reasonable accommodation for a disability, Western is required to and will engage in an interactive process with you to determine what, if any, accommodation is appropriate based upon your unique circumstances.  Failure to provide reasonable accommodation is a form of unlawful disability discrimination unless it would be an undue hardship to Western to provide this accommodation.

**Retaliation:** Western will not retaliate against you because you requested a reasonable accommodation or an extension of medical, worker's compensation or FMLA leave.

**Accommodations for common disabilities:** Accommodations may include things like providing a lifting device or other assistive device to assist with an employee's duties, modifying work schedules, rerouting drivers, leave, reassignment. More information about available devices is listed at the Job Accommodation Network, www.askjan.org.

**More Information.** If you would like more information about the policies summarized here, please review the Western's Reasonable Accommodations for Individuals with Disabilities Policy, Non-Discrimination, Anti-Harassment, and Anti-Retaliation Policies, Leave of Absence Policies, and Workers' Compensation Return to Work Policy, all of which are located in the Corporate Policy Manual.  You can also reach out to Human Resources at any time for more information.